This is my Memorandum
of Law in support of
my habeas Corpus. was
unable to staple, please
staple. Thank you.

07 - 3 3 4

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

JOHN FOLKS,                                    )
                                               )
            Petitioner,                        )
                                               )
      v.                                       )      Civil Action No.
                                               )
THOMAS CARROLL, Warden et al,                  )
                                               )
            Respondent.                        )

PETITIONER'S MEMORANDUM OF LAW IN
SUPPORT OF HIS PETITION UNDER
28 U.S.C. § 2254 FOR WRIT OF HABEAS CORPUS
BY A PERSON IN STATE CUSTODY

07 - 3 3 4



FILED

MAY 2 5 2007

R G scopera
U.S. DISTRICT COURT
DISTRICT OF DELAWARE

Dated:  5-23-07                    John Falles

                                   John Folks, 00126234
                                   Delaware Correctional Center
                                   1181 Paddock Road
                                   Smyrna, DE 19977

# TABLE OF CONTENTS

Table of Contents . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . P-2

Ground One. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . P-3-12

Ground Two . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . P-13-15

Ground Three . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . P-16-19

Ground Four . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . P-20-23

Ground Five . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . P-24-26

Ground Six . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . P-27-29

Ground Seven . . . . . . . . . . . . . . . . . . . . . . . . . . . P-30-32

Ground eight . . . . . . . . . . . . . . . . . . . . . . . . . . P-33-34

Conclusion . . . . . . . . . . . . . . . . . . . . . . . . . . . P-35

1st Appeal, John Folks V. Del., 291, 2004

2nd Appeal, John Folks V. Del., 311, 2005

Post Conviction Denial, I.D.#0306015047

Appeal of Post Conviction Denial, John Folks V. Del., 563, 2006

## Ground One

1.                    Ineffective Assistance of Counsel

As a result of (1 Counsel's breach of confidentiality, 2 Counsel's failure to investigate the existence of witnesses, 3 Counsel's failure to compel the state to produce exculpatory evidence, 4 Counsel's failure to mention important testimony to the jury in his closing arguments 5 Counsel's promotion of the Batson violation, along with his failure to object to the prosecutor's Batson violation and 6 Counsel's other acts of omissions and cumulative error's); the petitioner's sixth amendment right to effective assistance of counsel was violated.

### Standard and Scope of Review

In a proceeding instituted by an application for writ of habeas corpus by a person in custody pursuant to the judgment of a state court, a determination of a factual issue made by a state court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254 (e) (1), Johnson V. Lewis, 359 F.3d 646, 652, 658 (3rd cir. 2004).

### The Delaware Supreme Court Decision

In a very vague review and opinion, the Delaware Supreme Court determined that the petitioner did not make concrete allegations of actual prejudice and substantiate them. The court also determined that the transcripts dose not reflect the existence of a constitutional violation and in the absence of such record evidence, the petitioner's claim is procedurally barred.

The state court proceeding resulted in a decision that was based on unreasonable determination of facts in light of the evidence presented in the state court

proceeding, cause the petitioner's claims were not conclusory and vague and he did make concrete allegations of actual prejudice and substantiated them with factual evidence. The petitioner asserts that the review court failed to address all of his claims, despite the claims and evidence being properly presented to the court. The review court could not have reviewed the petitioner's memorandum of law, the petitioner's exhibits, replies to counsel's affidavits and the state's answering briefs or the record, or it would not have reached the conclusions that it reached. The petitioner also asserts that if he had not made concrete allegations of actual prejudice and substantiated them, his claims/petition would have been summary dismissed, which they were not. See: Superior Court Criminal Rule 61 (d) (4).

### Argument

A.    The petitioner argue that after he informed his counsel, James A. Bayard Jr. that a conviction date was wrong on a habitual offender motion, he breached confidentiality and revealed that information to the prosecutor, thus allowing the prosecutor to change the wrong conviction date to the right conviction date on the motion before the motion was heard by the court, instead of using that information to dispute the motion and get the motion dismissed based on that false information on the motion, even though the petitioner asked him to. The petitioner argues that he was Leary of his lawyer prior to the breach and his objections in court and correspondence with the court supports this, but after the breach, the lack of trust escalated even more and prevented effective communication and trust between attorney-client. The effects of this breakdown in communication between attorney-client effected every aspect of the subsequent proceeding to the prejudice of the defendant's right to a fair hearing, which was

4

demonstrated by counsel's failure to object to or challenge the habitual offender status at the first sentencing, that was proven to be imposed unconstitutionally. See: John Folks V. State, Del. Supr., No. 291, 2004, Steele, C.J. (Apr. 25th, 2005). Although the habitual offender status was reversed on appeal, that does not make the breach of confidentiality claim moot or settled, but questions the fundamental fairness of the entire process as well as calls into question whether any other breaches may have occurred or whether the petitioner suffered any other collateral consequences as a result of other breaches that's not on the record. The petitioner admits that the specific instance was cured by the appeal, however, when injunctive relief is moot, a claim for damage keeps the controversy breathing. See: Firefighter's V. Statts, 467 U.S. 561, 104 S. Ct. 2576. The petitioner argues that as a result of other acts of omissions by James A. Bayard Jr. that may be the result of other breaches, damage occurred and a controversy still exist and is breathing. See: First habitual offender motion, in the appendix, marked exhibit- 78. See: Prosecutor's letter to the judge , after the breach, informing the judge of an amended motion, in the appendix, marked exhibit- 79(A) and See: Second habitual offender motion, after the breach, in the appendix, marked exhibit- 79(B). Also See: First sentencing hearing, where petitioner's counsel made no objections to the habitual offender motion and just conceded to it, in the appendix, marked exhibit- 80, See: the court docket sheet, docket numbers- 31 and 33, where two habitual offender's motions were filed, in the appendix, marked exhibit-81 and See: petitioner's memorandum of law in support of his post-conviction motion, that's in the record, letters- (G), (G) (1), and (G) (2), pages- 9and 10. See: petitioner's brief to his appeal of his post-conviction denial, that's in the record, number-(6) (A), pages- 19, 20, and 21. See: Lawyer's professional

Conduct rules, numbers- 1.1.1.2.1.3.1.4.and 1.6. Also See: Counsel James A. Bayard Jr. affidavit to the petitioner's post-conviction motion, that's in the record, where counsel admitted to the confidentiality breach, letter-(G). It was not the courts that filed the habitual offender motion against the petitioner, but the prosecutor and the petitioner's Counsel acted as a witness for the prosecution. The record does support this claim.

    B.     The petitioner argues that even though he told his lawyer James A. Bayard Jr. about two females that were at the scene of the crime and the record supported their existence, he still refused to locate or even attempt to locate them to testify at the trial. The state's main witness, Mr. Simpson testified that the person he saw robbing Mr. Mcvey was a heavy-set Blackman and the two females at the scene (one of whom was a passenger in the car during the police chase), would have confirmed Mr. Simpson's testimony and raised a lot of reasonable doubt, because the petitioner was not heavy-set before, during or after the trial, just black. See: transcripts, that's in the record, DK.67, page-63, line-12-20, DK.67, page-64, line-1-23, DK.67, page-71, line-8-23, See: DK.54, page-132, line-16-17 and See: DK.54, page-14, line-8-10. The petitioner's counsel made no effort to locate them or investigate their existence, despite the police report or court records indicating their existence or involvement, thus prejudicing the petitioner and denying petitioner a fair trial. See: Petitioner's brief to his appeal of his post-conviction denial, number-(4) (A), page-14. See: Siripongs V. Calderon, 35 F.3d 1308(9th cir. 1994) And See: Defendant's/Petitioner's reply to counsel's Bayard affidavit to defendant's post-conviction motion, that's in the record, letter-(D)(4), pages-4-5. The record does support this claim.

6

C.      The petitioner argues that his counsel refused to compel the state to produce exculpatory evidence. The petitioner was assaulted by the police and the video tape in the interrogation room would have helped prove the assault. Petitioner's counsel also refused to compel the state to produce the results of the fingerprints found on the knife, because fingerprints were found on the knife, but did not belong to the petitioner, but belonged to that heavy-set Blackman that Mr. Simpson testified about. The petitioner asked his counsel several times to compel the state to produce the interrogation tape and the fingerprints found on the knife, but he refused and just accepted whatever the state told him, without putting up any adversarial challenge. See: Osborn V. Shillinger, 861 F. 2d 612 (10th cir. 1988), See: Petitioner's medical records from Christiana hospital,(that petitioner's counsel failed to produce at the suppression hearing), where on the night of petitioner's arrest he complained of pain in both his legs, after being beaten on both legs, marked exhibit-2, in the appendix. See: Petitioner's memorandum of law in support of his rule 61 post-conviction motion, that's in the record, letter-(B), page – 4 and letter-(H), page-10-11. Also See: Petitioner's brief to his appeal of his post-conviction denial, that's in the record, number-(4), page- 13-14. See: Brady V. Maryland, 373 U.S. 83, 10 L. Ed 2d 215, 83 S. Ct. 1194(1963). See: DK.54, page- 76, where the state lied and counsel just accepted it, See: DK.67, pages- 58, 59, 60 and 61. See: Defendant's reply to counsel's affidavit to defendant's post-conviction motion, letter-(A), and pages-1-2. The state did not produce the interrogation tape or the fingerprints, because that evidence would have helped prove the assault and that the fingerprints found on the knife were not the petitioner's. The record does support this claim.

7

D.    The petitioner's counsel refused to mention important and vital testimony to the jury in his closing arguments, even though the petitioner asked him to and even though the testimony may have slipped the jury's mind. The state's main witness, Mr. Simpson testified that the person he saw robbing Mr.Mcvey was a heavy-set Blackman and clearly the petitioner was not heavy-set , at his arrest , trial or even now. Counsel refused to mention that testimony, even though it could and probably would have raised a lot of reasonable doubt and dispute Mr. Mcvey's and his stepson's testimony, because even as the state argued, Mr. Simpson was the witness who saw the whole crime from the A.T.M. machine to the time that the police officer took over the car chase, but he did/could not identify the petitioner in court as the person who he saw rob Mr. Mcvey. See: State's closing arguments, DK.54, page-120, line-19-23 and page-121, line- 1-16. The petitioner argues that as a result of his counsel's failure to mention this testimony, he fell below an objective standard and denied the petitioner the right to a fair trial and effective assistance of counsel. See: Counsel's closing arguments, DK.54, pages-125-129, where counsel made no mention of Mr. Simpson's testimony, (and had nothing to do with any strategy or tactics). See; Petitioner's brief to his appeal of his post-conviction denial, number-(4)(C), page-15 and See: Petitioner's memorandum of law in support of his rule 61 post-conviction motion, letter-(E), page-8. See; Defendant's reply to counsel's affidavit to defendant's post-conviction motion, letter-(E), page-5 and See: Mr. Simpson's testimony, DK.54, page-14, line-8-10. The record does support this claim.

E.    The petitioner argues that even though the identity and/or size of the robber was the main issue in petitioner's case, his counsel refused to allow him to stand in front of the jury to dispute the identity evidence presented by the state, even though the

8

petitioner asked him to .The petitioner argues that he could not have possibly be the person on the bank camera, state's exhibit- photo 15. The petitioner argues that if he was allowed to stand in front of the jury, it would have also raised a lot of reasonable doubt and showed the jury that he was to tall and slim to have been the person in that photo. Counsel failure and refusal to allow the petitioner to stand in front of the jury had nothing to do with any strategy or tactics, but was the result of falling below an objective standard of reasonableness and denying the petitioner a fair trial and effective assistance of counsel. See: Petitioner's brief to his appeal of his post-conviction denial, letter-(4)(B), pages-14-15, See: Defendant's reply to counsel's affidavit to defendant's post-conviction motion, letter-(D)(3), page-(4) See: Counsel James A. Bayard Jr. affidavit to defendant's post-conviction motion, where he lied about the size not being a factor in the petitioner's case, letter-(D)(3) and See:DK.54, page-128, line-1-18. The record does support this claim.

F.     The petitioner argues that not only did his counsel purposely encourage the petitioner to excuse black perspective juror's from the jury during the petitioner's peremptory challenges, saying that those juror's were "bad choices", but he also failed and refused to object to the prosecutor's excusing of all black perspective jury member's during his peremptory challenges. The petitioner argues that he is a pro-se litigant and was denied by the state access to the jury member's names and race, therefore could not properly litigate this claim, but the state and courts has access to and was provided with this information. The petitioner urges the district court to search the record for the race of each jury member that was in the jury selection pool, the jury member's that was excused and the jury member's that was selected for the petitioner's trial. The petitioner argues

That clearly this court will find a Batson violation. The petitioner also asserts that he is black, the victim is white, all of the witnesses were white, the prosecutor is white, the defense counsel is white and the judge is white. The petitioner argues that as a black defendant he would not have excused any black perspective jury member's from the jury pool or peremptory strikes/challenges, but yet none of the jury member's on his jury were black. See: Jury selection process, DK.67, pages-7-34. As to the Batson violation, this ground was not raised in the proceedings leading to the judgment of conviction or on direct appeal, due to both his counsel's refusal and/or failure to object to or raise it on direct appeal and that his counsel's ineffectiveness was the cause of any, if any, procedural fault. 61(i)(3) and 61(i)(5). See: Johnson V. Ellingsworth, 783 F. Supp. 215 (D-Del. 1992) And See: Younger V. State, Del. Supr., 580 A. 2d 552 (1990). Counsel made it very clear and obvious to the petitioner of his ineffectiveness and prejudice, (which was demonstrated at side bar. See:DK.67, page-144, line 15-17) therefore, this ground was incorporated into the ineffective assistance of counsel claim and subsection 61(i)(3), does not bar relief as to ineffective assistance of counsel should the defendant demonstrate that his counsel was ineffective and that he was prejudiced by counsel's actions. See: State V. Knox, Del. Super., A. 2d (Feb.26, 2003). Aff'd, Del. Supr., 826 A. 2d 298 (2003). See: Batson V. Kentucky, 476 U.S. 79 (1986). See: Batson, 476 U.S., at 87, 106 S. Ct., 1718. Also See: Petitioner's memorandum of law in support of his rule 61 post-conviction motion, that's in the record, procedural statement, page-2-3, and See: letter – (C), (C) (1), and (C) (2), pages 5-6. See: Powers, 499 U.S., at 409, 111 S. Ct., at 1370. See: Petitioner's brief to his appeal of his post-conviction denial, in the record, number-(2), and pages-8-9. The prosecutor purposely excluded African- Americans from

10

the jury during his peremptory challenges and the petitioner's counsel made no objections
to the prosecutor's bias selections." Be it at the hands of the state or the defense" if a
court allows jurors to be excluded because of group bias, it is a willing participant in a
scheme that could only undermine the very foundation of our system of justice-our
citizens, confidence in it. See: State V. Alvarado, 221 N.J. Super. 324, 328, 534 A. 2d.
440, 442(1987). The constitution prohibits the defense or the prosecution from engaging
in purposeful discrimination on the grounds of race in the exercise of peremptory
challenges. See: Defendant's reply to counsel's affidavit to the defendant's post-
conviction motion, letter-(C), pages-2-3. The petitioner is black, yet no member of his
race was on his jury, why? The record does support this claim. See: Riley v. Taylor, 277 F. 3d
261 (3rd Cir. 2001)

      G.    The petitioner argues that there were other acts of omissions that
contributed to the petitioner being prejudiced against, denied effective assistance of
counsel and denied a fair trial. The petitioner argues that his counsel made no objections
during the suppression hearing or trial and that this was not as a result of good strategy or
tactics, but was a result of fallen below an objective standard. See:DK.67, page-77, line-
10-17, where it was the judge who had to object to the line of questioning by the
prosecutor, because the petitioner's counsel refused to and just allowed the prosecutor to
do whatever he wanted to do. Counsel refused to object to the state's surprise witnesses.
See: Petitioner's memorandum of law in support of his rule 61 post-conviction motion,
letter-(D), page-6.The petitioner also argues that while the prosecutor used up
approximately 99 pages on the transcripts for direct and redirect questioning of just four
of the witnesses, petitioner's counsel used up approximately 13 pages for questioning
witnesses and did not question the state's main witness, Mr. Simpson at all, even though

11

Mr. Simpson testified that the person he saw robbing Mr. Mcvey was a heavy-set Blackman and clearly the petitioner was not heavy-set, just black. The prosecutor used up approximately 22 pages in his closing arguments, while the petitioner's counsel used up approximately 4 pages in his closing arguments and made no mention of Mr. Simpson's testimony. See: Petitioner's memorandum of law in support of his post-conviction motion, letter-(D)(1), and page-7. See: DK.54, pages-125-128. Again See: DK.67, page-144, line-14-17, because this may also explain why petitioner's counsel did not preserve any issues for review or make any objections during the entire process. See: Petitioner's memorandum of law in support of his post-conviction motion, letter-(H)(1), and page-11. See: Defendant's reply to counsel's affidavit to defendant's post-conviction motion, letters-(G)(2) and (H)(1), pages-8, 9, 10 and 11. The petitioner argues that he was prejudiced against, denied due process of law, denied a fair trial and denied effective assistance of counsel, due to his counsel's acts of omissions and cumulative error's and that as a result of those acts of omissions and cumulative error's (which had nothing to do with good strategy or tactics), his counsel fell below an objective standard of reasonableness, and "but for" the counsel's unprofessional error's, the outcome of his case would have been different. See: Strickland V. Washington, 466 U.S. 668, 104 S. Ct. 2052, 2064-74, 80 L. Ed 2d 674(1984). The record does support this claim.

### Ground Two

2.                          Ineffective Assistance Of Counsel

Counsel failed to put the resentencing hearing to any adversarial

Challenge and voluntarily conceding to a conviction (that was adjudicated once

by a higher court and reversed for insufficient evidence), that enhanced the

petitioner's sentence.

### Standard and Scope of Review

In a proceeding instituted by an application for a writ of habeas

corpus by a person in custody pursuant to the judgment of a state court, a

determination of a factual issue made by a state court shall be presumed to be

correct. The applicant shall have the burden of rebutting the presumption of

correctness by clear and convincing evidence. 28 U.S.C. § 2254 (e) (1), Lewis V.

Johnson, 359 F. 3d 646, 652, 658 (3rd cir. 2004).

### Delaware Supreme Courts Decision

In its opinion the Delaware Supreme Court mischaracterized,

misread or never even reviewed the petitioner's claim of ineffective assistance of

counsel against his appellant counsel, when it determined that the petitioner's

claim was meritless

The state court proceeding resulted in a decision that was based on

unreasonable determination of facts in light of the evidence presented in the state

court proceeding, cause the petitioner never claimed that his appellant counsel

abandoned him for filing a 26(C), but that he rendered ineffective assistance of

counsel for conceding to a conviction(that was adjudicated once by an higher

13

Court for insufficient evidence), that enhanced the petitioner's sentence. The petitioner made a concrete allegation of this claim and substantiated it with factual evidence.

<center>Argument</center>

(H)    The petitioner argues that the lower court and the review court mischaracterized petitioner's claim of ineffective assistance of counsel against his appellant counsel, Bernard J. O'donnell and never addressed his claim, because the petitioner never argued that his appellant counsel abandoned him for filing a rule 26 (c), but argued that his counsel rendered ineffective assistance of counsel for conceding to a 1977, conviction that was the basis for the reversal of the petitioner's first sentence on direct appeal, because of insufficient evidence. See: John Folks V. State, Del., 291, 2004, number-12, pages- 6 and 7. The petitioner argued that the use of that 1977, conviction, exposed him to double jeopardy and that his appellant counsel should have objected to its use for the purpose of enhancing the petitioner's sentence, because the state does not get a second chance to prove or use a conviction that (they failed to prove the first time); was reversed based on insufficient evidence. See: Nelson, 109 S. Ct. at 290. The petitioner told his counsel that he does not concede to that 1977, conviction and to object to its use by the court, because the court was collateral estoppels from considering that conviction, but instead of his counsel objecting to that conviction (the very same conviction he objected to on direct appeal), he conceded to it, thus prejudicing the petitioner and allowing the court to enhance the petitioner's sentence because of that 1977, conviction. See: Collateral estoppels in Blacks dictionary. See: Petitioner's brief to his appeal of his post-conviction denial, that's in the record, numbers- 5 and 6, pages- 17, 18 and 19. Also See: Appellant counsel's first opening brief of petitioner's appeal of, 291, 2004, that's in

<center>14</center>

the record, pages- 12, 13 and 14. See: Petitioner's resentencing hearing transcripts, that's in the record, page- 4, line-14-23, page-5, line- 1-23 and page-11, line-7-14. Also See: Bernard J. O'donnell's affidavit to petitioner's post-conviction motion, that's in the record, number-4). See: Petitioner's arguments in appellant's counsel's second brief under rule 26(c), that's in the record, arguments numbers-(1), (2) and (3) and See: Petitioner's memorandum of law in support of his rule 61 post-conviction motion, in the record, letter- (i) (1), pages-12 and 13 and See: Procedural statements, page-(2). Also See: Lawyer's professional rules of conduct, rules- 1.1., 1.2., 1.3., and 1.4. The petitioner argues that he met all procedural requirements when pertaining to this issue and asserts that his appeals counsel's, Bernard J. O'donnell, representation fell below an objective standard of reasonableness, and "but for" the counsel's unprofessional error's, the outcome of his case would have been different. See: Strickland V. Washington, 466, U.S. 668 (1984); See: John Folks V. Del., 563, 2006, page-5, number-9 and 10, after finally, where the review court mischaracterized petitioner's claim; by determinating petitioner's ineffective assistance claim against his appellant counsel; based on an argument that the petitioner never argued against his appellant counsel. See: Petitioner's memorandum of law in support of his rule 61 post-conviction motion, letter- (H), pages- 10 and 11, where the petitioner argued that it was his trial counsel, James A. Bayard Jr., who abandoned him after filing petitioner's notice of appeal, not his appeals counsel, Bernard J. O'donnell. The lower court or review court could not have addressed the petitioner's claim based on the merits, because the courts never actually read/reviewed the petitioner's claim and the record does support this claim.

15

## Ground Three

3.                                      ## Double Jeopardy

The defendant/petitioner was convicted and sentenced twice for

one weapon, a knife.

### Standard and Scope of Review

In a proceeding instituted by an application for a writ of habeas

corpus by a person in custody pursuant to the judgment of a state court, a

determination of a factual issue made by a state court shall be presumed to be

correct. The application shall have the burden of rebutting the presumption of

correctness by clear and convincing evidence. 28 U.S.C. § 2254 (e)(1), Lewis V.

Johnson, 359 F. 3d 646, 652, 658 (3rd cir. 2004).

### Delaware Supreme Court Decision

In its opinion, the Delaware Supreme Court determined that this

claim was procedurally barred, because this claim was not raised on direct appeal.

The state court proceeding resulted in a decision that was contrary

to, or involved unreasonable application of clearly established federal law, as

determined by the Supreme Court of the United States, cause any procedural fault

was caused by the petitioner's counsels, who refused to object to this issue at trial

or raise this issue on direct appeal and because the fifth amendment guarantees

that no person shall be subject for the same offense to be twice put in jeopardy of

life or limb. The pro-se litigant/petitioner, therefore, had to and did show cause

and prejudice, did demonstrate a miscarriage of justice of a constitutional

violation and did make concrete allegations and substantiate them with factual

16

evidence in his rule 61 post-conviction motion and memorandum of law.
Petitioner also asserts that this claim was properly raised within his ineffective
assistance claim, as well as a separate issue, under 61 (i)(3) and 61 (i)(5). See:
Procedural statements in petitioner's memorandum of law in support of his rule
61 motion, that's in the records, page-(2) and (3) and See: Letter- (i), page-(12).
This is a question of law.

### Argument

**(I)**        The petitioner argues that when he was convicted and sentenced
for first degree robbery and for possession of a deadly weapon during the
commission of a felony, he was placed in double jeopardy; cause the same
weapon that he was convicted and sentenced separately, was the same weapon
used to enhance the robbery charge from second degree to first degree. That's
double jeopardy. See: 11 Del. C. § 831 and 832. Also the constitution principle
double jeopardy protects a defendant against (1) successive prosecution (2)
multiple charges under separate statutes requiring proof of the same factual
elements; (3) multiple charges under the same statute. The petitioner argues that
in his case, he was charged with; convicted and sentenced for first degree robbery;
because of the same weapon that he was separately charged with; convicted and
sentenced for possession of a deadly weapon during the commission of a felony.
Delaware's own law states that a defendant may not be convicted of more than
one offense if "one offense is included in the other. See: 11 Del. C. § 206 (a) (1).
See: Petitioner's memorandum of law in support of his post-conviction motion,
letters- (J), (J) (1) and (J) (2), pages- 13, 14 and 15. Those convictions and

sentences implicate the mulplicity doctrine, cause the conduct constituted a single continuance act for which a defendant may properly be convicted only once. See: Harris V. Oklahoma, 95 S. Ct. 2912 (1977). The blockburger test also inquires whether each offense contains elements not contained in the other, if not they are the "same offense" and double jeopardy bars additional punishment and successive prosecution. See: U.S. V. Dixon, 113 S. Ct. 2849 (1993) and See: Block burger, 52 S.Ct. 180, 182. The test of whether one criminal offense merges into another is whether one necessarily involves the other, whether one is an integral part of the other. In the petitioner's case, the weapon is an integral part of first degree robbery. See: 11 Del. C. § 832. See: Williams V. Del. Supr., 818 A. 2d 906 (2002) and See: State V. Honie, 310 A. 2d 872, 873. The protection against double jeopardy is fundamental to our criminal justice system, which is binding on through the fourteenth amendment. See: Benton V. Maryland, 395 U. S. 784 (1996) and See: State V. Cook, Del. Supr. 600 A. 2d 352 (1991). The petitioner also contends that the weapon offense and the underlying felony are always the same offense for the purpose of imposing punishment, because proof of one is subsumed in proof of the other, so cumulative imprisonment should never be permissible. The weapon offense merged into the underlying felony, because the possession of a deadly weapon during the commission of a felony was a necessary ingredient of robbery first. See: Benton V. Ohio, 432 U. S. 161, and See: Ball V. U. S., 470 U. S. 856, 105 S. Ct. and See: White V. U. S., 515 U. S. 389, 132 L. Ed 2d 351. See: Petitioner's brief to his appeal of his post-conviction denial, that's in the record, number- (1), page- 7. The petitioner also

argues that any procedural fault was caused by his counsel's failures and
ineffectiveness. See: Johnson V. Ellingsworth, 783 F. Supp. 215 (D- Del. 1992)
and Younger V. State, Del. Supr., 580 A. 2d 552 (1990). The petitioner argues
that his constitutional rights were violated, because he was convicted and
sentenced twice as a result of one weapon, against one person and in one act.
That's double jeopardy and the record does support this claim.

<center>Ground Four</center>

4.                        <center>Prosecutorial Misconduct</center>

(1 The prosecutor's Batson violation (2 the prosecutor's unethical manipulation of the trial court and (3 the prosecutor's acceptance of the defense counsel's breach of confidentiality, instead of reporting the breach.

<center>Standard and Scope of Review</center>

In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a state court, a determination of a factual issue made by a state court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254 (e) (1), Lewis V. Johnson, 359 F. 3d 646, 652, 658 (3rd cir. 2004).

<center>Delaware Supreme Court Decision</center>

In its opinion, the Delaware Supreme Court again failed to address all of the petitioner's issues, this time pertaining to the prosecutorial misconduct claim. The Supreme Court also used the Strickland standard to determine the prosecutor misconduct claim for a Batson violation and determined that the Batson violation claim against the prosecutor was procedurally barred, because it was not raised on direct appeal.

The state court proceeding resulted in a decision that was based on unreasonable determination of facts in light of the evidence presented in the state court proceeding, cause it was the petitioner's counsels who failed to object to the Batson violation and or raise this issue on direct appeal and was the cause of any

<center>20</center>

Procedural fault. See: Johnson V. Ellingsworth, 783 F. Supp. 215 (D-Del. 1992) and See: Younger V. State, Del. Supr., 580 A. 2d 552 (1990). The pro-se petitioner argued this issue under 61 (i)(3) and as a separate issue under (i)(5); did make concrete allegations and substantiate them with factual evidence. See: Petitioner's procedural statement in his memorandum of law in support of his post-conviction motion, pages- 2 and 3.

### Argument

J.    The petitioner argues that the prosecutor purposely excluded African Americans from the jury during his peremptory challenges and that a large portion of the proof is in the fact that there were no African Americans on the petitioner's jury, who is African American. The pro-se petitioner was denied access to the names and race of the jury members in his jury pool by the courts and could not properly argue this claim, but the state and the court was provided with this information any time they wanted it. See: Jury selection process in the transcripts, DK.67, pages- 7-34. The petitioner was denied due process of law, a fair trial and prejudiced against as a result of the prosecutor's bias selections. The courts gradually abolished race as a consideration for jury service See: George V. MCcollum, 112 S. Ct. 2348 and See: Strauder V. West Virginia, 100 U.S. 303, 25 L. Ed 664 (1990). The court has recognized that denying a person participation in jury service on the account of race, not only discriminate against the defendant, but unconstitutionally discriminate against the excluded juror. See: Powers, 100 U.S. at 308 and See: Batson, 476 U.S., at 87, 106 S. Ct., at 1718. See: Riley V. Taylor, 277 F. 3d 261 (3rd Cir. 2001)

Also, the Strickland Standard was misapplied to the prosecutorial misconduct claim in the court's denial of the petitioner's post-conviction motion, because the prosecutorial claim was the stronger claim and the Strickland Standard does not apply

21

to prosecutorial claims. See: State of Del. V. John Folks, I.D. # 0306015047, pages-5 and 6 See: Petitioner's brief to his appeal of his post-conviction denial, that's in the record, Number (2), pages 8 and 9. See: Petitioner's memorandum of law in support of his post-conviction motion, that's also in the record, letters- (K) and (K)(1). See: Defendant's/Petitioner's reply to the states response to the defendant's appeal of defendant's post-conviction motion denial, that's in the record, number (2), page- 2.

        K.     The prosecutor violated the professional rules of conduct, when he accepted a confidentiality breach from the petitioner's counsel, James A. Bayard Jr., instead of reporting the breach. The prosecutor conspired with the petitioner's counsel and changed a wrong conviction date on a habitual offender motion to the right conviction date on the habitual offender motion after the petitioner revealed that wrong conviction date to his counsel and told his counsel the right conviction date. The petitioner's counsel revealed that information to the prosecutor, thus allowing the prosecutor to change the wrong date to the right date before the motion was heard by the court, instead of challenging the motion, even though the petitioner asked him to. The prosecutor displayed unethical and prejudicial behavior by not reporting the petitioner's counsel for his unethical and prejudicial behavior of breaching confidentiality. See: Petitioner's memorandum of law in support of his post-conviction motion, that's in the record, letter- (K)(3), pages- 16 and 17. See: The letter on the amended motion that the prosecutor sent to the judge(trial court) after the petitioner's counsel informed him of the correct date, marked exhibit-79(A), in the appendix. See: The court docket sheet showing that two habitual offender motions sent to the court, one before the breach and one after the breach, court docket numbers- 31 and 33, marked exhibit 81. See: First habitual

offender motion, before the breach, marked exhibit-78 and See: Second habitual offender motion, after the breach and correction, marked exhibit-79(B), that's in the appendix. See: Counsel James A. Bayard Jr. affidavit to the petitioner's post-conviction motion, admitting to the breach, that's in the record, letter-(G). The petitioner does not feel that this issue was addressed by the lower court or the review court, but was raised by the petitioner.

L    The prosecutor also displayed unethical behavior, when he manipulated the trial court with a letter and violated the petitioner's fifth and fourteenth amendment rights. The prosecutor purposely manipulated the trial court with a letter , informing the judge that he intended to present evidence to prove that the petitioner was the person who committed a 1977, conviction even though a higher court had already ruled on that conviction and had reversed the petitioner's sentence because that conviction was not proven to be committed by the petitioner the first time. The prosecutor knew he was collateral estoppels from raising that issue about the 1977, conviction in court at resentencing, so he manipulated the trial court with a letter to revisit that 1977, conviction issue and enhance the petitioner's sentence, because of a conviction that was already adjudicated once by the Del. Supreme Court. The state is not suppose to get a second chance to prove or bring up an issue that was adjudicated once for insufficient evidence, but the state did through a manipulative letter to the trial court. See: Exhibit-86, in the appendix and See: John Folks V. Del., 291, 2004, Number-12, pages- 6 and 7. This issue was not addressed  by the lower court or the review court, but was raised by the petitioner. See: Petitioner's memorandum of law in support of his post-conviction motion, letter-(K)(3), pages-16 and 17.

## Ground Five

5                                                                      Judicial Misconduct

The trial court displayed biasness and abuse of discretion against the petitioner, when it showed favoritism towards the state, by granting the state an un requested extension and when it sentenced the petitioner based on false and unreliable information on the court docket sheet (Record).

### Standard and Scope of Review

In a proceeding instituted by an application for writ of habeas corpus by a person in custody pursuant to the judgment of a state court, a determination of a factual issue made by a state court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254 (e)(1), Lewis V. Johnson, 359 F. 3d 646, 652, 658 (3rd cir. 2004).

### Del. Supreme Court Decision

In its opinion, the Delaware Supreme Court determined that the trial court did not abuse its discretion, when granting the state an extension, but gave no opinion pertaining to the trial court relying on false and unreliable information for the purpose of sentencing.

The state court proceeding resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States, cause the petitioner's fifth and fourteenth amendment rights of due process of law were violated; when the trial court relied on false and unreliable information at sentencing.

24

## Argument

M.     The petitioner argues that the trial court was bias and abused its discretion, when it granted the state an extension, even though the state did not request for it. The state was ordered to file a memorandum in response to the petitioner's post-conviction motion by 5-22-06, but they did not respond by that date and the petitioner filed a summary judgment motion (which was never ruled on). It wasn't until 6-132-06, and after the petitioner mailed in his reply to his counsel's affidavits, that he received the state's memorandum to his post-conviction motion. The states late response allowed the state to respond to the petitioner's memorandum of law in support of his post-conviction motion and to his reply to his counsel's affidavits, all at once; even though that's not proper procedure. The petitioner was denied due process of law and prejudiced against by the court as a result of the courts failure to rule on the petitioner's summary judgment motion and/or by allowing the state to respond to the petitioner's memorandum of law and replies whenever they want, without any sanctions being imposed against them. The petitioner would have been procedurally barred if he had not filed any of his petitions on time, without any courteous extensions. The trial court displayed biasness and violated the petitioner's right to equal protection under the law by showing the state favoritism and granting them an unrequested extension. See: Petitioner's extended supplemental reply to the states response to the petitioner's post-conviction motion, that's in the record, marked exhibit- A███, page (2) and See: Petitioner's exhibit- (B). See: Court docket sheet, docket number- 98, where summary judgment motion was giving to the judge.

N.    The petitioner argues that the trial court abused its

discretion and displayed judicial misconduct, when it sentenced the petitioner based on

false and unreliable information in the record (docket sheet). The court docket sheet,

docket number- 46, indicates a rape conviction against the petitioner, however, the

petitioner has never been convicted of rape and there's very strong possibility and

likelihood that the court based its sentence partly on that false information. That false and

unreliable information was prejudicial to the petitioner and denied the petitioner a fair

hearing (sentencing). See: Court docket sheet, docket number- 46. Due process forbids

the judge from relying on false and unreliable information. See: U.S. V. Tucker, 404 U.S.

443, 447 (1972), See: U.S. V. Craven, 239 F. 3d 91, 103, (1st cir. 2001) and See: U.S. V.

Mannino, 212 F. 3d 835, 846-47 (3rd cir. (2000). Also See: Appellant's brief under rule

26 (c), That's in the record, petitioner's arguments, number-(3), pages-(2) and (3) and

See: Petitioner's memorandum of law in support of his post-conviction motion, letter- (L)

(2), pages- 18 and 19. This issue was never addressed by the lower court or the review

court and the record does support this claim.

## Ground Six

6.                    Violation Of Petitioner's Fifth Amendment Right

The petitioner was prejudiced when the jury was tainted by

a remark made by one of the jury members during the prosecutor's opening statements

and a mistrial should have been declared or a voir dire conducted.

### Standard and Scope of Review

In a proceeding instituted by an application for writ of

habeas corpus by a person in custody pursuant to the judgment of a state court, a

determination of a factual issue made by a state court shall be presumed to be correct.

The applicant shall have the burden of rebutting the presumption of correctness by clear

and convincing evidence. 28 U.S.C. § 2254 (e)(1), Lewis V. Johnson, 359 F. 3d 646, 652,

658 (3rd cir. 2004).

### Delaware Supreme Court Decision

In its John Folks V. Del, 291, 2004, opinion, the Delaware

Supreme Court concluded that the trial court did not err by failing to caution the

remaining juror's or by failing to declare a mistrial and determined that the juror's

statement could not have effected the remaining jurors.

The state court proceeding resulted in a decision that was

contrary to, or involved an unreasonable application of, clearly established federal law, as

determined by the Supreme Court of the United States, cause despite the Sixth

Amendment to the United States and Delaware's own law; Article 1, sec. 7 of the

Delaware constitution, guaranteeing a defendant in criminal cases the right to be tried by

27

an" impartial jury". The state court still determined that there was no error or abuse of discretion on the part of the trial court. This is a question of law.

Argument

O.    The Petitioner argues that during the prosecutor's opening statements, he outlined for the juror's the evidence he expected the state to present at trial. At one point during the argument, the prosecutor asked a rhetorical question in reference to the $180 in twenty dollar bills stolen from the victim and close to what the police recovered from the petitioner after his arrest:" And guess what he had in his hands"? One of the jurors spontaneously answered:" The $20s?" The prosecutor responded:" The $20 bills. Okay." See: Trial Transcripts of 1-15-04, that's in the record, DK.67, pages- 136-146. Jurors are constantly reminded by judges during trial that they are not to reach or discuss any conclusions about the defendant's guilt until they have heard all of the evidence at trial. In this case, however, in response to the prosecutor's opening statements, at least one juror concluded that the defendant was in possession of some of the money stolen from the robbery victim relatively soon after the money had been stolen.

One juror drew an inference of the defendant's guilt before any evidence had been presented to the jury. That amounts to a preconceived notion of the defendant's guilt and that a premature deliberation begun. The trial judge should have Sua Sponte conducted a detailed corrective individual voir dire of all of the jurors (since he did one of them), and his failure to do so compromised the petitioner's State and Federal Rights in guaranteeing him a fair trial. See: United States V. Clapps, 732 F. 2d 1143, 1152 (3rd cir.). Also, if a defendant can show that there exist a reasonable probability of juror taint that is inherently prejudicial in nature (which petitioner and

28

record did show), a presumption of prejudice should arise that a defendant's right to a fair trial has been infringed and juror bias will not be tolerated. A defendant can be denied his Sixth Amendment Right to a trial by an impartial jury if merely one juror is the subject of improper influence and inquiry into the juror's mental process is prohibited. See: John Folks V. State, Del., 291, 2004, number- 8, page- 4. See: Massey V. Del., 541 A. 2d 1252, 1254, 1256, 1257 (1988) and See: U.S.C.A. Constitution 6, Rules of evidence. In Banther V. State, Del, 783 A. 2d 1287 (Del. 2000), the court observed that juror impartiality must be maintained, not only in the interest of fairness to the accussed in the given case, but also to assure the integrity of the judicial process itself. Jury bias, either actual or apparent, undermines society confidence in its judicial system. Id; at 1290 (citing Jackson V. State, 374 A. 2d 1,2 (Del. 19977).

In the case of United States V. Console, 13 F. 3d 641 (3rd cir. 1993), the court emphasized the importance of conducting an individual voir dire of all jurors to dispel any concerns of improper influence.

Although the particular juror in question was excused after voir dire, none of the other remaining jurors were voir dired to determine if they too had reached a preconceived notion of the defendant's guilt The preconceived notion of guilt reached by one juror could have easily been held by the other jurors who were not excused. Under those circumstances, it was error for the trial court not to have declared a mistrial and selected another jury to which the evidence could be presented or voir dire the remaining jury to determine if they to have reached a preconceived notion of the defendant's guilt during the state's opening statement.

29

Ground Seven

7.    Violation of defendant's Fifth and Fourteenth Amendment Rights to a fair trial.

The defendant's Post-arrest statement was unduly Prejudicial; harmed the defense case and should not have been admitted.

## Standard and Scope of Review

In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the Judgment of a state court, a determination of ▓▓▓▓▓ a factual issue made by a state court shall be Presumed to be correct. The applicant shall have the burden of rebutting the Presumption of correctness by Clear and Convincing evidence, 28 U.S.C. § 2254 (e)(1), Lewis v. Johnson, 359 F. 3d 646, 652, 658 (3rd cir. 2004).

## Delaware Supreme Court's decision

In its opinion, the Del. Supreme Court determined that a Post-arrest statement by the defendant saying that "he was at the bank where the robbery occurred to Panhandle money for drugs," should not have been admitted, because the danger of unfair Prejudice outweighed the statements Probative value, but because some of the witnesses identified the Petitioner as the robber; the "untainted evidence of guilt" outweighs the significance of the error, therefore they find no reversible error.

The State Court Proceeding resulted in a decision that was based on unreasonable determination of facts in Light of the evidence presented in the state court Proceeding, cause The spectre of drug addiction could have and Probably did raise an inflammatory effect on the Jury at the trial and Prejudiced the Petitioner, thus denying the Petitioner a fair trial.

## ARGUMENT

P.  The Petitioner argues that the trial court determined that the defendant's statement -- that he was panhandling for money to buy drugs that night at the bank -- to be admissible on the ground that it was relevant to the defendant's intent and motive and that its relevance outweighed its prejudicial effect. The trial court would also give a limiting instruction to that effect, see: instructions in the transcripts, DK. 54, pages- 105-108. The trial court erred because there was little evidentiary need to introduce this evidence and therefore its relevance did not outweigh its prejudicial effects under D.R.E. (Delaware Rules of Evidence) 403. As a general proposition, evidence of a defendant's drug use may be admissible as relevant to the defendant's intent to steal. Howard v. State, 549 A. 2d 692 (Del. 1988). However, the state's evidence as to what had occurred at the bank was essentially clear. The defendant's drug addiction would add little to what the state was already prepared to offer. This evidence would invite too much of a risk that the jury would infer that the defendant acted in "conformity there with to a drug addicts propensities." see: D.R.E. 404 (b) and see: Deshields v. State, 706 A. 2d 502, 504 (Del. 1998). ("The fact that other crime evidence comports with one of the exceptions listed in Rule 404 (b) does not make it admissible per se"). There was little need for evidence of the defendant's drug addiction and the spectre of drug addiction could raise an inflammatory effect on jurors if there is little need for that evidence, see: CF. Deshields, 706 A. 2d, at 566-507. See: moorhead v. State, 638 A. 2d 52, 55 (Del. 1994) (the admission of evidence becomes unfairly prejudicial when the evidence has an "undue tendency to suggest decisions on a improper basis, commonly, although not necessarily, an emotional one") (emphasis in original) (citing F.R.E. (Federal Rules of Evidence) 403 advisory committee note). Under these circumstances, although limiting instructions were given to the jury, (see: Transcripts, DK. 54, pages- 105-108), the danger of unfair

31

Prejudice to the defendant exceeded the Prosecution's need for the evidence and the trial court abused its discretion by admitting it, thus denying the Petitioner a fair trial. D.R.E. 403. The ~~———~~ Delaware Supreme Court also erred by determining that the admission of this evidence could not have influenced the Jury's decision because the review court is forbidden to inquire into the minds of the Jury. see: U.S.C.A. Constitution. 6, Rules of evidence. see: Massey v. Del., 541 A. 2d 1252-57(1988).

## Ground Eight

### Double Jeopardy

8.

      At resentencing, Petitioner's sentence was enhanced based on a conviction that was adjudicated once by an higher court for insufficient evidence.

### Standard and Scope of Review

      In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a state court, a determination of a factual issue made by a state court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254 (e)(1), Lewis V. Johnson; 359 F. 3d 646, 652, 658 (3rd Cir. 2004).

### Delaware Supreme Court decision

      In its opinion, the Del. Supreme Court ruled that there was no error or abuse of discretion on the part of superior court for considering a 1977 conviction to enhance Petitioner's sentence; that the Delaware Supreme Court reversed in a previous ruling for insufficient evidence of that same 1977 conviction.

      The state court proceeding resulted in a decision that was contrary to, or involved an unreasonable application of clearly established federal law, as determined by the Supreme Court of the United States, cause the Petitioner's fifth amendment right was violated when he was placed in double jeopardy as a result of being sentenced twice based on a conviction that wasn't proven once before because of insufficient evidence. This is a question of law.

33

Argument

Q.    The Petitioner argues that he was placed in double Jeopardy when the trial court revisited a conviction to enhance the Petitioner's sentence; that was reversed in a Previous Del. Supreme Court ruling for insufficient evidence. See: John Folks V. Del., 291, 2004, Number - 12, Pages - 6 and 7. The Petitioner argues that the Delaware Supreme Court contradicted itself when it found no error or abuse of discretion on the part of Superior Court for considering the same conviction that was the basis for the reversal of the Petitioner's First Sentence by the Delaware Supreme Court. The trial court was barred from considering that conviction for the Purpose of enhancing the Petitioner's sentence, because that conviction was reversed because of insufficient evidence. See: Lockhart V. Nelson, 109 S.Ct. 290, 293. See: U.S. V. Olson, 751 F.2d 1126, 1128-29 (9th Cir. 1985), and See: U.S. V. Marchese, 46 F.3d 1020, 1022 (10th Cir. 1995). Also see: Burk V. U.S. 437, U.S. 1, 18, 98 S.Ct. 2141, 2150 (1978), and See: State V. Machin, 642 A.2d 1235 (1993). See: Resentencing Transcripts, in the record, Cr. ID No. 0306015047A, Pages - 4 and 5. The Petitioner argues that the State does not get a second chance to prove a conviction that was adjudicated once by a higher Court and reversed for insufficient evidence and neither does a Judge. see: Nelson, 109 S.Ct. 290, 293. The Petitioner argues that his fifth amendment right was violated because he was placed in double Jeopardy when the trial court used that once adjudicated 1977 conviction against him. See: John Folks V. Del. 311, 2005, Number - (3), (4), (5) and (6), Pages - 2, 3 and 4. Also See: Footnote on Page 2.

<u>CONCLUSION</u>

The Petitioner contends that he has proven that an injustice was rendered against him and urges this court to remand his case back to superior court for an evidentiary hearing and/or new trial, or any other relief to which the Petitioner may be entitled.

Respectfully Submitted,

John Folks

John Folks - Pro-se
Delaware Correctional Center
1181 Paddock Road
Smyrna, Delaware
19977

Date: 5-23-07

35

## IN THE SUPREME COURT OF THE STATE OF DELAWARE

| | |
|---|---|
| JOHN FOLKS, | ) |
| | ) No. 291, 2004 |
| Defendant Below, | ) |
| Appellant, | ) Court Below: Superior Court |
| | ) of the State of Delaware in |
| v. | ) and for New Castle County |
| | ) |
| STATE OF DELAWARE, | ) Cr. A. ID #0306015047A |
| | ) |
| Plaintiff Below, | ) |
| Appellee. | ) |

APR 2 7 2005

Submitted: February 16, 2005
Decided: April 25, 2005

Before **STEELE**, Chief Justice, **HOLLAND**, and **BERGER**, Justices.

### *ORDER*

This 25th day of April, on consideration of the parties' briefs, it appears to the Court that:

1.    John Folks appeals his first-degree robbery and weapons possession convictions in the Superior Court, claiming the trial judge erred by failing to declare a mistrial following a juror's in-court remark, by admitting a post-arrest statement, and by sentencing him as an habitual offender. Because the trial judge properly mitigated any prejudice to Folks by dismissing the offending juror, and because the error in admitting Folks's statement was harmless, we affirm Folks's conviction. But because the State failed to prove that Folks is an habitual offender

beyond a reasonable doubt, we vacate Folks' sentence and remand for resentencing.

2.    In June 2003, Folks approached Wayne McVey at a New Castle automated teller machine, placed a boxcutter to his throat and demanded McVey's money. When McVey failed to respond immediately, Folks grabbed at McVey's shirt pocket. The pocket ripped and McVey's money fell to the ground. As Folks stooped to retrieve the money, McVey kicked him, knocking the boxcutter out of Folks's hand. Despite McVey's resistance, Folks grabbed the money and ran. McVey and his stepson, who was nearby, chased Folks to an adjacent parking lot. Folks then entered a maroon car with out-of-state license plates and drove away.

3.    New Castle City Deputy Fire Chief William Simpson Jr., driving past the scene, noticed the robbery in progress and pursued Folks. Simpson contacted New Castle City Police dispatch and followed Folks until a city police officer joined the pursuit. Once police had entered the picture, Simpson returned to the bank. Folks, meanwhile, parked the vehicle at a hotel and fled on foot. The officer eventually apprehended Folks, and, after arresting and searching him, discovered four twenty-dollar bills in Folks's hands. Authorities later charged Folks with first-degree robbery, possession of a deadly weapon during the commission of a felony, and other related offenses.

4. During his opening remarks, the prosecutor outlined the events leading to Folks's arrest and the evidence that the State intended to introduce. The prosecutor told the jury that the arresting officer "will tell you that when he went to get [Folks] . . . what happened was he had money in his hands, and guess what he had in his hands?"[1] Juror Five then audibly exclaimed: "The twenties?"[2] Because neither party immediately objected, the prosecutor continued his opening statement. After both sides concluded their opening remarks, the trial judge called a sidebar and questioned Juror Five about his ability to remain impartial. The trial judge then dismissed Juror Five and resumed the trial.

5. Several witnesses then testified for the State. McVey and his stepson identified Folks as the perpetrator. The arresting officer also identified Folks as the individual he apprehended following the car chase. In addition, the jury heard a portion of Folks's post-arrest statement. In his statement, Folks stated he went to the bank to panhandle money to buy drugs.

6. The jury convicted Folks of first-degree robbery and the weapons possession charge. The trial judge then found Folks to be an habitual offender and sentenced him to forty years in prison. Folks now appeals, claiming the trial judge erred by failing to declare a mistrial following the juror's remark, by admitting the

---

[1] *State v. Folks*, Del. Super., ID No. 0306015047A (Jan. 15, 2004), Trial Tr. at 136.

[2] *Id.*

3

post-arrest statement, and by finding him to be an habitual offender and sentencing
him accordingly.

7.    Folks first claims that, following Juror Five's comment, the trial judge
erred either by failing to declare a mistrial or, alternatively, by failing to examine
the remaining jurors. A mistrial is a drastic remedy that only should be granted
"where there is manifest necessity or the ends of public justice would be otherwise
defeated."[3] Because Folks made neither request at trial, we review for plain error.[4]

8.    We conclude that the trial judge did not err by failing to caution the
jurors or by failing to declare a mistrial *sua sponte*. Juror Five's dismissal
eliminated any prejudice that may have resulted from his comment. Furthermore,
the juror's statement could not have affected the remaining jurors because the later
trial testimony confirmed that Folks carried four twenty-dollar bills in his hand
when the officer arrested him. The State proved that fact beyond a reasonable
doubt. On this record, Folks makes no credible showing that, once the trial judge
dismissed Juror Five, the remaining jurors would be prejudiced. Accordingly, we
find no plain error.

---

[3]    *Steckel v. State*, 711 A.2d 5, 11 (Del. 1998) (quotation marks and citation omitted). *See
also Dawson v. State*, 637 A.2d 57, 62 (Del. 1994) ("A mistrial is mandated only when there are
no meaningful and practical alternatives to that remedy.") (quotation marks and citation omitted).

[4]    DEL. SUPR. CT. R. 8. *See also Lagola v. Thomas*, 867 A.2d 891, 897 (Del. 2005)
("Absent plain error, we will not review claims that are not fairly presented to the trial court.").

9.     Folks next contends that the trial judge erred by admitting his post-arrest statement because the statement was inappropriate character evidence and had little independent evidentiary value.[5] He asserts that the prejudicial effect of his statement – panhandling to buy drugs – outweighed its probative value.[6] We review a trial judge's decision to admit evidence on a defendant's character for abuse of discretion.[7]

10.     Given the abundance of testimonial evidence indicating Folks's involvement in the robbery, Folks's admission that he was present at the bank could hardly have prejudiced him. The potential prejudicial effect of admitting evidence of drug use, on the other hand, would have an immediate and negative impact on the jury.  Because the danger of unfair prejudice outweighed the statement's probative value, we find that it should not have been admitted. Nonetheless, because McVey, the stepson, and the arresting officer all identified

---

[5]     *See* D.R.E. 404(b) (prohibiting admission of other wrongful acts "to prove the character of a person in order to show action in conformity therewith").

[6]     *See* D.R.E. 403 (allowing exclusion of relevant evidence when its "probative value is substantially outweighed by the danger of unfair prejudice").

[7]     *Allen v. State*, 644 A.2d 982, 985 (Del. 1994) ("When the thrust of the objection was that the probative dangers attending the uncharged misconduct outweighed the probative value of the evidence, abuse of discretion is an appropriate standard of review. Given the intangible nature of the factors to be balanced, the appellate court must accord the trial judge wide latitude."), *citing* EDWARD J. IMWINKELRIED, UNCHARGED MISCONDUCT EVIDENCE § 9:70 (1992).

5

State introduced no other evidence supporting the conviction and the record is devoid of any information linking the name to John Folks, other than a similarity in name. Because an ambiguity in identity exists, the State did not prove that this defendant committed the predicate offense beyond a reasonable doubt. The trial judge therefore erred by sentencing Folks as an habitual offender. Accordingly, Folks's sentence must be vacated.

NOW, THEREFORE, IT IS ORDERED that the judgment of the Superior Court sentencing Folks as an habitual offender is **VACATED**. The matter is **REMANDED** to the Superior Court to resentence Folks in a manner consistent with this Order. The judgments of conviction are **AFFIRMED**.

Chief Justice

IN THE SUPREME COURT OF THE STATE OF DELAWARE

| | |
|---|---|
| JOHN FOLKS, | § |
| | § No. 311, 2005 |
| Defendant Below- | § |
| Appellant, | § |
| | § Court Below—Superior Court |
| v. | § of the State of Delaware |
| | § in and for New Castle County |
| STATE OF DELAWARE, | § Cr. ID No. 0306015047A |
| | § |
| Plaintiff Below- | § |
| Appellee. | § |

Submitted: November 14, 2005
Decided: January 26, 2006

Before **STEELE**, Chief Justice, **BERGER** and **RIDGELY**, Justices

### O R D E R

This 26th day of January 2006, upon consideration of the appellant's
brief filed pursuant to Supreme Court Rule 26(c), his attorney's motion to
withdraw, and the State's response thereto, it appears to the Court that:

(1)    The defendant-appellant, John Folks, was found guilty by a
Superior Court jury of Robbery in the First Degree and Possession of a
Deadly Weapon During the Commission of a Felony. He was sentenced on
the robbery conviction to 12 years incarceration at Level V, to be suspended
after 10 years for decreasing levels of probation, and on the weapon

EXHIBIT - 5

conviction to 10 years incarceration at Level V.[1] This is Folks' direct appeal of his sentences following re-sentencing by the Superior Court.

(2)    Folks' trial counsel has filed a brief and a motion to withdraw pursuant to Rule 26(c). The standard and scope of review applicable to the consideration of a motion to withdraw and an accompanying brief under Rule 26(c) is twofold: (a) the Court must be satisfied that defense counsel has made a conscientious examination of the record and the law for claims that could arguably support the appeal; and (b) the Court must conduct its own review of the record and determine whether the appeal is so totally devoid of at least arguably appealable issues that it can be decided without an adversary presentation.[2]

(3)    Folks' counsel asserts that, based upon a careful and complete examination of the record, there are no arguably appealable issues. By letter, Folks' counsel informed Folks of the provisions of Rule 26(c) and provided him with a copy of the motion to withdraw, the accompanying brief and the complete trial transcript. Folks also was informed of his right

---

[1] The Superior Court previously had sentenced Folks as a habitual offender to a total of 40 years of Level V incarceration. On direct appeal, this Court affirmed Folks' convictions, but vacated his sentences and remanded the matter to the Superior Court for re-sentencing. This Court held that, because of an "ambiguity in identity," the State had failed to prove beyond a reasonable doubt that Folks had committed a 1977 weapon offense and, therefore, was eligible to be sentenced as a habitual offender. *Folks v. State*, Del. Supr., No. 291, 2005, Holland, J. (Apr. 25, 2005).

[2] *Penson v. Ohio*, 488 U.S. 75, 83 (1988); *McCoy v. Court of Appeals of Wisconsin*, 486 U.S. 429, 442 (1988); *Anders v. California*, 386 U.S. 738, 744 (1967).

2

to supplement his attorney's presentation. Folks responded with a brief that raises one issue for this Court's consideration. The State has responded to the position taken by Folks' counsel as well as the issue raised by Folks and has moved to affirm the Superior Court's judgment.

(4)    Folks raises one issue for this Court's consideration. He claims that the Superior Court's consideration of a 1977 conviction of carrying a concealed deadly weapon was improper for purposes of his re-sentencing because that was the conviction this Court determined was invalid for establishing his status as a habitual offender.

(5)    The transcript of Folks' re-sentencing reflects the following. The State no longer sought to have Folks sentenced as a habitual offender. Folks'-attorney conceded that Folks had been convicted of carrying a concealed deadly weapon in 1977. After hearing argument by Folks, Folks' attorney and the attorney for the State, the Superior Court stated, "I'm not sentencing you as a habitual offender. . . . in this case, though, I think it's to be expected that when a fourth felony comes along, . . . the sentence is going to spike upwards . . . . previous shorter sentences were not successful in keeping the public safe from acts of violence committed by you."

(6)    We find no error or abuse of discretion on the part of the Superior Court. Under the circumstances of this case, the Superior Court

3

was within its discretion to consider the previous 1977 conviction in sentencing Folks, since it constituted relevant information pertaining to Folks' personal history.[3]  Moreover, there is no evidence that the sentences imposed were illegal.  While severe, the sentences were within the limits authorized by statute.[4]

(7)  This Court has reviewed the record carefully and has concluded that Folks' appeal is wholly without merit and devoid of any arguably appealable issue.  We also are satisfied that Folks' counsel has made a conscientious effort to examine the record and has properly determined that Folks could not raise a meritorious claim in this appeal.

NOW, THEREFORE, IT IS ORDERED that the State's motion to affirm is GRANTED.  The judgment of the Superior Court is AFFIRMED.  The motion to withdraw is moot.

BY THE COURT:

Justice

---

[3] *Mayes v. State*, 604 A.2d 839, 842-43 (Del. 1992).
[4] Del. Code Ann. tit. 11, §§ 832 and 1447; *Ward v. State*, 567 A.2d 1296, 1297 (Del. 1989).

4

## IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

## IN AND FOR NEW CASTLE COUNTY

STATE OF DELAWARE          )
                           )
                           )    I.D. #0306015047
v.                         )
                           )
JOHN FOLKS,                )
                           )
Defendant                  )
                           )

Submitted: August 18, 2006
Decided: September 25, 2006

Upon Defendant's Motion for Postconviction Relief.
**DENIED.**

### ORDER

Stephen M. Walther, Esquire, Deputy Attorney General, Department of
Justice, Wilmington, Delaware, Attorney for the State.

John Folks, Smyrna, Delaware, *pro se.*

COOCH, J.

This 25th day of September, 2006, upon consideration of Defendant's

motion for postconviction relief, it appears to the Court that:

### A. Procedural history

1.    John Folks ("Defendant") was arrested on June 23, 2003, and then

indicted on July 28, 2003, for Robbery First Degree, Possession of a Deadly

Weapon during the Commission of a Felony ("PDWDCF"), Possession of a Deadly Weapon by a Person Prohibited,[1] and Resisting Arrest.[2] At trial in January 2004, the jury found Defendant guilty of First Degree Robbery and PDWDCF. This Court sentenced Defendant as a habitual offender to a total of 40 years of Level V incarceration. Defendant appealed his conviction on the grounds that the trial court erred by failing to declare a mistrial following a juror's in-court remark, by admitting a post-arrest statement, and by sentencing him as a habitual offender. On April 25, 2005, the Supreme Court affirmed the conviction but vacated Defendant's sentencing and remanded for resentencing, holding that the State had failed to prove that Folks was a habitual offender beyond a reasonable doubt.[3] This Court resentenced Defendant on July 8, 2005 to 12 years at Level V, suspended after 10 years for 2 years at decreasing levels of supervision for the robbery conviction and 10 years at Level V on the weapon conviction. Defendant appealed again and the Supreme Court affirmed on February 17, 2006.[4]

2.    Defendant filed this timely motion for postconviction relief pursuant to Superior Court Criminal Rule 61 on March 27, 2006. Defendant's motion

---

[1] A motion to sever this count was filed and granted by the Court.

[2] The state nolle prossed this count before trial.

[3] *Folks v. State*, 2005 WL 974782 (Del.Supr.).

[4] *Folks v. State*, 2006 WL 212102 (Del.Supr.).

2

alleges ineffective assistance of counsel, double jeopardy, prosecutorial misconduct, and judicial misconduct.

## B. Possible procedural bars

3.      Before addressing the merits of a motion for postconviction relief, the Court must first apply the procedural bars of Superior Court Criminal Rule 61 ("Rule 61").[5] If a procedural bar exists, then the Court will not consider the merits of the postconviction claim.[6] Rule 61(i) will bar (1) a motion filed more than one year after a final judgment of conviction, (2) any ground for relief that was not asserted in a prior postconviction proceeding, (3) any ground for relief that was not asserted at trial or on direct appeal, as required by court rules, (4) any ground for relief that was formerly adjudicated. Claimants can avoid the first three of these procedural bars, however, if under 61(i)(5), if they can show the court lacked jurisdiction or "a colorable claim that there was a miscarriage of justice because of a constitutional violation."

4.      In applying the procedural bars to this motion, Defendant's claim of "judicial misconduct" is barred by Rule 61(i)(4). Defendant alleges that this Court erred by considering a 1977 conviction of carrying a concealed deadly weapon for purposes of his resentence. However, Defendant already

---

[5] *Younger v. State*, 580 A.2d 552, 554 (Del. 1990).
[6] *Id.*

3

appealed this issue to the Supreme Court and lost.[7] Therefore, this Court
will not address the merits of that claim.

5.    This is the first opportunity Defendant has had to raise his ineffective
assistance of counsel claims. Thus, none of the procedural bars of Rule 61
preclude consideration of this claim. Therefore, the Court will address the
merits of the claim.

### C. Ineffective assistance of counsel

6.    To succeed on an ineffective assistance of counsel claim, Defendant
must show both (a) "that counsel's representation fell below and objective
standard of reasonableness" and (b) "that there is a real probability that, but
for the counsel's unprofessional errors, the result of the proceeding would
have been different."[8]  Failure to satisfy one prong will render the claim
unsuccessful and the court need not address the remaining prong. Moreover,
allegations that are entirely conclusory are legally insufficient to prove
ineffective assistance of counsel; the defendant must allege concrete
allegations of actual prejudice and substantiate them.[9]  Furthermore, when
evaluating counsel's performance, "a court must indulge a strong

---

[7] *Folks*, 2006 WL 212102, at *2 ("the Superior Court was within its discretion to consider
the previous 1977 conviction in sentencing Folks, since it constituted relevant
information pertaining to Folks' personal history").

[8] *Stickland v. Washington*, 466 U.S. 668, 688, 694 (1984).

[9] *Jordan v. State*, 1994 WL 466142 (Del Supr.) (citing *Younger v. State*, 580 A.2d 552
(Del. 1990)).

4

presumption that counsel's conduct falls within the wide range of professional assistance."[10]

### i. Double jeopardy

7.    Defendant asserts that his convictions of First Degree Robbery and PDWDCF violate double jeopardy protections, in that his possession of a weapon was incorporated in the robbery charge, thus he is being punished twice for the "same offense." He claims that both his defense counsel at trial and his defense counsel on appeal were ineffective for failing to make this argument. However, the Defendant cannot show that defense counsels' decision not to raise this issue fell below an objective standard of reasonableness when the Delaware Supreme Court has consistently rejected this argument.[11] Defendant also raises this double jeopardy claim as an independent ground in his motion, but as already stated, this claim has no merit.

### ii. Jury selection process/ prosecutorial misconduct

8.    Defendant next challenges the jury selection process. He claims that "he was denied due process of law and prejudiced against, when the prosecutor purposely and selectively excluded afro-americans from the jury

---

[10] *Id.* at 689.

[11] *See Thomas v. State*, 467 A.2d 954 (Del. 1983) (rejecting defendant's claim that imposition of separate sentences for Robbery First Degree and PDWDCF violated the Double Jeopardy Clause of the Fifth Amendment).

5

during his peremptory challenges" in violation of *Batson v. Kentucky*.[12]  He

raises this issue under the grounds of ineffective assistance of counsel as

well as prosecutorial misconduct.  However, he provides no specific

evidence that supports this conclusory allegation, nor did he attempt to

demonstrate any prejudice that resulted.  Therefore, this claim fails under the

two-prong test articulated in *Strickland*.

9.     In addition, Defendant argues that his counsel was ineffective when

he failed to include in the jury voir dire a question as to whether any of the

potential jurors had seen Defendant's case on television or in the newspaper.

The transcript, however, directly contradicts this allegation.  The pool of

jurors was asked, "Do you know anything about this case through personal

knowledge, discussion with anyone, the news media, or any other source?"[13]

Therefore, this claim is meritless.

### iii. Counsel's performance at trial

10.    Defendant next makes several claims about his counsel's performance

at trial.  It is plain from the motion and the record that none of Defendant's

claims entitle him to relief as they are all completely conclusory.[14]  First, he

faults counsel for not compelling the prosecution to produce an alleged

---

[12] 476 U.S. 79 (1986).

[13] Trial Tr. of 1/15/2005 at 8.

[14] *See Younger*, 580 A.2d at 556 (holding that conclusory allegations are legally insufficient to prove ineffective assistance of counsel).

6

exculpatory interrogation tape. He makes no attempt to explain how this tape would have affected the outcome of the case. Further, the record and trial counsel's affidavit suggest that there was no such tape.[15] Thus, this conclusory claim also fails to demonstrate ineffective assistance of counsel.

11.    Next, Defendant claims his counsel should have made more objections during the trial, including objections to what he refers to as "surprise witnesses." He asserts that the prosecution did not notify him or his counsel of two of the state's witnesses until the day of trial. In addition, Defendant states that his counsel should not have allowed Mevey and Diehl to be excused after testifying because Simpson (a "surprise witness") later contradicted their testimony. However, Defendant has not alleged any facts to suggest that counsel's conduct fell below an objective standard of reasonableness or that he suffered actual prejudice.[16]

12.    Defendant also claims that counsel did not ask enough questions on cross-examination. Specifically, Defendant states "his counsel prejudiced him and denied him equal protection under the law when he refused to ask vital and important questions to the state's witnesses on cross-examination. Petitioner argues that his counsel only asked witnesses enough question to

---

[15] James A. Bayard, Jr. Aff. at 2.

[16] *Strickland*, 466 U.S. at 689 ("It is all tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable.")

7

satisfy the court and that his questions were baseless and effortless."

Similarly he asserts that counsel's summation was too short. In his motion,

he claims "in closing arguments, his counsel used approximately four pages

to sum up his argument, while the prosecution used approximately twenty-

two pages to sum up his argument." These claims are conclusory. He does

not provide any concrete allegations of actual prejudice. Moreover, the

Supreme Court has stated that, in the context of opening and closing

statements, "[b]revity alone does not state a claim of ineffective assistance

of counsel."[17]

13.    Defendant alleges that counsel refused to allow him to stand in front

of the jury in order to compare his height to that of the victim. Defendant

did not explain why this was would have been relevant or how he was

prejudiced as a result. Consequently, Defendant has not satisfied the

requirements for an ineffective assistance of counsel claim.

14.    Defendant also argues that "his counsel failed to investigate the

existence of accomplices." This is a vague and conclusory allegation. He

makes no concrete assertions to support this claim, nor does he even suggest

---

[17] *Flamer v. State*, 585 A.2d 736, 757 (Del. 1990) (holding that counsel's failure to give longer, more detailed opening and closing statements was not ineffective assistance of counsel).

8

that there were accomplices. Therefore, this claim also fails to demonstrate ineffective assistance of counsel.

15.    Defendant further claims that he was prejudiced when his counsel "abandoned him" on his second appeal. Supreme Court Rule 26(c) ("Rule 26(c)") allows trial attorneys to withdraw if, after a careful review of the record, they determine that there is no merit to the appeal. The Supreme Court conducted its own review of the record in connection with his counsel's Rule 26(c) motion to withdraw, and determined that the appeal was "wholly without merit and devoid of any arguably appealable issues."[18] Again, Defendant has failed to make the requisite showing of ineffective assistance of counsel.

### iv. *Habitual offender*

16.    Defendant alleges both his counsel at trial and his counsel on appeal provided ineffective assistance of counsel on the issue defendant's status as a habitual offender. These claims are moot. Defendant appealed his original sentence to the Supreme Court which vacated the sentence after finding the State had not met its burden in proving Defendant was a habitual offender.[19] Therefore, if any mistake was made, it has been cured by that decision.

---

[18] *Folks*, 2006 WL 212102, at *2

[19] *Folks*, 2005 WL 974782 at *3.

9

17.    For the reasons stated, Defendant's Motion for Postconviction Relief

is **DENIED**.

   **IT IS SO ORDERED.**

                                        _Richard R. Cooch_
                                        Richard R. Cooch, J.


oc:    Prothonotary
cc:    Investigative Services
       James A. Bayard, Jr., Esquire
       Bernard J. O'Donnell, Esquire

IN THE SUPREME COURT OF THE STATE OF DELAWARE

| JOHN FOLKS, | § | |
|---|---|---|
| | § | No. 563, 2006 |
| Defendant Below- | § | |
| Appellant, | § | |
| | § | Court Below—Superior Court |
| v. | § | of the State of Delaware |
| | § | in and for New Castle County |
| STATE OF DELAWARE, | § | Cr. ID No. 0306015047A |
| | § | |
| Plaintiff Below- | § | |
| Appellee. | § | |

Submitted: January 26, 2007
Decided: February 26, 2007

Before **STEELE**, Chief Justice, **HOLLAND** and **RIDGELY**, Justices

## O R D E R

This 26th day of February 2007, upon consideration of the briefs on appeal and the record below, it appears to the Court that:

(1)    The defendant-appellant, John Folks, filed an appeal from the Superior Court's September 25, 2006 order denying his motion for postconviction relief pursuant to Superior Court Criminal Rule 61. We find no merit to the appeal. Accordingly, we AFFIRM.

(2)    In January 2004, Folks was found guilty by a Superior Court jury of Robbery in the First Degree and Possession of a Deadly Weapon During the Commission of a Felony. He was sentenced as a habitual offender to a total of 40 years of Level V incarceration. On direct appeal,

this Court affirmed Folks' conviction, but vacated his sentences on the ground that the State had not established Folks' habitual offender status beyond a reasonable doubt.[1]  On remand, the Superior Court sentenced Folks on the robbery conviction to 12 years of Level V incarceration, to be suspended after 10 years for 2 years of probation, and on the weapon conviction to 10 years of Level V incarceration.  Those sentences were affirmed by this Court on direct appeal.[2]

(3)    In this appeal, Folks claims that a) his robbery and weapon convictions constitute a violation of double jeopardy; b) the State violated his constitutional rights during the jury selection process; c) the Superior Court abused its discretion by permitting the State to file its response to his postconviction motion beyond the due date, ignoring his arguments, and failing to schedule an evidentiary hearing; and d) his counsel provided ineffective assistance at trial and on appeal.

(4)    Folks' first claim is that his robbery and weapon convictions constitute a violation of double jeopardy.  Because Folks failed to present this claim in his direct appeal, it is barred in this proceeding[3] unless he can

---

[1] *Folks v. State*, Del. Supr., No. 291, 2004, Steele, C.J. (Apr. 25, 2005).

[2] *Folks v. State*, Del. Supr., No. 311, 2005, Steele, C.J. (Jan. 26, 2006).

[3] Super. Ct. Crim. R. 61(i) (3).

2

demonstrate a miscarriage of justice because of a constitutional violation.[4] This Court has consistently rejected the claim that concurrent convictions of robbery and weapon violations constitute a violation of double jeopardy.[5] Thus, in the absence of any evidence of a constitutional violation, we conclude that Folks' first claim is procedurally barred.

(5)    Folks' second claim is that the State violated his constitutional rights by preventing African-Americans from serving on his jury.[6]  Once again, because this claim was not raised in Folks' direct appeal, it is barred in this proceeding[7] unless he can demonstrate a miscarriage of justice because of a constitutional violation.[8]  In order to succeed on this claim, Folks must demonstrate that the prosecution improperly exercised its peremptory challenges with the intention of removing African-Americans from the venire.[9]  While Folks refers to the transcript of jury selection in support of his claim, the transcript does not reflect the existence of a constitutional violation.  In the absence of any such record evidence, we conclude that Folks' second claim also is procedurally barred.

---

[4] Super. Ct. Crim. R. 61(i) (5).

[5] *Thomas v. State*, 467 A.2d 954, 959 (Del. 1983).

[6] The record reflects that Folks is an African-American.

[7] Super. Ct. Crim. R. 61(i) (3).

[8] Super. Ct. Crim. R. 61(i) (5).

[9] *Batson v. Kentucky*, 476 U.S. 79, 97 (1986).

3

(6) Folks' third claim is that the Superior Court abused its discretion in connection with his postconviction motion---specifically, by permitting the State to file its response to his postconviction motion beyond the due date, ignoring his arguments by failing to cite the cases he cited, and failing to schedule an evidentiary hearing.

(7) While the record reflects that the Superior Court gave the State an extension in which to file its response to Folks' postconviction motion, there is no evidence that the Superior Court abused its discretion in so doing.[10] There is, furthermore, no evidence that, because it did not cite the same cases Folks did, the Superior Court ignored arguments made by Folks in his postconviction motion. Rather, the Superior Court's decision reflects that it properly addressed Folks' claims and cited the appropriate authority in denying those claims. Finally, there is no support for Folks' claim that the Superior Court abused its discretion by determining that an evidentiary hearing was unnecessary to its decision on Folks' postconviction motion.[11]

(8) Folks' final claim is that his counsel provided ineffective assistance both at trial and on appeal. In order to prevail on a claim of ineffective assistance of counsel, the defendant must demonstrate that counsel's representation fell below an objective standard of reasonableness

[10] Super. Ct. Crim. R. 45(b).
[11] Super. Ct. Crim. R. 61(h)(1) and (3).

and that, but for his counsel's unprofessional errors, the result of the proceeding would have been different.[12]   Moreover, the defendant must make concrete allegations of actual prejudice and substantiate them or risk summary dismissal of his claims.[13]

(9)   To the extent Folks argues that his counsel provided ineffective assistance by failing to assert a double jeopardy violation and a *Batson* violation, any such argument must fail. Folks' counsel cannot be faulted for failing to raise claims that have been determined to be without merit. Folks claims that his trial counsel provided ineffective assistance by failing to object to the Superior Court's initial finding that he was a habitual offender. However, because Folks' habitual offender sentence was vacated in his initial appeal,[14] he cannot demonstrate that any error on the part of his counsel with respect to that sentence resulted in prejudice to him. Folks' various claims of error on the part of his counsel during the course of trial were properly denied by the Superior Court as too conclusory and vague to merit consideration.[15]   Finally, Folks claims that his appellate attorney "abandoned" him by filing a Rule 26(c) brief in his second appeal after re-sentencing. Rule 26(c) permits an attorney to withdraw if there is no merit

---

[12] *Strickland v. Washington*, 466 U.S. 668, 688, 694 (1984).

[13] *Dawson v. State*, 673 A.2d 1186, 1196 (Del. 1996).

[14] *Folks v. State*, Del. Supr., No. 291, 2004, Steele, C.J. (Apr. 25, 2005).

[15] *Dawson v. State*, 673 A.2d at 1196.

5

to an appeal. Here, this Court found no merit to Folks' second appeal, thereby agreeing that counsel's withdrawal was appropriate.[16]

NOW, THEREFORE, IT IS ORDERED that the judgment of the Superior Court is AFFIRMED.

BY THE COURT:

Chief Justice

---

[16] *Folks v. State*, Del. Supr., No. 311, 2005, Steele, C.J. (Jan. 26, 2006).

6

FM: John Folks
SB# 136,234   UNIT MHU-21
DELAWARE CORRECTIONAL CENTER
1181 PADDOCK ROAD
SMYRNA, DELAWARE 19977

U.S.M.S.
PAY

LEGAL
X-RAY

MR. Peter T. Dalleo - Clerk of the court
U.S. District Court of Delaware,
844 North King Street, Lockbox 18
Wilmington, Delaware
19801



UNITED STATES POSTAGE
$ 04.60°
0001640691
MAILED FROM ZIP CODE 19977