**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| **JOHN FOLKS,** | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | Civ.Act.No. 07-334-*** |
| | ) | |
| **THOMAS CARROLL,** Warden and **JOSEPH R. BIDEN, III,** Attorney General for the State of Delaware | ) | |
| | ) | |
| Respondents. | ) | |

**ANSWER**

Pursuant to Rule 5 of the Rules Governing Section 2254 Actions, 28 U.S.C. foll. § 2254, respondents state the following in response to the petition for a writ of habeas corpus:

The Delaware Supreme Court described the circumstances of Folks' crimes in *Folks v. State,* 2005 WL 974782 (Del. 2005) (*Folks I*) (Ex. A):

> In June 2003, Folks approached Wayne McVey at a New Castle automated teller machine, placed a boxcutter to his throat and demanded McVey's money. When McVey failed to respond immediately, Folks grabbed at McVey's shirt pocket. The pocket ripped and McVey's money fell to the ground. As Folks stooped to retrieve the money, McVey kicked him, knocking the boxcutter out of Folks's hand. Despite McVey's resistance, Folks grabbed the money and ran. McVey and his stepson, who was nearby, chased Folks to an adjacent parking lot. Folks then entered a maroon car with out-of-state license plates and drove away.
>
> New Castle City Deputy Fire Chief William Simpson Jr., driving past the scene, noticed the robbery in progress and pursued Folks. Simpson contacted New Castle City Police dispatch and followed Folks until a city police officer joined the pursuit. Once police had entered the picture, Simpson returned to the bank. Folks, meanwhile, parked the vehicle at a hotel and fled on foot. The officer eventually apprehended Folks, and, after arresting and searching him, discovered four twenty-

> dollar bills in Folks's hands. Authorities later charged Folks with first-degree robbery, possession of a deadly weapon during the commission of a felony, and other related offenses.

*Folks I,* 2005 WL 974782 at *2.

Folks was convicted of first degree robbery and possession of a deadly weapon during the commission of a felony in January 2004. Thereafter, Folks was sentenced, as a habitual offender, to forty years imprisonment. *Folks I*, 2005 WL 974782 at *2; *State v. Folks*, 2006 WL 2742315 at *1 (Del. Super. 2006) (*Folks III*) (Ex. C). Folks' conviction was affirmed on appeal, but the Delaware Supreme Court vacated Folks' sentence, holding that the State had not established that Folks was a habitual offender beyond a reasonable doubt. *See Folks I*; *Folks III* at *1. On remand, Superior Court sentenced Folks to twelve years imprisonment, suspended after ten years for two years probation for the robbery conviction, and to ten years imprisonment for the related weapons charge. *Folks v. State*, 2006 WL 212102 at *1 (Del. 2006) (*Folks II*) (Ex. B); *Folks III* at *1. Folks' resentencing was upheld on appeal. *See Folks II*. In March 2006, Folks applied for state postconviction relief. Superior Court denied the motion in September 2006. *See Folks III*. Superior Court's denial of Folks' motion for postconviction relief was affirmed by the Delaware Supreme Court in February 2007. *See Folks v. State*, 2007 WL 1214658 (Del. 2007) (*Folks IV*) (Ex. D)

## Discussion

Petitioner raises seven grounds for relief: 1) his conviction on both first degree robbery and possession of a deadly weapon during the commission of a felony violated the Double Jeopardy Clause, 2) the prosecutor improperly used peremptory challenges in violation of *Batson v. Kentucky*, 3) the trial court was biased against him by granting an

unrequested extension to respond to his postconviction motion and erred by considering false or unreliable evidence in determining his sentence, 4) a variety of claims related to Folks' 1977 conviction for carrying a concealed deadly weapon, 5) the trial court erred by admitting Folks' statement that he was at the site of his robbery to panhandle for drugs, 6) the trial court erred by not questioning the entire jury panel after one juror responded to the prosecutor's rhetorical question, and 7) ineffective assistance of counsel at both the trial and appellate levels,. Because Folks raised each of these claims before the Delaware Supreme Court, all have been properly exhausted. Folks, however, is not entitled to relief because all of his claims are without merit. To the extent Folks raises claims not specifically addressed herein, they are without merit.

Folks has failed to show that he is entitled to relief on the merits. As explained by the Third Circuit, a federal court's consideration under §2254(d)(1) of a habeas petitioner's claim proceeds in two steps. The court "must first identify the applicable Supreme Court precedent and determine whether it resolves the petitioner's claim." *Werts v. Vaughn*, 228 F.3d 178, 197 (3d Cir. 2000). *See Lockyer v. Andrade*, 538 U.S. 63, 71 (2003). To do so, "it is not sufficient for the petitioner to show merely that his interpretation of Supreme Court precedent is more plausible than the state court's; rather, the petitioner must demonstrate that Supreme Court precedent requires the contrary outcome." *Werts*, 228 F.3d at 197. *See Mitchell v. Esparza*, 540 U.S. 12, 17 (2003) ("A federal court may not overrule a state court for simply holding a view different from its own, when the precedent from this Court is, at best, ambiguous."). Thus, if the Supreme Court has not established "a clear or consistent path" of jurisprudence for state courts to follow, the prisoner is not entitled to relief. *Lockyer*, 538 U.S. at 72. When looking to

Supreme Court precedent, the court "must decide the level of specificity at which [it] decide[s] whether the state decision is contrary to, or unreasonably applies, that precedent. . . . Supreme Court jurisprudence addressing §2254(d)(1) has established that determining the 'clearly established' benchmark should be done on a case-specific level." *Fischetti v. Johnson*, 384 F.3d 140, 148 (3d Cir. 2004). Under §2254(d)(1), "the Court views its precedents in their particular factual settings. The touchstone precedents are not to be examined by looking to broad pronouncements or generative principles in the opinion. The 'materially indistinguishable' test presupposes a fact-specific analysis of the Supreme Court case law." *Fischetti*, 384 F.3d at 148 (citing cases).

"If [the court] determine[s] that the state court decision is not 'contrary to' the applicable Supreme Court precedent, then [the court is] required to advance to the second step in the analysis -- whether the state court decision was based on an 'unreasonable application of' Supreme Court precedent." *Werts*, 228 F.3d at 197. In performing this inquiry, the court is "not authorized to grant habeas corpus relief simply because [it] disagree[s] with the state court's decision or because [it] would have reached a different result if left to [its] own devices." *Werts*, 228 F.3d at 197. Instead, the state court's application of Supreme Court precedent must have "resulted in an outcome that cannot reasonably be justified under existing Supreme Court precedent." *Werts*, 228 F.3d at 197. And as with the inquiry under the "contrary to" prong of the statute, "in analyzing habeas claims for unreasonable application of the law, the Supreme Court has looked at its own baseline precedents through a sharply focused lens." *Fischetti*, 384 F.3d at 149. The decisions of state and lower federal courts are relevant in assessing the reasonableness of the state court decision at issue, but "cases not decided by the Supreme Court do not

serve as the legal benchmark against which to compare the state decision." *Fischetti*, 384 F.3d at 149. Finally, in this context, Supreme Court precedent involving the interpretation of federal statutes is not enough; the relevant body of decisional law is that interpreting the federal Constitution. *Early v. Packer*, 537 U.S. 3, 10 (2002) (Court's holdings on non-constitutional issues are not "relevant to the §2254(d)(1) determination"); *Johnson v. Carroll*, 369 F.3d 253, 259-62 (3d Cir. 2004).

*Claim One: Double Jeopardy*

Folks claims that his rights under the Double Jeopardy Clause of the Fifth Amendment were violated when he was convicted of both first degree robbery and possession of a deadly weapon during the commission of a felony. The Supreme Court of the United States, in *Blockburger v. United States,* 284 U.S. 299, 304 (1932) clearly laid out the standard to be used when evaluating a claim under the Double Jeopardy Clause. "[W]here the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not." This Court, 20 years ago, rejected an identical double jeopardy claim. *Nasir v. Redman,* Civ. Act. No. 87-58-JLL, Rept. & Rec. at 7-8 (D.Del. Aug. 13, 1987) (Ex. E), *cert. prob. cause denied*, No. 87-3590 (3d Cir. October 28, 1987) (Ex. F). In light of *Nasir*, Folks sets out no double jeopardy claim.

*Claim Two: Batson violation and prosecutorial misconduct*

Folks next claims that the prosecutor, Steven Walther, committed a *Batson* violation by excluding all African American veniremen from the petit jury. The Delaware Supreme Court, in *Folks IV*, held that there was no merit to Folks' *Batson*

claim. Because Folks has not demonstrated that the state court's holding was "contrary to, or involved an unreasonable application of" *Batson*, he is not entitled to relief.

The Supreme Court of the United States, in *Batson v. Kentucky*, 476 U.S. 79, 97 (1986), held that the Equal Protection Clause forbids a prosecutor from excluding veniremen from serving on a petit jury solely on the basis of race. The *Batson* Court established a tripartite analysis to determine if a prosecutor excluded potential jurors in a discriminatory manner. "[A] defendant may establish a *prima facie* case of purposeful discrimination in selection of the petit jury solely on evidence concerning the prosecutor's exercise of peremptory challenges at the defendant's trial. Once the defendant makes a *prima facie* showing of racial discrimination (step one), the prosecution must articulate a race-neutral explanation for its use of peremptory challenges (step two). If it does so, the trial court must determine whether the defendant has established purposeful discrimination (step three)." *Riley v. Taylor*, 277 F.3d 261, 275 (3d Cir. 2001) (citations omitted). Folks was thus required to show some evidence that the prosecutor challenged jurors on the basis of race to the state courts in *Folks III* and *Folks IV*.

Folks has proffered nothing to indicate that the state court's findings were contrary to *Batson*. Folks merely makes the conclusory allegation that the prosecutor excluded African American jurors solely on the basis of their race. (A-38-39). In support of this contention, Folks cites to the transcript of the jury selection proceedings in his case. As the Delaware Supreme Court found, there is no basis in the record to find that a *Batson* violation occurred. *Folks IV*, 2007 WL 1214658 at *1. This conclusion is entitled to deference under 28 U.S.C. §2254(e)(1). Folks has done nothing to rebut this presumption of correctness. Folks did not object to Walther's use of peremptory

challenges before the trial court. Further, Folks' trial counsel, James A. Bayard, Jr., indicated that he observed no pattern of excusing minority jurors by the prosecutor. (Affidavit of James A. Bayard, Jr.). Because Folks failed to make even a *prima facie* showing of a *Batson* violation, he was not entitled to relief. Given the failings of Folks' argument, his related claim that Bayard was ineffective for failing to object to the prosecutor's *Batson* violation must also fail.

Folks also claims that Walther's failure to report Bayard's disclosure of the clerical error in the State's habitual offender motion amounted to prosecutorial misconduct. In its first motion to declare Folks a habitual offender (*See* Del. Super. Ct. Crim. Dkt. 0306015047A, D.I. 31), the State proffered a date of conviction that was misstated. Folks informed his attorney of the error, and his attorney informed the prosecutor, who filed a second, corrected version. (*See* Del. Super. Ct. Crim. Dkt. 0306015047A, D.I. 33). Folks argues that this breach of confidentiality is tantamount to ineffective assistance of counsel and, further, that Walther committed prosecutorial misconduct when he did not report Bayard's actions. Folks simply cannot establish prejudice on either his ineffectiveness or prosecutorial misconduct claims. Folks' initial sentence, as a habitual offender, was overturned by the Delaware Supreme Court in *Folks I*. The State elected not to renew its motion to declare Folks a habitual offender on resentencing. *See Folks II*, 2006 WL 212102 at *1. Because the State elected not to renew its motion to declare Folks a habitual offender, Folks was in no way harmed by his attorney's actions. Accordingly, he cannot establish prejudice and is not entitled to relief. As to Folks' claim that the prosecutor was required to report his attorney's alleged breach

of confidentiality, he fails to even assert what prejudice he suffered from this alleged breach. Thus he is not entitled to relief on his prosecutorial misconduct claim.

*Claim Three: Court bias and error*

Folks next claims that the Delaware Superior Court demonstrated actual bias towards him by granting the State a small extension of time to file its response to his motion for postconviction relief on June 9, 2006 rather than May 22, 2006 as originally ordered. Folks has proffered nothing to establish that the trial court was biased against him. "[T]he Due Process Clause clearly requires a 'fair trial in a fair tribunal,' before a judge with no actual bias against the defendant or interest in the outcome of his particular case." *Bracy v. Gramley*, 520 U.S. 899, 904-05 (1997) (citation omitted). "To state a due process claim that a judge was biased, defendant must show either that actual bias existed, or that an appearance of bias created a conclusive presumption of actual bias." *United States v. Lowe*, 106 F.3d 1498, 1504 (10th Cir. 1997). Delaware Superior Court Criminal Rule 45 permits the Court to grant an enlargement of time before the expiration of the period originally prescribed, with or without motion or notice, upon showing of cause. Folks has proffered nothing that would suggest that the Superior Court acted with any bias towards him. Nor has Folks demonstrated that he was prejudiced by the court's grant of additional time to the prosecution. Folks was given ample time to respond to the State's response in a "supplemental reply" and availed himself of the opportunity. (*See* Del. Super. Ct. Crim. Dkt. 0306015047A, D.I. 97, 99). Accordingly, Folks is not entitled to relief on this claim.

Folks also claims that the trial court erred when it sentenced him based on "false and unreliable information in the record (docket sheet)." (Pet. mem. at 25). Due process

requires that a sentencing decision not be based upon allegations which are "materially false." *Townsend v. Burke*, 334 U.S. 736, 740-41 (1948). According to Folks, the criminal docket "indicates a rape conviction against [Folks], however, the petitioner has never been convicted of rape." (Pet. mem. at 25). Folks' argument here is disingenuous. Docket item 46 is a letter Folks sent to the trial judge in response to the State's motion to declare Folks a habitual offender. (Letter, June 3, 2004; *See* Del. Super. Ct. Crim. Dkt. 0306015047A, D.I. 46). While the description of the letter is, perhaps, misleading – identifying the letter as "Defendant's letter filed. To: Judge Cooch Re: Rape conviction," the actual content of the letter correctly reflects that Folks had never been convicted of attempted rape. The record reflects that Folks was charged with attempted rape and a weapons charge in 1977. Folks, addressing the rape charge in his letter to the trial judge, states "In 1977, I was charged with attempted rape and weapons charges. During the trial the attempted rape charge was dismissed, because it never happened." (*See* Del. Super. Ct. Crim. Dkt. 0306015047A, D.I. 46). The State, in its motion to declare Folks a habitual offender, proffered a docket sheet from his 1977 conviction which indicated that the attempted rape charge had been dismissed. Folks has proffered nothing to suggest that the trial judge mistakenly believed that he had been convicted of attempted rape. Accordingly, Folks is not entitled to relief on this claim.

*Claim Four: Claims relating to a 1977 conviction*

Folks was convicted in 1977 of carrying a concealed deadly weapon. This conviction was used to support the prosecution's habitual offender motion and, after Folks' original sentence was reversed, was also presented to the sentencing judge for his use in determining an appropriate sentence. Folks raises a variety of claims related to this

conviction. Specifically, Folks argues that: a) the prosecutor committed misconduct by using information about the 1977 conviction to support both the habitual offender motion and later resentencing; b) his attorney, Bernard O'Donnell, was ineffective for conceding to the fact of the conviction at resentencing; and c) the trial court erred in considering the 1977 conviction when it resentenced him. In *Folks I*, the Delaware Supreme Court held that the State had proffered insufficient evidence to establish that Folks was convicted of the 1977 offense:

> In support of the first predicate offense, the State produced a court docket indicating that a "John T. Folks" was convicted of a felony in 1977. The State introduced no other evidence supporting the conviction and the record is devoid of any information linking the name to John Folks, other than a similarity in name. Because an ambiguity in identity exists, the State did not prove that this defendant committed the predicate offense beyond a reasonable doubt. The trial judge therefore erred by sentencing Folks as an [sic] habitual offender.

*Folks I*, 2005 WL 974782 at *3. When Folks was again brought before Superior Court for sentencing, his attorney conceded that Folks had been convicted of carrying a concealed deadly weapon in 1977. *Folks II*, 2006 WL 212102 at *1. The Delaware Supreme Court found that the trial court did not err in considering this conviction, as it "constituted relevant information pertaining to Folks' personal history." *Id.* Folks appears to be under the mistaken impression that the Delaware Supreme Court's reversal of his sentence as a habitual offender precluded the use of the 1977 conviction at his resentencing.

There is no question that Folks was convicted of carrying a concealed deadly weapon in 1977. Nor can there be any reasonable question that this prior conviction was relevant to the question of what punishment the trial court should impose. The Supreme Court of the United States has held that even uncharged criminal conduct may be used in

determining a sentence. *See Williams v. New York*, 337 U.S. 241 (1949). Folks acknowledged that he was convicted of the offense in a letter he wrote to the trial judge in response to the State's motion to declare him a habitual offender. (*See* Del. Super. Ct. Crim. Dkt. 0306015047A, D.I. 46). Further, his attorney, in his affidavit, stated that Folks could not present any evidence that he was not the person who committed the 1977 offense and Folks elected not to testify to that effect. (Affidavit of Bernard J. O'Donnell, Esq.) Thus his attorney could not have been ineffective for failing to contest the fact of Folks' 1977 conviction. Nor could the trial court or the prosecutor have erred by using Folks' 1977 conviction when determining his sentence in the case at bar. Accordingly, Folks is not entitled to relief on this claim.

*Claim Five: Admission of Folks' post-arrest statement*

Folks claims that the admission, by the trial court, of his post-arrest statement that he was at the scene of the robbery to panhandle for drugs was in contravention to the Delaware Rules of Evidence. Addressing this claim, the Delaware Supreme Court held that, while the statement was indeed inadmissible under D.R.E. 403, its admission was, nonetheless, harmless because "the 'untainted evidence of guilt' outweighs the 'significance of the error.'" *Folks I*, 2005 WL 974782 at *2. Folks argues that the conclusion reached by the state court was simply incorrect. However, because Folks has not asserted that the admission of the statement violated any provision of the United States Constitution, he is not entitled to relief. Section 2254(d) restricts a habeas court's review to claims, fairly presented to the state courts, that the state court's actions resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States.

Claims that the admission of evidence violated state evidentiary rules do not raise a federal claim.    *See Bright v. Snyder*, 218 F.Supp.2d 573, 578-79 (D.Del. 2002). Accordingly, Folks is not entitled to relief on this claim.

*Claim Six: Juror Remark*

Folks claims that he was denied his due process rights when the trial court failed to "conduct a detailed corrective individual *voir dire* of all jurors" after a juror spoke out during the prosecutor's opening statement. (Pet. mem. at 28). The Delaware Supreme Court, in *Folks I*, described the circumstances of the juror's remark:

> During his opening remarks, the prosecutor outlined the events leading to Folks's arrest and the evidence that the State intended to introduce. The prosecutor told the jury that the arresting officer "will tell you that when he went to get [Folks] ... what happened was he had money in his hands, and guess what he had in his hands?" Juror Five then audibly exclaimed: "The twenties?" Because neither party immediately objected, the prosecutor continued his opening statement. After both sides concluded their opening remarks, the trial judge called a sidebar and questioned Juror Five about his ability to remain impartial. The trial judge then dismissed Juror Five and resumed the trial.

*Folks I*, 2005 WL 974782 at *1. The Delaware Supreme Court held that the juror's "dismissal eliminated any prejudice that may have resulted from his comment." *Id.* at *2. The Court further held that "the juror's statement could not have affected the remaining jurors because the later trial testimony confirmed that Folks carried four twenty-dollar bills in his hand when the officer arrested him." *Id.* Folks has proffered no evidence that any juror was biased against him.    Accordingly, he is not entitled to relief.

*Claim Seven: Ineffective Assistance of Counsel*

Folks claims that his trial counsel provided constitutionally defective assistance in a litany of ways. Among the specific allegations that Folks levels against his trial counsel, James Bayard, are:  a) Bayard violated his duty of confidentiality to Folks by

revealing a clerical error to the prosecutor, after Folks had informed him of it, in the State's habitual offender motion, b) Bayard did not object to the State's use of a 1977 conviction that had been overturned on appeal in its habitual offender motion, c) Bayard did not compel the state to produce certain "exculpatory" evidence, d) Bayard did not make certain arguments in closing, e) Bayard did not allow Folks to stand in front of the jury, f) Bayard encouraged Folks to excuse black jurors from the venire and did not object to the prosecutor's *Batson* violation, and f) Bayard did not investigate two unidentified "witnesses." To the extent that Folks raises other claims of ineffectiveness not specifically addressed here, they are without merit.

To prevail on a claim of ineffective assistance of counsel, Folks must establish that (1) counsel's representation fell below an objective standard of reasonableness; and (2) there is a reasonable probability that, but for counsel's error, the result would have been different. *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984); *Wells v. Petsock*, 941 F.2d 253, 259 (3d Cir. 1991). The *Strickland* standard is "clearly established" for purposes of the AEDPA deference standard, 28 U.S.C., § 2254(d). *Williams v. Taylor*, 529 U.S. 362, 391, 120 S.Ct. 1495, 1511, 146 L.Ed.2d 389 (2000); *See Gattis v. Snyder*, 278 F.3d 222, 236 (3d Cir. 2002); *Lawrie v. Snyder*, 9 F. Supp. 2d 428, 434-35 (D.Del. 1998). A habeas petitioner must allege facts which, if accepted as true, would satisfy both prongs of the *Strickland* test: deficient performance and prejudice to the defense. *See Wells*, 941 F.2d at 259-60; *cf. Sistrunk v. Vaughn*, 96 F.3d 666, 670 (3d Cir. 1996).

Although not insurmountable, the *Strickland* standard is highly demanding and leads to a "strong presumption that the representation was professionally reasonable." *Strickland*, 466 U.S. at 689. Thus, to sustain an ineffectiveness claim, a petitioner must

make concrete allegations of actual prejudice and substantiate them or risk summary dismissal. *See Strickland,* 466 U.S. at 693, 696. *Wells*, 941 F.2d at 259-60; *Dooley v. Petsock*, 816 F.2d 885, 891-92 (3d Cir. 1987). "Where prejudice is lacking, the court need not determine whether the performance was subpar." *Marshall v. Hendricks*, 307 F.3d 36, 86 (3d Cir. 2002).

Although his claims of ineffectiveness are timely and exhausted, Folks is not entitled to federal habeas relief because he has not demonstrated that the Delaware courts' resolution of his particular claims:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d); *see Williams v. Taylor*, 529 U.S. 362, 412 (2000); *Hameen v. Delaware*, 212 F.3d 226, 235 (3d Cir. 2000); *Werts v. Vaughn*, 228 F.3d 178, 196-97 (3d Cir. 2000); *Matteo v. Superintendent, SCI Albion*, 171 F.3d 877, 885 (3d Cir.) (*en banc*), *cert. denied*, 528 U.S. 824 (1999) (determining the standard of review governing petitions for a writ of habeas corpus under revised § 2254(d)). Thus, under revised § 2254, a habeas petitioner is not entitled to relief unless he can establish that the decision of the state court was contrary to, or involved an objectively unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States. *See Gattis v. Snyder*, 278 F.3d 222, 228 (3d Cir.), *cert. denied*, 537 U.S. 1049 (2002); *Matteo*, 171 F.3d at 885; *Lawrie v. Snyder*, 9 F. Supp. 2d 428, 434 (D. Del. 1998). Moreover, factual determinations by state trial and appellate courts are presumed correct

absent clear and convincing evidence to the contrary, and a decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding. *See* §§ 2254(d)(2), (e)(1). *See also Williams,* 529 U.S. at 402-13; *Affinito v. Hendricks*, 366 F.3d 252, 256-57 (3d Cir. 2004); *Campbell v. Vaughn*, 209 F.3d 280, 286 (3d Cir. 2000), *cert. denied*, 531 U.S. 1084 (2001). Against this backdrop, Folks has not established that the state court's decision warrants relief under § 2254.

As a preliminary matter, it is readily apparent that the Delaware Supreme Court analyzed Folks' claim under the correct standard. *See Folks IV*, 2007 WL 1214658 at *2. The state supreme court concluded that Folks' claims that his attorneys were ineffective for failing to raise *Batson* and double jeopardy claims were clearly without merit because the substantive claims were not meritorious. *Id.* As previously noted, this holding was manifestly correct. The *Folks IV* court further concluded that the remainder of Folks' claims, as they had been presented to the Delaware Superior Court, were too vague and conclusory to warrant relief. *Id.*; *See Folks III*, 2006 WL 2742315. Folks has failed to establish that this conclusion was "contrary to, or involved an unreasonable application of" *Strickland. See Strickland*, 466 U.S. at 690, 693, 696. Accordingly, Folks is not entitled to relief.

Conclusion

Based upon the Superior Court docket sheet, it appears that transcripts of Folks' suppression hearing, trial, first and second sentencings have been prepared. In the event that the Court directs the production of any transcript, respondents cannot state with specificity when such transcript would be available. However, respondents reasonably

anticipate that such production would take 90 days from the issuance of any such order by the Court.

/s/ James T. Wakley
Deputy Attorney General
Department of Justice
820 N. French Street
Wilmington, DE 19801
(302) 577-8500
Del. Bar. ID No. 4612

DATE: October 24, 2007

**H**
Folks v. State
Del.Supr.,2005.
(The decision of the Court is referenced in the Atlantic Reporter in a 'Table of Decisions Without Published Opinions.')
Supreme Court of Delaware.
John FOLKS, Defendant Below, Appellant,
v.
STATE of Delaware, Plaintiff Below, Appellee.
**No. 291, 2004.**

Submitted Feb. 16, 2005.
Decided April 25, 2005.

**Background:** Following jury trial, defendant was convicted in the Superior Court, New Castle County, of first-degree robbery and weapons possession and sentenced as a habitual offender. Defendant appealed.

**Holdings:** The Supreme Court, Steele, C.J., held that:

(1) trial court's failure to declare a mistrial or to examine the remaining jurors after juror commented that defendant was carrying victim's $20 bills during the prosecutor's opening statement was not plain error;

(2) any probative value of defendant's post-arrest statement that he went to bank to panhandle money to buy drugs was substantially outweighed by danger of unfair prejudice;

(3) error in trial court's admission of the post-arrest statement was harmless; but

(4) evidence was insufficient to support sentence as a habitual offender.

Affirmed in part, vacated in part, and remanded.
West Headnotes
**[1] Criminal Law 110 ⚷1039**

110 Criminal Law
110XXIV Review
110XXIV(E) Presentation and Reservation in Lower Court of Grounds of Review
110XXIV(E)1 In General
110k1039 k. Custody and Conduct of Jury. Most Cited Cases
Trial court's failure to declare a mistrial sua sponte or to examine the remaining jurors after a juror commented that defendant was carrying victim's $20 bills during the prosecutor's opening statement in prosecution for robbery and weapons possession did not prejudice the defendant and, thus, was not plain error; any prejudice to defendant was eliminated by the dismissal of the juror and his statement could not have affected remaining jurors because trial testimony confirmed that defendant was carrying four $20 bills at the time of his arrest was later proved beyond a reasonable doubt. Sup.Ct.Rules, Rule 8.

**[2] Criminal Law 110 ⚷338(7)**

110 Criminal Law
110XVII Evidence
110XVII(D) Facts in Issue and Relevance
110k338 Relevancy in General
110k338(7) k. Evidence Calculated to Create Prejudice Against or Sympathy for Accused. Most Cited Cases
Any probative value of defendant's post-arrest statement that he went to bank to panhandle money to buy drugs was substantially outweighed by danger of unfair prejudice in prosecution for robbery and weapon possession, since admitting evidence of drug use would have an immediate and negative impact on the jury. Rules of Evid., Rules 403, 404(b).

**[3] Criminal Law 110 ⚷1169.12**

110 Criminal Law
110XXIV Review
110XXIV(Q) Harmless and Reversible Error
110k1169 Admission of Evidence
110k1169.12 k. Acts, Admissions, Declarations, and Confessions of Accused. Most Cited Cases
Error in trial court's admission of defendant's post-arrest statement that he went to bank to panhandle money to buy drugs was harmless in prosecution for robbery and weapon possession; because the victim, his stepson, and the arresting officer all identified defendant as the robber, the untainted evidence of guilt outweighed the significance of the error. Rules of Evid., Rules 403, 404(b).

**[4] Sentencing and Punishment 350H ⚷1381(6)**

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Ex A

350H Sentencing and Punishment
350HVI Habitual and Career Offenders
350HVI(K) Proceedings
350Hk1375 Evidence
350Hk1381 Sufficiency
350Hk1381(6) k. Identity. Most Cited Cases

Court docket indicating that person with a name similar to the defendant had previously committed a felony was insufficient to support sentence as a habitual offender under habitual offender statute following conviction for robbery and weapon offenses, absent evidence linking that name to the defendant. 11 Del.C. § 4214.

Court Below: Superior Court of the State of Delaware in and for New Castle County, Cr. A. ID # 0306015047A.

Before STEELE, Chief Justice, HOLLAND, and BERGER, Justices.

*ORDER*

***1** This 25th day of April, on consideration of the parties' briefs, it appears to the Court that:

1. John Folks appeals his first-degree robbery and weapons possession convictions in the Superior Court, claiming the trial judge erred by failing to declare a mistrial following a juror's in-court remark, by admitting a post-arrest statement, and by sentencing him as an habitual offender. Because the trial judge properly mitigated any prejudice to Folks by dismissing the offending juror, and because the error in admitting Folks's statement was harmless, we affirm Folks's conviction. But because the State failed to prove that Folks is an habitual offender beyond a reasonable doubt, we vacate Folks' sentence and remand for resentencing.

2. In June 2003, Folks approached Wayne McVey at a New Castle automated teller machine, placed a boxcutter to his throat and demanded McVey's money. When McVey failed to respond immediately, Folks grabbed at McVey's shirt pocket. The pocket ripped and McVey's money fell to the ground. As Folks stooped to retrieve the money, McVey kicked him, knocking the boxcutter out of Folks's hand. Despite McVey's resistance, Folks grabbed the money and ran. McVey and his stepson, who was nearby, chased Folks to an adjacent parking lot. Folks then entered a maroon car with out-of-state license plates and drove away.

3. New Castle City Deputy Fire Chief William Simpson Jr., driving past the scene, noticed the robbery in progress and pursued Folks. Simpson contacted New Castle City Police dispatch and followed Folks until a city police officer joined the pursuit. Once police had entered the picture, Simpson returned to the bank. Folks, meanwhile, parked the vehicle at a hotel and fled on foot. The officer eventually apprehended Folks, and, after arresting and searching him, discovered four twenty-dollar bills in Folks's hands. Authorities later charged Folks with first-degree robbery, possession of a deadly weapon during the commission of a felony, and other related offenses.

4. During his opening remarks, the prosecutor outlined the events leading to Folks's arrest and the evidence that the State intended to introduce. The prosecutor told the jury that the arresting officer "will tell you that when he went to get [Folks] ... what happened was he had money in his hands, and guess what he had in his hands?"[FN1] Juror Five then audibly exclaimed: "The twenties?" [FN2] Because neither party immediately objected, the prosecutor continued his opening statement. After both sides concluded their opening remarks, the trial judge called a sidebar and questioned Juror Five about his ability to remain impartial. The trial judge then dismissed Juror Five and resumed the trial.

FN1. *State v. Folks,* Del.Super., ID No. 0306015047A (Jan. 15, 2004), Trial Tr. at 136.

FN2. *Id.*

5. Several witnesses then testified for the State. McVey and his stepson identified Folks as the perpetrator. The arresting officer also identified Folks as the individual he apprehended following the car chase. In addition, the jury heard a portion of Folks's post-arrest statement. In his statement, Folks stated he went to the bank to panhandle money to buy drugs.

***2** 6. The jury convicted Folks of first-degree robbery and the weapons possession charge. The trial judge then found Folks to be an habitual offender and sentenced him to forty years in prison. Folks now appeals, claiming the trial judge erred by failing to declare a mistrial following the juror's remark, by admitting the post-arrest statement, and by finding

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

him to be an habitual offender and sentencing him accordingly.

[1] 7. Folks first claims that, following Juror Five's comment, the trial judge erred either by failing to declare a mistrial or, alternatively, by failing to examine the remaining jurors. A mistrial is a drastic remedy that only should be granted "where there is manifest necessity or the ends of public justice would be otherwise defeated."[FN3] Because Folks made neither request at trial, we review for plain error.[FN4]

FN3. *Steckel v. State,* 711 A.2d 5, 11 (Del.1998) (quotation marks and citation omitted). *See also* Dawson v. State, 637 A.2d 57, 62 (Del.1994) ("A mistrial is mandated only when there are no meaningful and practical alternatives to that remedy.") (quotation marks and citation omitted).

FN4. DEL.SUPR. CT. R. 8. *See also* Lagola v. Thomas, 867 A.2d 891, 897 (Del.2005) ("Absent plain error, we will not review claims that are not fairly presented to the trial court.").

8. We conclude that the trial judge did not err by failing to caution the jurors or by failing to declare a mistrial *sua sponte.* Juror Five's dismissal eliminated any prejudice that may have resulted from his comment. Furthermore, the juror's statement could not have affected the remaining jurors because the later trial testimony confirmed that Folks carried four twenty-dollar bills in his hand when the officer arrested him. The State proved that fact beyond a reasonable doubt. On this record, Folks makes no credible showing that, once the trial judge dismissed Juror Five, the remaining jurors would be prejudiced. Accordingly, we find no plain error.

[2][3] 9. Folks next contends that the trial judge erred by admitting his post-arrest statement because the statement was inappropriate character evidence and had little independent evidentiary value.[FN5] He asserts that the prejudicial effect of his statement-panhandling to buy drugs-outweighed its probative value.[FN6] We review a trial judge's decision to admit evidence on a defendant's character for abuse of discretion.[FN7]

FN5. *See* D.R.E. 404(b) (prohibiting admission of other wrongful acts "to prove the character of a person in order to show action in conformity therewith").

FN6. *See* D.R.E. 403 (allowing exclusion of relevant evidence when its "probative value is substantially outweighed by the danger of unfair prejudice").

FN7. *Allen v. State,* 644 A.2d 982, 985 (Del.1994) ("When the thrust of the objection was that the probative dangers attending the uncharged misconduct outweighed the probative value of the evidence, abuse of discretion is an appropriate standard of review. Given the intangible nature of the factors to be balanced, the appellate court must accord the trial judge wide latitude."), *citing* EDWARD J. IMWINKELRIED, UNCHARGED MISCONDUCT EVIDENCE § 9:70 (1992).

10. Given the abundance of testimonial evidence indicating Folks's involvement in the robbery, Folks's admission that he was present at the bank could hardly have prejudiced him. The potential prejudicial effect of admitting evidence of drug use, on the other hand, would have an immediate and negative impact on the jury. Because the danger of unfair prejudice outweighed the statement's probative value, we find that it should not have been admitted. Nonetheless, because McVey, the stepson, and the arresting officer all identified Folks as the robber, the "untainted evidence of guilt" outweighs the "significance of the error." [FN8] We therefore find no reversible error.

FN8. *Van Arsdall v. State,* 524 A.2d 3, 11 (Del.1987).

[4] 11. Finally, Folks asserts that the trial judge erred by sentencing him as an habitual offender.[FN9] Folks claims that the evidence presented to the trial judge did not prove beyond a reasonable doubt that he had committed the three predicate offenses mandated by the habitual offender statute.[FN10] The State carries the burden of proof to establish that "each predicate offense meets the requirements of Section 4214... beyond a reasonable doubt."[FN11] To sustain this evidentiary burden, the State must present "unambiguous documentary evidence of a predicate conviction."[FN12] We review to ensure that the trial judge's determination of habitual offender status is supported by substantial evidence and is free from legal error or any abuse of discretion.[FN13]

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

FN9.*See*11 *Del. C.* § 4214 (defining "habitual criminal" status).

FN10.*See id.* § 4214(a).

FN11.*Hall v. State,* 788 A.2d 118, 127 (Del.2001).

FN12.*Id.* at 128.*Cf. Morales v. State,* 696 A.2d 390, 395 (Del.1997) (reversing habitual offender determination where record before Court did not indicate what offenses and statutes underlay defendant's prior convictions).

FN13.*Walker v. State,* 790 A.2d 1214, 1221 (Del.2002).

*3 12. In support of the first predicate offense, the State produced a court docket indicating that a "John T. Folks" was convicted of a felony in 1977. The State introduced no other evidence supporting the conviction and the record is devoid of any information linking the name to John Folks, other than a similarity in name. Because an ambiguity in identity exists, the State did not prove that this defendant committed the predicate offense beyond a reasonable doubt. The trial judge therefore erred by sentencing Folks as an habitual offender. Accordingly, Folks's sentence must be vacated.

NOW, THEREFORE, IT IS ORDERED that the judgment of the Superior Court sentencing Folks as an habitual offender is VACATED. The matter is REMANDED to the Superior Court to resentence Folks in a manner consistent with this Order. The judgments of conviction are AFFIRMED.

Del.Supr.,2005.
Folks v. State
872 A.2d 959, 2005 WL 974782 (Del.Supr.)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

**H**
Folks v. State
Del.Supr.,2006.
(The decision of the Court is referenced in the Atlantic Reporter in a 'Table of Decisions Without Published Opinions.')
Supreme Court of Delaware.
John FOLKS, Defendant Below-Appellant,
v.
STATE of Delaware, Plaintiff Below-Appellee.
**No. 311,2005.**

Submitted Nov. 14, 2005.
Decided Jan. 26, 2006.

**Background:** Defendant was convicted in the Superior Court, New Castle County, of robbery and possession of a deadly weapon during the commission of a felony. Defendant appealed.

**Holding:** The Supreme Court held that a nearly thirty-year old felony conviction was relevant to sentencing, even though it was invalid for establishing habitual offender status.

Affirmed.

**Sentencing and Punishment 350H 94**

350H Sentencing and Punishment
350HI Punishment in General
350HI(E) Factors Related to Offender
350Hk93 Other Offenses, Charges, Misconduct
350Hk94 k. In General. Most Cited Cases

Trial court acted within its discretion in considering defendant's prior felony conviction for carrying a concealed deadly weapon in sentencing him for robbery and possession of a deadly weapon during the commission of a felony, even though prior offense was invalid for establishing status as a habitual offender, where defendant was not sentenced as a habitual offender, and offense was relevant to defendant's personal history and failure to conform his conduct to the law.

Court Below-Superior Court of the State of Delaware in and for New Castle County Cr. ID No. 0306015047A.

Before STEELE, Chief Justice, BERGER and RIDGELY, Justices.

*ORDER*

*1 This 26th day of January 2006, upon consideration of the appellant's brief filed pursuant to Supreme Court Rule 26(c), his attorney's motion to withdraw, and the State's response thereto, it appears to the Court that:

(1) The defendant-appellant, John Folks, was found guilty by a Superior Court jury of Robbery in the First Degree and Possession of a Deadly Weapon During the Commission of a Felony. He was sentenced on the robbery conviction to 12 years incarceration at Level V, to be suspended after 10 years for decreasing levels of probation, and on the weapon conviction to 10 years incarceration at Level V.[FN1] This is Folks' direct appeal of his sentences following re-sentencing by the Superior Court.

FN1. The Superior Court previously had sentenced Folks as a habitual offender to a total of 40 years of Level V incarceration. On direct appeal, this Court affirmed Folks' convictions, but vacated his sentences and remanded the matter to the Superior Court for re-sentencing. This Court held that, because of an "ambiguity in identity," the State had failed to prove beyond a reasonable doubt that Folks had committed a 1977 weapon offense and, therefore, was eligible to be sentenced as a habitual offender. *Folks v. State,* Del.Supr., No. 291, 2004, Steele, J. (Apr. 25, 2005).

(2) Folks' trial counsel has filed a brief and a motion to withdraw pursuant to Rule 26(c). The standard and scope of review applicable to the consideration of a motion to withdraw and an accompanying brief under Rule 26(c) is twofold: (a) the Court must be satisfied that defense counsel has made a conscientious examination of the record and the law for claims that could arguably support the appeal; and (b) the Court must conduct its own review of the record and determine whether the appeal is so totally devoid of at least arguably appealable issues that it can be

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Ex. B

decided without an adversary presentation.[FN2]

FN2. *Person v. Ohio,* 488 U.S. 75, 83, 109 S.Ct. 346, 102 L.Ed.2d 300 (1988); *McCoy v. Court of Appeals of Wisconsin,* 486 U.S. 429, 442, 108 S.Ct. 1895, 100 L.Ed.2d 440 (1988); *Anders v. California,* 386 U.S. 738, 744, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967).

(3) Folks' counsel asserts that, based upon a careful and complete examination of the record, there are no arguably appealable issues. By letter, Folks' counsel informed Folks of the provisions of Rule 26(c) and provided him with a copy of the motion to withdraw, the accompanying brief and the complete trial transcript. Folks also was informed of his right to supplement his attorney's presentation. Folks responded with a brief that raises one issue for this Court's consideration. The State has responded to the position taken by Folks' counsel as well as the issue raised by Folks and has moved to affirm the Superior Court's judgment.

(4) Folks raises one issue for this Court's consideration. He claims that the Superior Court's consideration of a 1977 conviction of carrying a concealed deadly weapon was improper for purposes of his re-sentencing because that was the conviction this Court determined was invalid for establishing his status as a habitual offender.

(5) The transcript of Folks' re-sentencing reflects the following. The State no longer sought to have Folks sentenced as a habitual offender. Folks' attorney conceded that Folks had been convicted of carrying a concealed deadly weapon in 1977. After hearing argument by Folks, Folks' attorney and the attorney for the State, the Superior Court stated, "I'm not sentencing you as a habitual offender .... in this case, though, I think it's to be expected that when a fourth felony comes along, ... the sentence is going to spike upwards .... previous shorter sentences were not successful in keeping the public safe from acts of violence committed by you."

*2 (6) We find no error or abuse of discretion on the part of the Superior Court. Under the circumstances of this case, the Superior Court was within its discretion to consider the previous 1977 conviction in sentencing Folks, since it constituted relevant information pertaining to Folks' personal history.[FN3] Moreover, there is no evidence that the sentences imposed were illegal. While severe, the sentences were within the limits authorized by statute.[FN4]

FN3. *Mayes v. State,* 604 A.2d 839, 842-43 (Del.1992).

FN4. Del.Code Ann. tit. 11, § § 832 and 1447; *Ward v. State,* 567 A.2d 1296, 1297 (Del.1989).

(7) This Court has reviewed the record carefully and has concluded that Folks' appeal is wholly without merit and devoid of any arguably appealable issue. We also are satisfied that Folks' counsel has made a conscientious effort to examine the record and has properly determined that Folks could not raise a meritorious claim in this appeal.

NOW, THEREFORE, IT IS ORDERED that the State's motion to affirm is GRANTED. The judgment of the Superior Court is AFFIRMED. The motion to withdraw is moot.

Del.Supr.,2006.
Folks v. State
892 A.2d 1083, 2006 WL 212102 (Del.Supr.)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

Not Reported in A.2d
Not Reported in A.2d, 2006 WL 2742315 (Del.Super.)
**(Cite as: Not Reported in A.2d)**

Page 1

**H**

State v. Folks
Del.Super.,2006.
Only the Westlaw citation is currently available.
UNPUBLISHED OPINION. CHECK COURT RULES BEFORE CITING.

Superior Court of Delaware,New Castle County.
STATE of Delaware,
v.
John FOLKS, Defendant.
**No. I.D. # 0306015047.**

Submitted: Aug. 18, 2006.
Decided: Sept. 25, 2006.

Upon Defendant's Motion for Postconviction Relief. DENIED.

Stephen M. Walther, Esquire, Deputy Attorney General, Department of Justice, Wilmington, Delaware, Attorney for the State.
John Folks, Smyrna, Delaware, pro se.

ORDER

COOCH, J.

*1 This 25th day of September, 2006, upon consideration of Defendant's motion for postconviction relief, it appears to the Court that:

A. Procedural history

1. John Folks ("Defendant") was arrested on June 23, 2003, and then indicted on July 28, 2003, for Robbery First Degree, Possession of a Deadly Weapon during the Commission of a Felony ("PDWDCF"), Possession of a Deadly Weapon by a Person Prohibited,[FN1] and Resisting Arrest.[FN2] At trial in January 2004, the jury found Defendant guilty of First Degree Robbery and PDWDCF. This Court sentenced Defendant as a habitual offender to a total of 40 years of Level V incarceration. Defendant appealed his conviction on the grounds that the trial court erred by failing to declare a mistrial following a juror's in-court remark, by admitting a post-arrest statement, and by sentencing him as a habitual offender. On April 25, 2005, the Supreme Court affirmed the conviction but vacated Defendant's sentencing and remanded for resentencing, holding that the State had failed to prove that Folks was a habitual offender beyond a reasonable doubt.[FN3] This Court resentenced Defendant on July 8, 2005 to 12 years at Level V, suspended after 10 years for 2 years at decreasing levels of supervision for the robbery conviction and 10 years at Level V on the weapon conviction. Defendant appealed again and the Supreme Court affirmed on February 17, 2006.[FN4] 2.

FN1. A motion to sever this count was filed and granted by the Court.

FN2. The state nolle prossed this count before trial.

FN3. *Folks v. State,* 2005 WL 974782 (Del.Supr.).

FN4. *Folks v. State,* 2006 WL 212102 (Del.Supr.).

2. Defendant filed this timely motion for postconviction relief pursuant to Superior Court Criminal Rule 61 on March 27, 2006. Defendant's motion alleges ineffective assistance of counsel, double jeopardy, prosecutorial misconduct, and judicial misconduct.

B. Possible procedural bars

3. Before addressing the merits of a motion for postconviction relief, the Court must first apply the procedural bars of Superior Court Criminal Rule 61 ("Rule 61").[FN5] If a procedural bar exists, then the Court will not consider the merits of the postconviction claim.[FN6] Rule 61(i) will bar (1) a motion filed more than one year after a final judgment of conviction, (2) any ground for relief that was not asserted in a prior postconviction proceeding, (3) any ground for relief that was not asserted at trial or on direct appeal, as required by court rules, (4) any ground for relief that was formerly adjudicated. Claimants can avoid the first three of these procedural bars, however, if under 61(i)(5), if they can show the court lacked jurisdiction or "a colorable claim that there was a miscarriage of justice because of a constitutional violation."

FN5. *Younger v. State,* 580 A.2d 552, 554

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Ex. C

Not Reported in A.2d
Not Reported in A.2d, 2006 WL 2742315 (Del.Super.)
**(Cite as: Not Reported in A.2d)**

Page 2

(Del.1990).

FN6.*Id.*

4. In applying the procedural bars to this motion, Defendant's claim of "judicial misconduct" is barred by Rule 61(i)(4). Defendant alleges that this Court erred by considering a 1977 conviction of carrying a concealed deadly weapon for purposes of his resentence. However, Defendant already appealed this issue to the Supreme Court and lost.[FN7] Therefore, this Court will not address the merits of that claim.

FN7.*Folks,* 2006 WL 212102, at *2 ("the Superior Court was within its discretion to consider the previous 1977 conviction in sentencing Folks, since it constituted relevant information pertaining to Folks' personal history").

*2 5. This is the first opportunity Defendant has had to raise his ineffective assistance of counsel claims. Thus, none of the procedural bars of Rule 61 preclude consideration of this claim. Therefore, the Court will address the merits of the claim.

C. Ineffective assistance of counsel

6. To succeed on an ineffective assistance of counsel claim, Defendant must show both (a) "that counsel's representation fell below and objective standard of reasonableness" and (b) "that there is a real probability that, but for the counsel's unprofessional errors, the result of the proceeding would have been different."[FN8] Failure to satisfy one prong will render the claim unsuccessful and the court need not address the remaining prong. Moreover, allegations that are entirely conclusory are legally insufficient to prove ineffective assistance of counsel; the defendant must allege concrete allegations of actual prejudice and substantiate them.[FN9] Furthermore, when evaluating counsel's performance, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of professional assistance."[FN10]

FN8.*Stickland v. Washington,* 466 U.S. 668, 688, 694 (1984).

FN9.*Jordan v. State,* 1994 WL 466142 (Del Supr.)(citing *Younger v. State,* 580 A.2d 552 (Del.1990)).

FN10.*Id.* at 689.

i. Double jeopardy

7. Defendant asserts that his convictions of First Degree Robbery and PDWDCF violate double jeopardy protections, in that his possession of a weapon was incorporated in the robbery charge, thus he is being punished twice for the "same offense." He claims that both his defense counsel at trial and his defense counsel on appeal were ineffective for failing to make this argument. However, the Defendant cannot show that defense counsels' decision not to raise this issue fell below an objective standard of reasonableness when the Delaware Supreme Court has consistently rejected this argument.[FN11] Defendant also raises this double jeopardy claim as an independent ground in his motion, but as already stated, this claim has no merit.

FN11.*See Thomas v. State,* 467 A.2d 954 (Del.1983) (rejecting defendant's claim that imposition of separate sentences for Robbery First Degree and PDWDCF violated the Double Jeopardy Clause of the Fifth Amendment).

ii. Jury selection process/ prosecutorial misconduct

8. Defendant next challenges the jury selection process. He claims that "he was denied due process of law and prejudiced against, when the prosecutor purposely and selectively excluded afro-americans from the jury during his peremptory challenges" in violation of *Batson v. Kentucky.*[FN12] He raises this issue under the grounds of ineffective assistance of counsel as well as prosecutorial misconduct. However, he provides no specific evidence that supports this conclusory allegation, nor did he attempt to demonstrate any prejudice that resulted. Therefore, this claim fails under the two-prong test articulated in *Strickland.*

FN12.476 U.S. 79 (1986).

9. In addition, Defendant argues that his counsel was ineffective when he failed to include in the jury voir dire a question as to whether any of the potential jurors had seen Defendant's case on television or in the newspaper. The transcript, however, directly contradicts this allegation. The pool of jurors was asked, "Do you know anything about this case through personal knowledge, discussion with anyone,

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in A.2d
Not Reported in A.2d, 2006 WL 2742315 (Del.Super.)
**(Cite as: Not Reported in A.2d)**

Page 3

the news media, or any other source?"FN13 Therefore, this claim is meritless.

FN13. Trial Tr. of 1/15/2005 at 8.

iii. Counsel's performance at trial

***3** 10. Defendant next makes several claims about his counsel's performance at trial. It is plain from the motion and the record that none of Defendant's claims entitle him to relief as they are all completely conclusory.FN14 First, he faults counsel for not compelling the prosecution to produce an alleged exculpatory interrogation tape. He makes no attempt to explain how this tape would have affected the outcome of the case. Further, the record and trial counsel's affidavit suggest that there was no such tape.FN15 Thus, this conclusory claim also fails to demonstrate ineffective assistance of counsel.

FN14. *See* Younger, 580 A.2d at 556 (holding that conclusory allegations are legally insufficient to prove ineffective assistance of counsel).

FN15. James A. Bayard, Jr. Aff. at 2.

11. Next, Defendant claims his counsel should have made more objections during the trial, including objections to what he refers to as "surprise witnesses." He asserts that the prosecution did not notify him or his counsel of two of the state's witnesses until the day of trial. In addition, Defendant states that his counsel should not have allowed Mevey and Diehl to be excused after testifying because Simpson (a "surprise witness") later contradicted their testimony. However, Defendant has not alleged any facts to suggest that counsel's conduct fell below an objective standard of reasonableness or that he suffered actual prejudice.FN16.

FN16. *Strickland,* 466 U.S. at 689 ("It is all tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was reasonable.")

12. Defendant also claims that counsel did not ask enough questions on cross-examination. Specifically, Defendant states "his counsel prejudiced him and denied him equal protection under the law when he refused to ask vital and important questions to the state's witnesses on cross-examination. Petitioner argues that his counsel only asked witnesses enough question to satisfy the court and that his questions were baseless and effortless."Similarly he asserts that counsel's summation was too short. In his motion, he claims "in closing arguments, his counsel used approximately four pages to sum up his argument, while the prosecution used approximately twenty-two pages to sum up his argument."These claims are conclusory. He does not provide any concrete allegations of actual prejudice. Moreover, the Supreme Court has stated that, in the context of opening and closing statements, "[b]revity alone does not state a claim of ineffective assistance of counsel."FN17

FN17. *Flamer v. State,* 585 A.2d 736, 757 (Del.1990) (holding that counsel's failure to give longer, more detailed opening and closing statements was not ineffective assistance of counsel).

13. Defendant alleges that counsel refused to allow him to stand in front of the jury in order to compare his height to that of the victim. Defendant did not explain why this was would have been relevant or how he was prejudiced as a result. Consequently, Defendant has not satisfied the requirements for an ineffective assistance of counsel claim.

14. Defendant also argues that "his counsel failed to investigate the existence of accomplices."This is a vague and conclusory allegation. He makes no concrete assertions to support this claim, nor does he even suggest that there were accomplices. Therefore, this claim also fails to demonstrate ineffective assistance of counsel.

15. Defendant further claims that he was prejudiced when his counsel "abandoned him" on his second appeal. Supreme Court Rule 26(c) ("Rule 26(c)") allows trial attorneys to withdraw if, after a careful review of the record, they determine that there is no merit to the appeal. The Supreme Court conducted its own review of the record in connection with his counsel's Rule 26(c) motion to withdraw, and determined that the appeal was "wholly without merit and devoid of any arguably appealable issues."FN18 Again, Defendant has failed to make the requisite showing of ineffective assistance of counsel.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in A.2d
Not Reported in A.2d, 2006 WL 2742315 (Del.Super.)
**(Cite as: Not Reported in A.2d)**

Page 4

FN18. *Folks*, 2006 WL 212102, at *2

iv. Habitual offender

***4** 16. Defendant alleges both his counsel at trial and his counsel on appeal provided ineffective assistance of counsel on the issue defendant's status as a habitual offender. These claims are moot. Defendant appealed his original sentence to the Supreme Court which vacated the sentence after finding the State had not met its burden in proving Defendant was a habitual offender.[FN19] Therefore, if any mistake was made, it has been cured by that decision.

FN19. *Folks*, 2005 WL 974782 at *3.

17. For the reasons stated, Defendant's Motion for Postconviction Relief is **DENIED.**

**IT IS SO ORDERED.**

Del.Super.,2006.
State v. Folks
Not Reported in A.2d, 2006 WL 2742315 (Del.Super.)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

**H**

Folks v. State
Del.Supr.,2007.
(The decision of the Court is referenced in the Atlantic Reporter in a 'Table of Decisions Without Published Opinions.')

Supreme Court of Delaware.
John FOLKS, Defendant Below-Appellant,
v.
STATE of Delaware, Plaintiff Below-Appellee.
**No. 563, 2006.**

Submitted: Jan. 26, 2007.
Decided: Feb. 26, 2007.

Court Below-Superior Court of the State of Delaware, in and for New Castle County, Cr. ID No. 0306015047A.

Before STEELE, Chief Justice, HOLLAND and RIDGELY Justices.

MYRON T. STEELE, Chief Justice.

*1 This 26th day of February 2007, upon consideration of the briefs on appeal and the record below, it appears to the Court that:

(1) The defendant-appellant, John Folks, filed an appeal from the Superior Court's September 25, 2006 order denying his motion for postconviction relief pursuant to Superior Court Criminal Rule 61. We find no merit to the appeal. Accordingly, we AFFIRM.

(2) In January 2004, Folks was found guilty by a Superior Court jury of Robbery in the First Degree and Possession of a Deadly Weapon During the Commission of a Felony. He was sentenced as a habitual offender to a total of 40 years of Level V incarceration. On direct appeal, this Court affirmed Folks' conviction, but vacated his sentences on the ground that the State had not established Folks' habitual offender status beyond a reasonable doubt.[FN1] On remand, the Superior Court sentenced Folks on the robbery conviction to 12 years of Level V incarceration, to be suspended after 10 years for 2 years of probation, and on the weapon conviction to 10 years of Level V incarceration. Those sentences were affirmed by this Court on direct appeal.[FN2]

FN1. *Folks v. State,* Del.Supr., No. 291, 2004, Steele, C.J. (Apr. 25, 2005).

FN2. *Folks v. State,* Del.Supr., No. 311, 2005, Steele, C.J. (Jan. 26, 2006).

(3) In this appeal, Folks claims that a) his robbery and weapon convictions constitute a violation of double jeopardy; b) the State violated his constitutional rights during the jury selection process; c) the Superior Court abused its discretion by permitting the State to file its response to his postconviction motion beyond the due date, ignoring his arguments, and failing to schedule an evidentiary hearing; and d) his counsel provided ineffective assistance at trial and on appeal.

(4) Folks' first claim is that his robbery and weapon convictions constitute a violation of double jeopardy. Because Folks failed to present this claim in his direct appeal, it is barred in this proceeding [FN3] unless he can demonstrate a miscarriage of justice because of a constitutional violation.[FN4] This Court has consistently rejected the claim that concurrent convictions of robbery and weapon violations constitute a violation of double jeopardy.[FN5] Thus, in the absence of any evidence of a constitutional violation, we conclude that Folks' first claim is procedurally barred.

FN3. Super. Ct.Crim. R. 61(i)(3).

FN4. Super. Ct.Crim. R. 61(i)(5).

FN5. *Thomas v. State,* 467 A.2d 954, 959 (Del.1983).

(5) Folks' second claim is that the State violated his constitutional rights by preventing African-Americans from serving on his jury.[FN6] Once again, because this claim was not raised in Folks' direct appeal, it is barred in this proceeding [FN7] unless he can demonstrate a miscarriage of justice because of a constitutional violation.[FN8] In order to succeed on this claim, Folks must demonstrate that the prosecution improperly exercised its peremptory challenges with the intention of removing African-Americans from the venire.[FN9] While Folks refers to the transcript of

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Ex. D

jury selection in support of his claim, the transcript does not reflect the existence of a constitutional violation. In the absence of any such record evidence, we conclude that Folks' second claim also is procedurally barred.

FN6. The record reflects that Folks is an African-American.

FN7. Super. Ct.Crim. R. 61(i)(3).

FN8. Super. Ct.Crim. R. 61(i)(5).

FN9. *Batson v. Kentucky,* 476 U.S. 79, 97 (1986).

***2** (6) Folks' third claim is that the Superior Court abused its discretion in connection with his postconviction motion-specifically, by permitting the State to file its response to his postconviction motion beyond the due date, ignoring his arguments by failing to cite the cases he cited, and failing to schedule an evidentiary hearing.

(7) While the record reflects that the Superior Court gave the State an extension in which to file its response to Folks' postconviction motion, there is no evidence that the Superior Court abused its discretion in so doing.[FN10] There is, furthermore, no evidence that, because it did not cite the same cases Folks did, the Superior Court ignored arguments made by Folks in his postconviction motion. Rather, the Superior Court's decision reflects that it properly addressed Folks' claims and cited the appropriate authority in denying those claims. Finally, there is no support for Folks' claim that the Superior Court abused its discretion by determining that an evidentiary hearing was unnecessary to its decision on Folks' postconviction motion.[FN11]

FN10. Super. Ct.Crim. R. 45(b).

FN11. Super. Ct.Crim. R. 61(h)(1) and (3).

(8) Folks' final claim is that his counsel provided ineffective assistance both at trial and on appeal. In order to prevail on a claim of ineffective assistance of counsel, the defendant must demonstrate that counsel's representation fell below an objective standard of reasonableness and that, but for his counsel's unprofessional errors, the result of the proceeding would have been different.[FN12] Moreover, the defendant must make concrete allegations of actual prejudice and substantiate them or risk summary dismissal of his claims.[FN13]

FN12. *Strickland v. Washington,* 466 U.S. 668, 688, 694 (1984).

FN13. *Dawson v. State,* 673 A.2d 1186, 1196 (Del.1996).

(9) To the extent Folks argues that his counsel provided ineffective assistance by failing to assert a double jeopardy violation and a *Batson* violation, any such argument must fail. Folks' counsel cannot be faulted for failing to raise claims that have been determined to be without merit. Folks claims that his trial counsel provided ineffective assistance by failing to object to the Superior Court's initial finding that he was a habitual offender. However, because Folks' habitual offender sentence was vacated in his initial appeal,[FN14] he cannot demonstrate that any error on the part of his counsel with respect to that sentence resulted in prejudice to him. Folks' various claims of error on the part of his counsel during the course of trial were properly denied by the Superior Court as too conclusory and vague to merit consideration.[FN15] Finally, Folks claims that his appellate attorney "abandoned" him by filing a Rule 26(c) brief in his second appeal after re-sentencing. Rule 26(c) permits an attorney to withdraw if there is no merit to an appeal. Here, this Court found no merit to Folks' second appeal, thereby agreeing that counsel's withdrawal was appropriate.[FN16]

FN14. *Folks v. State,* Del.Supr., No. 291, 2004, Steele, C.J. (Apr. 25, 2005).

FN15. *Dawson v. State,* 673 A.2d at 1196.

FN16. *Folks v. State,* Del.Supr., No. 311, 2005, Steele, C.J. (Jan. 26, 2006).

NOW, THEREFORE, IT IS ORDERED that the judgment of the Superior Court is AFFIRMED.

Del.Supr.,2007.
Folks v. State
919 A.2d 561, 2007 WL 1214658 (Del.Supr.)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| SAKEE ALI NASIR, | ) | |
| Petitioner, | ) | |
| v. | ) | Civil Action No. 87-58 JLL |
| WALTER W. REDMAN, WARDEN, ET AL., | ) | |
| Respondents. | ) | |

---

Sakee Ali Nasir, petitioner, pro se.

Loren C. Meyers, Esquire, Deputy Attorney General, Department of Justice, Wilmington, Delaware, attorney for respondents.

---

MAGISTRATE'S REPORT AND RECOMMENDATION

Dated: July 10, 1987

Wilmington, Delaware

Ex. E

POWERS, U. S. MAGISTRATE

The petitioner in this habeas corpus action, Sakee Ali Nasir, formerly known as Leonard Jenkins, challenges his state court convictions for first degree robbery, first degree assault, and two counts of possession of a deadly weapon during the commission of a felony. This is the third occasion on which Nasir has applied for habeas corpus relief. Previously in Jenkins v. Redman, No. 80-152 (D.Del. May 13, 1982), aff'd No. 82-1482 (3d Cir. Mar. 29, 1985), this Court dismissed one claim on exhaustion grounds and three additional claims on the merits[1]. In Nasir v. Redman, No. 84-650 (D.Del. July 1, 1985), this Court dismissed a mixed petition containing exhausted and unexhausted claims pursuant to the total exhaustion requirement of Rose v. Lundy. Nasir has been before the Delaware Supreme Court on at least three occasions, once on direct appeal of his conviction, Jenkins v. State, 401 A.2d 83 (Del. 1979), and twice on appeals from denials of post-conviction relief in Superior Court, Jenkins v. State No. 167, 1983 (Del. Sept. 4, 1984) and Nasir v. State, No. 24, 1986 (Del. Sept. 25, 1986).

I have set forth the background facts leading up to the conviction in my prior Report and Recommendation in No. 80-152 (Dec. 23, 1981), and I shall quote them herein verbatim:

---

[1]This decision antedated Rose v. Lundy, 455 U.S. 509 (1982), with its requirement of total exhaustion.

"Petitioner's convictions surround the robbery and beating administered to a gas station attendant named John White on February 6, 1976. The victim, while surviving, has been in a comatose state since the assault. There were no eyewitnesses to the crime which went unsolved for more than a year. In early 1977, several suspects in other crimes informed the police that petitioner committed this particular crime. Subsequently petitioner was indicted, tried and convicted for the offenses listed above. The most damaging evidence against him at trial was the testimony of the other suspects to whom he had admitted committing the robbery and beating.

"The evidence presented by the prosecutor at trial was essentially as follows: Clifford Johnson ("Johnson") testified that on February 7, 1976 the petitioner stopped by his house early in the morning and told him that he had robbed a Gulf station the night before and had choked, pistol-whipped, and hit on the head a young white attendant (Tr. A-32-33)[2]. He also showed Johnson a bloodstained bag and money, and a gun which he said was a 9 mllimeter automatic (Tr. A-33, 77). Johnson further testified that at the time petitioner had a 1973 or 1974 maroon Pontiac Gran Prix and that petitoner took him for a ride and pointed out the gas station to him. (Tr.A-39). He observed petitioner return the gun to someone named "Harden" (Tr. A-103-04). Mrs. Johnson testified that she overheard the conversation between Johnson and petitioner wherein petitioner said he had committed the robbery and the beating (Tr. A-9). She also testified that she saw petitoner holding a bloodstained bag and money and an automatic pistol (Tr. A-6-7). Forice Perkins testified that petitioner had also admitted the crime to him (Tr.

[2]"Tr" refers to the state trial transcript.

C-59, 82). Finally, Norman Reed testified that another individual named Seith Lively told him that petitioner had committed the crime and petitoner, who was present during this conversation, did not contradict Lively (Tr. C-29, 31).

"In addition to the testimony concerning petitioner's admissions, the state presented the following corroborative evidence. The owner of the gas station testified that he had determined from examining receipts that $199 in cash and a credit card had been taken in the robbery (Tr. B-19). Keith Wood testified that he had stopped for gasoline at about 8:30 p.m. on February 6 and had noticed a black man sitting in a maroon Gran Prix parked at the gas station parking lot with the driver's window open (Tr. B-27-28, 30-31). Another witness, Russell Brown, testified that he stopped at the gas station at about 8:45 p.m. that night and had found the attendant badly beaten with facial bruises and bleeding from the mouth and nose (Tr. B-41-42A). Finally Detective John Ford testified that he had checked out Johnson's story to the extent possible. Through Department of Motor Vehicle records he determined that petitioner had indeed owned a maroon Gran Prix at the time in question (State Dkt. 55, at 11). Also he tracked down a Ricardo Harding and obtained from him a 9 millimeter automatic handgun matching Johnson's description (Id. at 12). He test-fired the weapon and determined that it functioned perfectly (Id. at 17).

"The defense, which consisted essentially of the testimony of petitioner and several of his brothers, was that petitioner was in Pittsburgh at the time of the crime. Petitioner denied his involvement in the crime and denied ever telling anyone he had committed the crime." Report at pp. 1-3.

Nasir raises a number of grounds for overturning his conviction and sentence. The state has moved to dismiss virtually all of them under Rule 9(b) of the Rules Governing Section 2254 Proceedings as an abuse of the writ. According to the state, Nasir was aware of the factual basis for his claims and their legal significance at the time he filed his first petition for habeas corpus relief. The state supports its position in each instance with a citation to a portion of the state records. While the state makes a good case for dismissing a number of the claims without a consideration of their merits, nonetheless I believe it is appropriate to address the merits of the claims. I conclude that principles of comity dictate that I abide by Judge Stapleton's decision in Nasir v. Redman, No. 84-650, supra, in which the Court, while dismissing Nasir's second habeas petition on exhaustion grounds, in effect advised him that he could return to federal court in the future with one more habeas corpus petition that contained all his claims for relief after exhausting his state remedies, slip op. at 12-13. Since Nasir did precisely what had been suggested to him by Judge Stapleton, it would be inappropriate to now hold that he is guilty of abuse of the writ for following that procedure. Thus I turn to the merits of the petition.

Double Jeopardy

Nasir contends that the consecutive sentences he received for his four convictions violate the double jeopardy clause inasmuch as all of the crimes arose out of a single

criminal transaction, the beating and robbing of John White. This claim is without merit. Under Blockburger v. United States, 284 U.S. 299 (1932), the test for determining if cumulative punishment can be meted out for two offenses is whether each offense requires proof of a fact which the other does not. The comparison is to be based solely on the statutory language, not on the circumstances of the particular case. Government of Virgin Islands v. Bedford, 671 F.2d 758, 765 (3d Cir. 1982). Comparing first degree assault, 11 Del. C. § 613(4) and first degree robbery, 11 Del. C. § 832(a)(1), it is clear that they are not the same offense under Blockburger. First degree assault requires serious physical injury, while first degree robbery only requires physical injury, and robbery requires proof of theft which assault does not. Comparing first degree assault and possession of a deadly weapon during the commission of a felony, 11 Del.C. § 1447, the assault charge requires proof of serious physical injury which the possession statute does not, and the possession charge of course requires proof of possession of a deadly weapon which the assault charge does not. Comparing first degree robbery and possession of a deadly weapon during the commission of a felony, the robbery statute requires physical injury which the possession charge does not and the possession charge requires possession of a deadly weapon which the robbery charge does not. As for the two possession charges, each charge required proof of possession of a deadly weapon during the

commission of a distinct underlying felony, first degree assault and first degree robbery.

Aside from the Blockburger test, there is an additional reason for concluding that the cumulative punishment meted out to Nasir does not offend the double jeopardy clause. In Missouri v. Hunter, 459 U.S. 359 (1983), the Supreme Court went beyond Blockburger to hold that the double jeopardy clause does not prohibit conviction and sentence in a single trial for two crimes which would be the same crime under Blockburger if the legislature intended to impose multiple convictions and cumulative punishment for the two offenses. The Delaware Supreme Court has held that it was the intent of the Delaware General Assembly to impose cumulative sentences upon convictions for a felony and for possession of a deadly weapon during the commission of that underlying felony as well as multiple counts of possession of a deadly weapon during the commission of several felonies arising out of a single criminal transaction. Martin v. State, 433 A.2d 1025, 1030 (Del. 1981). Martin involved consecutive sentencing for first degree murder, first degree robbery, second degree burglary and three counts of possession of a deadly weapon during the commission of a felony, for all of which the defendant received consecutive prison terms. The Delaware Supreme Court's interpretation of the intent of the General Assembly is binding on this Court. Missouri v. Hunter, 459 U.S. at 368; Mullaney v. Wilbur, 421 U.S. 684, 691 (1975).

Consequently the sentences imposed on Nasir are constitutionally permissible.

Nasir also has an ineffective assistance of counsel claim intertwined with his double jeopardy claim. Nasir was sentenced in November 1977. Following the affirmance of his conviction on direct appeal in April 1979, Nasir pressed a motion for post conviction relief raising his double jeopardy claim. John C. Phillips, Esq., was appointed to represent him. Judge Balick held a conference on August 29, 1979 and called for briefing on the issues raised in the motion. Phillips however failed to arrange a brief schedule or to file a brief and in January 1981 was permitted to withdraw from the case. In the meantime, the Delaware Supreme Court had decided Davis v. State, 400 A.2d 292 (Del. 1979), holding that consecutive sentencing for attempted first degree robbery (under a different subsection than involved here) and possession of a weapon during the commission of a felony was improper. Following Davis, the Superior Court ruled in State v. Nash, Cr. No. IN78-03-0182 (May 8, 1979) that convictions for first degree assault (again under a different subsection than involved here) and a related weapons charge must be merged. The Delaware Supreme Court reached the same conclusion in Hunter v. State, 420 A.2d 118 (1980) (Hunter I). On application for certiorari by the state to the United States Supreme Court the Delaware Supreme Court ordered a general stay of resentencing under Davis and Hunter I pending the outcome of the United States Supreme Court's review. Hunter I was

subsequently vacated by the United States Supreme Court for further consideration in light of Albernaz v. United States, 450 U.S. 333 (1981). Thereafter the Delaware Supreme Court held that no double jeopardy problem arose in connection with consecutive sentences for felonies and related weapons charges because it was the intent of the Delaware legislature to impose multiple penalties for a single criminal transaction where a weapon was used. Hunter v. State, 430 A.2d 476 (Del. 1981)(Hunter II).

When Judge Balick allowed Phillips to withdraw as Nasir's counsel, he announced that he would decide the resentencing issues in the case after the Delaware Supreme Court's stay of resentencing was lifted. Following the decision in Hunter II, the Delaware Supreme Court's stay of resentencing was vacated. Apparently between the time Davis was decided on March 23, 1979, and the time the stay on resentencing was imposed on November 6, 1980, a few resentencings were made in conformity with Davis and Hunter I. Nasir contends that but for Phillips' failure to arrange a brief schedule following the hearing before Judge Balick on August 29, 1979, he would have been one of the lucky few who received a reduced sentence before that avenue was cut off by the stay on resentencing put into effect when the state applied for certiorari following Hunter I.

The test for determining effectiveness of counsel is whether counsel's conduct falls below an objective standard of reasonableness. The defendant must also show that but for counsel's errors there is a reasonable probability the outcome

would have been different. Strickland v. Washington, 466 U.S. 668, 691-96 (1984). It is unnecessary to consider whether Phillips' representation was ineffective because the petitioner has not met his burden of proving that the outcome would have been different if Phillips had seen to it that the issues were promptly briefed. When the claim was presented to the Superior Court, Judge Balick ruled as follows:

> "Finally, defendant contends that he was denied effective assistance of counsel because of his attorney's failure to again seek resentecning under Hunter I before the stay of further resentencings was issued. This contention must fail for several reasons.
>
> "This contention is based on an assumption that prompt application would have resulted in a final order of resentencing. I think it more likely that I would have delayed acting because of the unsettled state of the law, as I did on counsel's earlier application. Although there were a limited number of resentencings after Davis and Hunter I, trial judges soon became uncertain whether it was proper to proceed when it was learned that the State had applied to the United States Supreme Court for certiorari, and began staying resentencings before the Supreme Court of Delaware issued its general stay. Indeed, the whole question of the application of the double jeopardy clause to multiple sentencings was then in a state of confusion.
>
> "It is particularly unlikely that I would have acted quickly in this case because neither Davis nor Hunter I was directly on point. Unlike Davis, the robbery first degree charge against defendant does not include display of a deadly weapon as an element. Defendant was charged under §832(a)(1), not under § 832(a)(2). Unlike Hunter I, the assault

> first degree charge against defendant does not include use of a deadly weapon. Defendant was charged under §613 (4), not under §613 (1). The issue of whether a person may be sentenced for violations of §613 (4) and §832(a)(1) arising from the same transaction was also involved."

Quoted in Jenkins v. Delaware, No. 167, 1983 (Del. Sept. 4, 1984), slip op. at 6-7. His ruling was affirmed by the Delaware Supreme Court. Jenkins v. State, No. 167, 1983 (Sept. 4, 1984).

While a determination of effectiveness of counsel is a mixed question of fact and law, not entitled to a presumption of correctness, Strickland v. Washington, 466 U.S. at 698, Judge Balick's determination that he would have delayed acting because of the confusion in the law even if briefing had been prompt is a factual finding that is binding on this Court. It follows from this finding that the outcome of the motion for resentencing was not affected by Phillips' inaction and the claim of ineffective assistance of counsel must fail.

Validity of the superseding indictment

Nasir seems to complain about the state's dismissal of the charge of first degree assault and its corresponding weapons offense from the original indictment and the reinstatement of those charges in a superceeding indictment. According to Nasir, this is also a double jeopardy violation. This claim is clearly without merit inasmuch as jeopardy had not attached prior to trial. The other alleged irregularities in reinstating the charges raise only issues of state law not cognizable in a habeas corpus proceeding.

Violation of discovery rules

Nasir seems to be complaining that the state failed to supply its witnesses' statements prior to trial notwithstanding a defense request for the same in a pretrial motion. The record discloses that certain reports were produced during trial. This does not raise a constitutional issue, and claims of error of state law are not cognizable in a habeas corpus proceeding. Pulley v. Harris, 465 U.S. 37, 41(1984). Even in the federal courts, Federal Rule of Criminal Procedure 26.2 does not require disclosure of witness statements until after direct examination of a witness at trial. To the extent Nasir claims that a less than complete disclosure was made to the defense, he has failed to allege what the withheld materials were or how their disclosure would have affected the trial.

Admissability of the weapon

Nasir challenges the trial court's decision to admit into evidence, over defense objection, the pistol allegedly used by Nasir although the evidence tag put on the weapon by Officer John Ford when he had acquired it had been removed and although the state's initial discovery response prior to trial had been that no weapon had been recovered. These are merely issues of state evidentiary law and prosecutorial misconduct also governed by state law that do not raise a constitutional issue in the absence of any indication that Nasir was deprived of a fair trial thereby. Donnelly v. De Christoforo, 416 U.S. 637, 642-48 (1974).

Confrontation Clause

Nasir challenges the failure of Ricardo Harding and John White to testify at trial. Harding was served with a trial subpoena at the prosecutor and defense counsel's request but failed to appear. Assuming arguendo that this claim even raises a confrontation clause issue, inasmuch as both the state and defense counsel fulfilled their constitutional duties to secure Harding's presence by issuance of trial subpoenas, no constitutional violation occurred. Barber v. Page, 390 U.S. 719, 724-25 (1968).

Neither the prosecutor nor defense counsel sought to compel the appearance of John White, who was in a coma following the robbery. Neither the state nor defense counsel have an obligation to produce a witness if his physical condition prevents him from testifying. See Kinard v. United States, 418 F.2d 453, 455-56 (D.C. Cir. 1969). Nasir also takes his counsel to task for accepting the prosecutor's representation to the Court at sentencing that White's condition had not significantly changed. However, in the absence of a showing that the victim had significantly recovered from his injuries, Nasir has not showed that but for his counsel's lack of inquiry, his sentence would have been different. Thus this claim fails.

Illegal Arrest

Nasir alleges that he was arrested on the basis of an arrest warrant supported by false affidavits. Apparently no evidence obtained as a result of Nasir's arrest was admitted at

trial, and an illegal arrest is no bar to prosecution. United States v. Crews, 445 U.S. 463 (1980). Thus this claim is not a basis for release from custody.

Use of Tacit Admission

As mentioned in the statement of facts section, the trial court permitted Normal Reed to testify that an out of court declarant named Seith Lively told him, in the presence of Nasir, that Nasir had committed the crime and that Nasir did not contradict Lively. The trial court permitted this testimony as a tacit admission by Nasir and therefore an exception to the hearsay rule. This is merely an issue of state evidentiary law and it therefore does not raise a constitutional issue. Bisaccia v. Attorney General of State of New Jersey, 623 F.2d 307, 312 (3d Cir. 1980).

Denial of Counsel for Post-Conviction Proceedings

Nasir complains that his sixth amendment right co- counsel was violated when his motion for post-conviction relief was denied in Superior Court without the appointment of counsel on the convening of an evidentiary hearing. However it is clear that the trial judge was able to decide the motion on the basis of the state record of prior proceedings, when Nasir was represented by counsel, and upon his own recollection as the presiding judge. Therefore no evidentiary hearing was required, nor was Nasir entitled to counsel, see, e.g. Mitchell v. Wyrick, 727 F.2d 773 (8th Cir. 1984).

Since there is no merit to any of the claims in the petition, I recommend that the writ be denied and the petition dismissed.

Mr. Meyers

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| SAKEE ALI NASIR, Petitioner, | ) | |
| v. | ) | Civil Action No. 87-58-JLL |
| WALTER W. REDMAN, Warden, et al., Respondents. | ) | |

FINAL ORDER

The Court having (1) reviewed the U.S. Magistrate's Report and Recommendation which recommends that this habeas corpus action of a state prisoner be dismissed (Docket Item ["D.I."] 25), (2) considered both the respondents' objection (D.I. 29) and petitioner's objection to said report and recommendation (D.I. 31), (3) given fresh consideration to those issues to which specific objection has been made, and (4) made the Court's own determination on the basis of the Magistrate's record, it is

ORDERED:

1. The Magistrate's Report and Recommendation, dated July 10, 1987 (D.I. 25), is hereby accepted and adopted by the Court except for the Magistrate's assumption that petitioner had a federal constitutional right to counsel in his state post-conviction proceedings. This assumption is incorrect because there is no federal constitutional right to the appointment of counsel for the purpose of pursuing post-conviction relief.

Pennsylvania v. Finley, 107 Sup.Ct. 1990 (1987); Dankert v. Wharton, 733 F.2d 1537 (11th Cir. 1984). Because petitioner had no federal constitutional right to appointment of counsel, the 6th Amendment right to effective counsel does not attach. Wainwright v. Torna, 455 U.S. 586 (1982); Nutchel v. Wyrick, 727 F.2d 733 (8th Cir. 1984); Gray v. Lucas, 710 F.2d 1048 (8th Cir. 1984). Therefore, petitioner could not have been deprived of effective assistance of counsel by the alleged inaction of his attorney. This is an alternate ground for denying the habeas corpus relief requested.

2. The petition for a writ of habeas corpus is hereby dismissed and the writ is hereby denied.

3. No probable cause exists for an appeal.

4. The Clerk shall mail a copy of this order to the petitioner and to Loren C. Meyers, Deputy Attorney General.

Dated: August 13, 1987.

James L. Latchum

United States District Judge

APS-57 October 22, 1987

UNITED STATES COURT OF APPEALS FOR THE THIRD CIRCUIT

C.A. No. 87-3590

SAKIE ALI NASIR

vs.

WALTER REDMAN, WARDEN and CHARLES OBERLY, ATTY. GEN. OF THE STATE OF DEL.

(D. Del. Civ. No. 87-058)

Present: SEITZ, GREENBERG and HUNTER, CIRCUIT JUDGES

Submitted are:

(1) Appellant's petition for a certificate of probable cause and motions for appointment of counsel, to supplement the record and to proceed *in forma pauperis* and supporting affidavits;

(2) Appellee's response

in the above-captioned case.

Respectfully,

Sally Mrvos/mw

Clerk

SM/MW/sb
enc.

---

The foregoing ~~Motions are~~ petition for certificate of probable cause is denied. Other motions are denied as moot.

By the Court,

[signature]

Circuit Judge

Dated: OCT 28 1987

Ex. F

**CERTIFICATE OF SERVICE**

I hereby certify that on October 24, 2007, I electronically filed the attached documents with the Clerk of Court using CM/ECF. I also hereby certify that on October 24, 2007, I have mailed by United States Postal Service, the same documents to the following non-registered participant:

John Folks
SBI # 00126234
Delaware Correctional Center
1181 Paddock Road
Smyrna, DE 19977

/s/ James T. Wakley
Deputy Attorney General
Department of Justice
820 N. French Street
Wilmington, DE 19801
(302) 577-8500
Del. Bar. ID No. 4612
james.wakley@state.de.us

Date:  October 24, 2007