IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| JOHN FOLKS, | : | |
| | : | |
| Petitioner, | : | |
| | : | |
| v. | : | Civ. Act. No. 07-334-JJF |
| | : | |
| PERRY PHELPS, Warden, and | : | |
| ATTORNEY GENERAL OF THE STATE | : | |
| OF DELAWARE, | : | |
| | : | |
| Respondents.[1] | : | |

_____

John Folks.  <u>Pro</u> <u>se</u> Petitioner.

James T. Wakley, Deputy Attorney General of the DELAWARE
DEPARTMENT OF JUSTICE, Wilmington, Delaware.  Attorney for
Respondents.

_____

**<u>MEMORANDUM OPINION</u>**[2]

February $\underset{\sim}{26}$ , 2009
Wilmington, Delaware

_____

[1]Warden Perry Phelps assumed office in January 2008,
replacing former Warden Thomas Carroll, an original party to this
case.  <u>See</u> Fed. R. Civ. P. 25(d)(1).

[2]This case was re-assigned from the Vacant Judgeship docket
to this Court on February 1, 2008.

Farnan, District Judge

Petitioner John Folks' ("Petitioner") Application For A Writ
Of Habeas Corpus Pursuant To 28 U.S.C. § 2254 ("Petition") is
pending before the Court.  (D.I. 1; D.I. 15.)  For the reasons
discussed, the Court will dismiss the Petition and deny the
relief requested.

## I.  FACTUAL AND PROCEDURAL BACKGROUND

In June 2003, Petitioner approached Wayne McVey at an
automated teller machine located in New Castle, Delaware, placed
a boxcutter to his throat, and demanded McVey's money.  When
McVey failed to respond immediately, Petitioner grabbed at
McVey's shirt pocket.  The pocket ripped and McVey's money fell
to the ground.  As Petitioner stooped to retrieve the money,
McVey kicked him, knocking the boxcutter out of Petitioner's
hand.  Despite McVey's resistance, Petitioner grabbed the money
and ran.  McVey and his stepson, who was nearby, chased
Petitioner to an adjacent parking lot.  Petitioner then entered a
maroon car with out-of-state license plates and drove away.
Folks v. State, 872 A.2d 959 (Table), 2005 WL 974782, at *1 (Del.
Apr. 25, 2005).

New Castle City Deputy Fire Chief William Simpson Jr.,
driving past the scene, noticed the robbery in progress and
pursued Petitioner.  Simpson contacted New Castle City Police
dispatch and followed Petitioner until a city police officer

1

joined the pursuit. Once the police entered the picture, Simpson returned to the bank. Petitioner, meanwhile, parked the vehicle at a hotel and fled on foot. A police officer eventually apprehended Petitioner, and after arresting and searching him, discovered four twenty-dollar bills in Petitioner's hands. Authorities later charged Petitioner with first degree robbery, possession of a deadly weapon during the commission of a felony, and other related offenses. Id.

In January 2004, a Delaware Superior Court jury convicted Petitioner of first degree robbery and possession of a deadly weapon during the commission of a felony. The Delaware Superior Court sentenced Petitioner as a habitual offender to forty years imprisonment, and Petitioner appealed. On appeal, the Delaware Supreme Court affirmed Petitioner's convictions but vacated his habitual offender sentence because the evidence of identity supporting one of the predicate offenses for habitual offender status was ambiguous. Id. The case was remanded to the Delaware Superior Court for re-sentencing. On remand, the State no longer sought to have Petitioner sentenced as a habitual offender. The Delaware Superior Court then sentenced Petitioner to twelve years imprisonment on the robbery conviction, to be suspended after ten years for two years probation, and to ten years imprisonment on the weapons conviction. Folks v. State, 892 A.2d 1083 (Table), 2006 WL 212102 (Del. Jan. 26, 2006). The Delaware Supreme Court

affirmed Petitioner's re-sentencing.  Id.

In March 2006, Petitioner filed a motion for post-conviction relief pursuant to Delaware Superior Court Criminal Rule 61 ("Rule 61 motion"), asserting claims based on ineffective assistance of counsel, double jeopardy, prosecutorial misconduct, and judicial misconduct.  The Superior Court denied the Rule 61 motion, specifically holding that the claims alleging double jeopardy and prosecutorial misconduct were meritless, several ineffective assistance of counsel claims were meritless while others were too vague and conclusory to warrant relief, and the judicial misconduct claim was barred by Rule 61 (i)(4) because the issue was already addressed during Petitioner's direct appeal.  State v. Folks, 2006 WL  2742315 (Del. Super. Ct. Sept. 25, 2006).  Petitioner appealed, and the Delaware Supreme Court affirmed the Superior Court's decision.  Folks v. State, 919 A.2d 561 (Table), 2007 WL 1214658 (Del. Feb. 26, 2007).

Petitioner timely filed his § 2254 Petition, and an Amended Petition. (D.I. 1; D.I. 15.)  The State filed an Answer, requesting the Court to deny all the claims asserted in both Petitions.[3]  (D.I. 30.)  The Petition is now ready for review.

---

[3]As explained later in the text of the Opinion, the Court will consider the assertions contained in Petitioner's Motions to Amend his Petition that were filed subsequent to the filing of the State's Answer only to the extent those assertions supplement his existing habeas claims.  See (D.I. 25; D.I. 45; D.I. 46.)

## II.   APPLICABLE LEGAL PRINCIPLES

### A. Exhaustion and Procedural Default

Absent exceptional circumstances, a federal court cannot review the merits of claims asserted in a habeas petition unless the petitioner has exhausted all means of available relief for the claims under state law.  28 U.S.C. § 2254(b);  O'Sullivan v. Boerckel, 526 U.S. 838, 842-44 (1999);  Picard v. Connor, 404 U.S. 270, 275 (1971).  A petitioner satisfies the exhaustion requirement by "fairly presenting" the substance of the federal habeas claim to the state's highest court, either on direct appeal or in a post-conviction proceeding, in a procedural manner permitting the state courts to consider it on the merits.  See Duncan v. Henry, 513 U.S. 364, 365 (1995);  Castille v. Peoples, 489 U.S. 346, 351 (1989);  Lambert v. Blackwell, 134 F.3d 506, 513 (3d Cir. 1997).  If a petitioner presents a habeas claim to the state's highest court, but that court "clearly and expressly" refuses to review the merits of the claim due to an independent and adequate state procedural rule, the claim is exhausted but procedurally defaulted.  See Coleman v. Thompson, 501 U.S. 722, 749-750 (1991);  Harris v. Reed, 489 U.S. 255, 260-64 (1989); Lines, 208 F.3d at 160.

A federal court cannot review the merits of procedurally defaulted claims unless the petitioner demonstrates either cause for the procedural default and actual prejudice resulting

4

therefrom, or that a fundamental miscarriage of justice will result if the court does not review the claims.  McCandless v. Vaughn, 172 F.3d 255, 260 (3d Cir. 1999);  Coleman, 501 U.S. at 750-51;  Caswell v. Ryan, 953 F.2d 853, 861-62 (3d Cir. 1992). To demonstrate cause for a procedural default, the petitioner must show that "some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule."  Murray v. Carrier, 477 U.S. 478, 488 (1986).  To demonstrate actual prejudice, the petitioner must show that the errors during his trial created more than a possibility of prejudice; he must show that the errors worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions."  Id. at 494.

Alternatively, if the petitioner demonstrates that a "constitutional violation has probably resulted in the conviction of one who is actually innocent," then a federal court can excuse the procedural default and review the claim in order to prevent a fundamental miscarriage of justice.  Murray, 477 U.S. at 496; Edwards v. Carpenter, 529 U.S. 446, 451 (2000);  Wenger v. Frank, 266 F.3d 218, 224 (3d Cir. 2001).  The miscarriage of justice exception applies only in extraordinary cases, and actual innocence means factual innocence, not legal insufficiency. Bousley v. United States, 523 U.S. 614, 623 (1998);  Murray, 477 U.S. at 496.  A petitioner establishes actual innocence by

asserting "new reliable evidence - whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence - - that was not presented at trial," showing that no reasonable juror would have voted to find the petitioner guilty beyond a reasonable doubt.   Hubbard v. Pinchak, 378 F.3d 333, 339-40 (3d Cir. 2004).

## B.  Standard of Review

If a petitioner presents a federal district court with a federal habeas claim that the state's highest court has adjudicated on the merits, then the district court must review the habeas claim under the deferential standard contained in 28 U.S.C. § 2254(d).   Pursuant to § 2254(d), federal habeas relief may only be granted when the state court's decision is "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or the state court's decision is an unreasonable determination of the facts based on the evidence adduced in the trial.   28 U.S.C. § 2254(d)(1) & (2);   Williams v. Taylor, 529 U.S. 362, 412 (2000);   Appel v. Horn, 250 F.3d 203, 210 (3d Cir. 2001).   Additionally, when reviewing a habeas claim, a federal court must presume that the state court's determinations of factual issues are correct.   28 U.S.C. § 2254(e)(1).   This presumption of correctness applies to both explicit and implicit findings of fact, and is only rebutted by

6

clear and convincing evidence to the contrary. 28 U.S.C. §
2254(e)(1); Campbell v. Vaughn, 209 F.3d 280, 286 (3d Cir.
2000); Miller-El v. Cockrell, 537 U.S. 322, 341 (2003)(stating
that the clear and convincing standard in § 2254(e)(1) applies to
factual issues, whereas the unreasonable application standard of
§ 2254(d)(2) applies to factual decisions).

## III.  DISCUSSION

Petitioner asserts the following eight claims:[4]  (1) defense
counsel provided ineffective assistance during Petitioner's
trial; (2) counsel provided ineffective assistance, and the
prosecutor engaged in misconduct, with respect to a clerical
error in the State's motion to declare Petitioner a habitual
offender; (3) Petitioner was convicted and sentenced twice for
his possession of one weapon in violation of his right to be
protected against Double Jeopardy, and counsel provided
ineffective assistance by failing to object to Petitioner's
convictions on this basis; (4) the prosecutor's use of peremptory
strikes violated Batson, and counsel provided ineffective
assistance by failing to raise this objection; (5) the Superior
Court judge engaged in judicial misconduct, thereby violating
Petitioner's rights under the Fifth and Fourteenth Amendments;
(6) the trial court's erroneous admission of Petitioner's post-

---

[4]The Court has combined certain arguments and re-numbered
Petitioner's claims without altering the substance of the issues
asserted therein.

7

arrest statement deprived Petitioner of a fair trial; (7) a comment made by a juror during the prosecutor's opening statement violated Petitioner's Sixth Amendment right to an impartial jury; and (8) several errors resulted from the Delaware Superior Court's consideration of Petitioner's 1977 weapons conviction in determining an appropriate sentence on remand.

## A. Claim One: Ineffective Assistance Of Trial Counsel[5]

In Claim One, Petitioner contends that trial counsel provided ineffective assistance by: (1) failing to investigate the existence of witnesses; (2) failing to compel the State to produce exculpatory evidence; (3) failing to mention important testimony to the jury in his closing argument; and (4) failing to raise various objections throughout the trial.  During Petitioner's state collateral proceeding, the Superior Court declined to address the merits of these claims, ruling that Petitioner's arguments were merely conclusory, and thus, not legally sufficient to warrant review.  The Delaware Supreme Court affirmed the Superior Court's judgment.  Therefore, the Court must determine if the Delaware Supreme Court's decision was contrary to, or an unreasonable application of, clearly established Federal law.

The clearly established Federal law governing ineffective

---

[5]The Court addresses Petitioner's claims that counsel failed to raise a Double Jeopardy claim and a Batson claim on appeal later in the text of the Opinion.

8

assistance of counsel claims is the two-pronged standard
enunciated in <u>Strickland v. Washington</u>, 466 U.S. 668 (1984).
Under the first <u>Strickland</u> prong, a petitioner must demonstrate
that "counsel's representation fell below an objective standard
of reasonableness," with reasonableness being judged under
professional norms prevailing at the time counsel rendered
assistance.   <u>Strickland</u>, 466 U.S. at 688.   Under the second
<u>Strickland</u> prong, a petitioner must demonstrate "there is a
reasonable probability that, but for counsel's error the result
would have been different."   <u>Id.</u> at 687-96.   A reasonable
probability is a "probability sufficient to undermine confidence
in the outcome."   <u>Id.</u> at 688.   Although not insurmountable, the
<u>Strickland</u> standard is highly demanding and leads to a "strong
presumption that the representation was professionally
reasonable."   <u>Strickland</u>, 466 U.S. at 689.

     Here, the Delaware Supreme Court's decision is not contrary
to clearly established Federal law because the State Supreme
Court analyzed the allegations contained in Claim One within the
framework provided by <u>Strickland</u>.   <u>Williams</u>, 529 U.S. at 406
("[A] run-of-the-mill state-court decision applying the correct
legal rule from [Supreme Court] cases to the facts of a
prisoner's case [does] not fit comfortably within § 2254(d)(1)'s
'contrary to' clause").   The Court's inquiry under § 2254(d)(1)
is not over, however, because the Court must next determine

whether the Delaware Supreme Court unreasonably applied Strickland in denying Petitioner's ineffective assistance of counsel claim. Under this prong, habeas relief will only be warranted if the Delaware Supreme Court's application of Strickland "resulted in an outcome that cannot reasonably be justified under existing Supreme Court precedent." Werts v. Vaughn, 228 F.3d 178, 197 (3d Cir. 2000).

It is well-settled that a petitioner has the burden of proving the facts in support of his ineffective assistance claim. Sistrunk v. Vaughn, 96 F.3d 666, 671 (3d Cir. 1996); Wells v. Petsock, 941 F.2d 253, 259-260 (3d Cir. 1991). Furthermore, in order to sustain an ineffective assistance of counsel claim, a petitioner must make concrete allegations of actual prejudice and substantiate them or risk summary dismissal. See Wells, 941 F.2d at 259-260; Dooley v. Petsock, 816 F.2d 885, 891-92 (3d Cir. 1987). Having reviewed the record within the framework provided by these principles, the Court concludes that the Delaware Supreme Court did not unreasonably apply Strickland in denying the four allegations pertaining to counsel's performance as conclusory and vague. Although voluminous in size, the memorandum in support of the Rule 61 motion that Petitioner presented to the Delaware Superior Court, as well the opening brief he presented to the Delaware Supreme Court on post-conviction appeal, contained only unsupported and conclusory

10

statements that counsel's alleged failures "prejudiced" him,
without providing concrete examples or allegations of such
prejudice.  See (D.I. 35.)

    Petitioner's habeas Petition suffers from the same defect -
he fails to demonstrate any actual prejudice resulting from the
counsel's alleged missteps, because he fails to demonstrate a
reasonable probability that the outcome of his trial would have
been different but for counsel's actions.  For instance,
Petitioner alleges that the two females who were panhandling in
the vicinity of the robbery might have testified that someone
other than Petitioner robbed McVey, and therefore, counsel
performed deficiently by failing to investigate those women as
possible witnesses.  Yet, during Petitioner's trial, McVey,
McVey's stepson, Simpson, and the arresting officer all
positively identified Petitioner as the robber.  After
considering the uncertainty surrounding the womens' potential
testimony in context with the actual testimony provided at trial,
the Court concludes that Petitioner has failed to demonstrate a
reasonable probability that the womens' potential testimony would
have resulted in a different outcome.

    As for Petitioner's assertion that defense counsel performed
deficiently by failing to compel the State to produce the
"exculpatory" videotape of Petitioner's police interview, the
trial transcript reveals that there was no videotape of the

11

interview. Therefore, counsel did not perform deficiently by failing to compel the introduction of a non-existent piece of evidence.

In turn, although Petitioner asserts that counsel performed deficiently during his closing argument by failing to mention Simpson's testimony that a "heavy-set black man" robbed McVey, Petitioner has not demonstrated a reasonable probability that reminding the jurors of this testimony would have resulted in a different outcome. And finally, Petitioner's complaint regarding counsel's failure to make various objections throughout the trial is simply too vague to warrant further review. Accordingly, the Court will deny Petitioner's four ineffective assistance of counsel allegations in Claim One because they do not warrant federal habeas relief under § 2254(d)(1).

## B. Claim Two: Claims Related To A Clerical Error In State's Motion To Declare Petitioner A Habitual Offender

The State filed a motion to declare Petitioner a habitual offender during Petitioner's criminal trial. After reviewing the motion, Petitioner informed defense counsel that the motion contained an incorrect sentencing date related to his 1977 weapons conviction. Defense counsel informed the prosecutor, who then filed a second corrected version of the habitual offender motion.[6]

---

[6]The original motion to declare Petitioner a habitual offender states that Petitioner was convicted of carrying a

In Claim Two, Petitioner asserts that counsel provided ineffective assistance by informing the prosecutor of the error in the motion because that communication violated the duty of confidentiality counsel owed to Petitioner.  Petitioner also contends that the prosecutor's failure to report trial counsel's disclosure of the clerical error contained in the State's habitual offender motion amounted to prosecutorial misconduct. Petitioner presented these claims to the Delaware Superior Court in his Rule 61 motion.  The Superior Court found that the claims were moot because the State elected, after remand, not to renew its motion to declare Petitioner a habitual offender.  Folks, 2006 WL 2742315, at *4.  The Superior Court explained that any mistake made with respect to the habitual offender was cured when the Delaware Supreme Court vacated the habitual offender sentence.  Id.  The Delaware Supreme Court affirmed the Superior Court's decision on post-conviction appeal.  Therefore, these claims will only warrant relief if the Delaware Supreme Court's decision is either contrary to, or an unreasonable application of, Supreme Court precedent.

The premise of Petitioner's argument appears to be that defense counsel could have used the error contained in the

---

concealed deadly weapon on June 7, 1977, and that he was sentenced on that same day, June 7, 1977.  In contrast, the corrected habitual offender motion states that Petitioner was convicted on June 7, 1977 and sentenced on September 9, 1977. (D.I. 3, at Exh. 78 and 79(B).)

habitual offender motion as a basis for having the motion dismissed.  Yet, considering that the State did not renew its motion to declare Petitioner a habitual offender on re-sentencing, Petitioner cannot demonstrate a reasonable probability that his final sentence would have been different but for defense counsel's actions during the trial.  Thus, the Delaware Supreme Court's denial of the instant ineffective assistance of counsel claim does not warrant relief under § 2254(d)(1).

The Court also concludes that the Delaware Supreme Court's denial of Petitioner's prosecutorial misconduct claim was neither contrary to, nor an unreasonable application of, Supreme Court precedent.  In order to prevail on a claim of prosecutorial misconduct, a defendant must show that the prosecutor's statements and/or actions were actually improper, and that such statements or actions "so infected the trial with unfairness as to make the resulting conviction a denial of due process."  See Darden v. Wainwright, 477 U.S. 168, 180-81 (1986).  Pursuant to Supreme Court precedent, "the reviewing court must examine the prosecutor's offensive actions in context and in light of the entire trial, assessing the severity of the conduct, the effect of the curative instructions, and the quantum of evidence against the defendant."  Moore v. Morton, 255 F.3d 95, 107 (3d Cir. 2001)(citing Darden, 477 U.S. at 182).

14

Here, Petitioner has not clarified the origin of his belief that the prosecutor had a duty to report counsel's communication regarding the clerical error, and therefore, he has not demonstrated that the prosecutor's failure to inform the trial court was actually improper.  Moreover, given the fact that the State did not renew the habitual offender motion on re-sentencing, and that Petitioner's final sentence was not as a habitual offender, Petitioner cannot demonstrate that the prosecutor's actions prejudiced him to such an extent that he was denied a fair trial.  See Folks, 2006 WL 212102, at *1.  Therefore, the Court will deny the both arguments raised in Claim Two for failing to satisfy § 2254(d)(1).

### C.  Claim Three: Petitioner's Convictions Violated Double Jeopardy And Counsel Performed Ineffectively By Failing To Raise This Objection

In Claim Three, Petitioner contends that his rights under the Double Jeopardy Clause of the Fifth Amendment were violated when he was convicted of both first degree robbery and PDWDCF.  Petitioner presented this argument on post-conviction appeal, but the Delaware Supreme Court rejected the claim as procedurally barred under Rule 61(i)(3) due to Petitioner's failure to raise the argument on direct appeal.  The Delaware Supreme Court further explained that Petitioner could not avoid the procedural bar under the miscarriage of justice exception contained in Rule 61(i)(5) because, according to well-established Delaware

15

precedent, concurrent convictions of robbery and weapons violations do not violate the Double Jeopardy Clause.  Folks, 2007 WL 1214658, at *1.

By applying the procedural bar of Rule 61(i)(3) and (5), the Delaware Supreme Court articulated a "plain statement" under Harris v. Reed, 489 U.S. 255, 263-4 (1984) that its decision rested on state law grounds.  This Court has consistently held that Rule 61 is an independent and adequate state procedural rule precluding federal habeas review.  See McCleaf v. Carroll, 416 F. Supp. 2d 283, 296 (D. Del. 2006); Mayfield v. Carroll, 2005 WL 2654283 (D. Del. Oct. 11, 2005); Johnson v. Ellingsworth, 783 F. Supp. 215, 220 (D. Del. 1992)(specifically holding that Rule 61(i)(5) constitutes an independent and adequate state procedural rule barring habeas review).  Thus, the Court cannot review the merits of Claim Three absent a showing of cause for the default, and prejudice resulting therefrom, or upon a showing that a miscarriage of justice will occur if the claim is not reviewed.

Petitioner attempts to establish cause for his default by blaming counsel's failure to raise the Double Jeopardy claim on direct appeal.  (D.I. 2, at p. 16.)  It is well-settled that the ineffective assistance of appellate counsel can constitute cause for a petitioner's procedural default of a claim if the petitioner raised the issue of counsel's performance to the state courts on collateral review as an independent claim and counsel's

16

ineffectiveness rises to the level of a constitutional deprivation under Strickland v. Washington, 466 U.S. 668 (1984). Edwards v. Carpenter, 529 U.S. 446 (2000). In this case, Petitioner raised the same issue regarding counsel's performance in his state collateral proceeding and post-conviction appeal. However, citing Delaware precedent, both Delaware Courts determined that Petitioner's convictions for first degree robbery and PDWDCF did not implicate the Double Jeopardy Clause, and therefore, they denied Petitioner's ineffective assistance of counsel claim because Petitioner failed to satisfy the prejudice prong of Strickland. Consequently, counsel's failure to raise the Double Jeopardy argument on appeal can constitute cause in this proceeding only if the Delaware Supreme Court's denial of the instant ineffective assistance of counsel claim was contrary to, or an unreasonable application of, Strickland.

The typical multiple punishment case offending the Double Jeopardy Clause involves a single act or transaction that constitutes a violation of "two distinct statutory provisions." Rutledge v. United States, 517 U.S. 292, 297, n.6 (1996). In Blockburger v. United States, 284 U.S. 299, 304 (1932), the United States Supreme Court set forth the rule for determining whether a defendant has been punished twice for the "same offense," holding that "the same act or transaction constitutes a violation of two distinct statutory provisions, [and does not

17

violate Double Jeopardy if] each provision requires proof of a
fact which the other does not." Id. However, even if "two
statutes proscribe the 'same' conduct under Blockburger, a
court's task of statutory construction is at an end, and the
prosecutor may seek, and the trial court or jury may impose,
cumulative punishment under such statutes in a single trial,"
provided that the "legislature specifically authorizes cumulative
punishment under [the] two statutes. Missouri v. Hunter, 459
U.S. 359, 368 (1983).

Turning to Petitioner's case, the Court notes that the
Delaware State General Assembly has clearly indicated its
specific intent to punish robbery and weapons offenses
cumulatively. See Lecompte v. State, 508 A.2d 72 (Del. 1986).
Therefore, the Double Jeopardy Clause is not implicated in these
circumstances.

In turn, the Court concludes that the Delaware Supreme Court
reasonably applied Strickland in rejecting Petitioner's complaint
about counsel's performance because an attorney does not provide
ineffective assistance by failing to raise meritless claims. See
Werts v. Vaughn, 228 F.3d 178, 203 (3d Cir. 2000). Accordingly,
counsel's performance cannot constitute cause for Petitioner's
procedural default of his Double Jeopardy argument.

In the absence of cause, the Court will not address the
issue of prejudice. The miscarriage of justice exception to the

18

procedural default doctrine also does not excuse Petitioner's
default because he has not provided new reliable evidence of his
actual innocence. Accordingly, the Court will deny Claim Three
as procedurally barred.

## D. Claim Four: Prosecutorial Misconduct/Batson Violation And Related Ineffective Assistance Of Counsel Claim

In Batson v. Kentucky, 476 U.S. 79, 97 (1986), the United
States Supreme Court held that the Equal Protection Clause
forbids a prosecutor from excluding veniremen from serving on a
petit jury solely on the basis of race. The Batson Court
articulated a three-step analysis for determining if a prosecutor
excluded potential jurors in a discriminatory manner.

> First, the trial court must determine whether the defendant
> has made a prima facie showing that the prosecutor exercised
> a peremptory challenge on the basis of race. Second, if the
> showing is made, the burden shifts to the prosecutor to
> present a race-neutral explanation for striking the juror in
> question. Although the prosecutor must present a
> comprehensible reason, the second step of this process does
> not demand an explanation that is persuasive or even
> plausible; so long as the reason is not inherently
> discriminatory, it suffices. Third, the court must then
> determine whether the defendant has carried his burden of
> proving purposeful discrimination. This final step involves
> evaluating the persuasiveness of the justification proffered
> by the prosecutor, but the ultimate burden of persuasion
> rests with, and never shifts from, the opponent of the
> strike.

Rice v. Collins, 546 U.S. 333, 338 (2006)(internal citations and
quotations omitted). In order to satisfy step one and establish
a prima facie Batson case, a defendant must show that he is a
member of a cognizable racial group and that the prosecutor

19

exercised peremptory challenges "to remove from the venire members of the defendants' race." Batson, 476 U.S. at 96.  A court should consider all the relevant circumstances when determining whether the defendant has made the requisite prima facie showing.

> For example, a "pattern" of strikes against black jurors included in the particular venire might give rise to an inference of discrimination.  Similarly, the prosecutor's questions and statements during voir dire examination and in exercising his challenges may support or refute an inference of discriminatory purpose.  These examples are merely illustrative. . . . trial judges, experienced in voir dire, will be able to decide if the circumstances concerning the prosecutor's use of peremptory challenges creates a prima facie case of discrimination against black jurors.

Id. at 97.

In Claim Four, Petitioner asserts that the prosecutor violated Batson by excluding a single African American female from the petit jury.  (D.I. 15, at pp. 2-3.)  Petitioner raised this argument in his Rule 61 motion, and after conceding that the claim was procedurally defaulted under Rule 61(i)(3) due to his failure to raise the claim on direct appeal, Petitioner argued that counsel's ineffective assistance should act to excuse the default.  Petitioner also argued that the Superior Court should consider the merits of the Batson claim under the "colorable claim of a constitutional violation" exception to the default doctrine under Rule 61(i)(5).  The Superior Court denied the independent Batson claim first after determining that Petitioner had not provided any specific evidence to support his conclusory

assertion of a <u>Batson</u> violation.  Thereafter, the Superior Court held that counsel did not perform ineffectively by not raising the <u>Batson</u> claim on direct appeal.  Folks, 2006 WL 2742315, at *2.

On post-conviction appeal, Petitioner argued that the Delaware Superior Court improperly applied the <u>Strickland</u> test to his independent <u>Batson</u> claim.  <u>See</u> (D.I. 35.)  The Delaware Supreme Court affirmed the Superior Court's judgment after specifically holding that the <u>Batson</u> claim was procedurally barred under Rule 61(i)(3) due to Petitioner's failure to raise the issue on direct appeal.  The Delaware Supreme Court explained that Petitioner could not avoid the procedural bar under the miscarriage of justice exception contained in Rule 61(i)(5) because the transcript of the jury selection process to which Petitioner referred in an attempt to support his argument did not demonstrate the existence of a constitutional violation.  <u>Folks</u>, 2007 WL 1214658, at *1.

Given the Delaware Supreme Court's explicit rejection of the <u>Batson</u> claim as barred by Rule 61(i), the Court can only review the merits of the <u>Batson</u> claim if Petitioner demonstrates cause for, and prejudice resulting from, his default of the claim.  Petitioner asserts that counsel's failure to raise the claim on direct appeal constitutes cause for his default.  However, because the Delaware Supreme Court denied this same allegation of

21

ineffective assistance in Petitioner's post-conviction appeal, counsel's performance will only excuse Petitioner's default in this proceeding if the Delaware Supreme Court's decision was contrary to, or an unreasonable application of, Strickland.

The Court concludes that the Delaware Supreme Court reasonably applied Strickland in denying the instant ineffective assistance of counsel claim. To begin, trial counsel explained in his Rule 61 affidavit that he did not observe a pattern of excusing minority jurors by the prosecutor. (D.I. 35, App. to State's Ans. Br. in Folks v. State, No.563,2006, at p. 23.) Moreover, given Petitioner's failure to provide any evidence to the contrary in this proceeding, the Court defers to, and accepts as correct, the Delaware Supreme Court's factual finding that the transcript of the jury selection proceeding did not indicate the existence of a Batson violation.[7] See 28 U.S.C. § 2254(e)(1).

---

[7]In fact, Petitioner has provided the same jury selection transcript he submitted during his state collateral proceeding, and the Court has not found any indication in the transcript that the prosecutor exercised a peremptory challenge to remove a potential juror on the basis of race. The transcript does, however, reveal that the prosecutor requested one challenge for cause, and that request was of a prospective male juror who had relatives incarcerated in prison for drug convictions. The prosecutor stated that the State was entitled to a juror with an open mind, explaining that he was concerned about the juror's demeanor and hesitation when the juror stated that he could be a fair and impartial juror despite his cousins' situation. (D.I. 35, App. to State's Ans. Br. in Folks v. State, No.563,2006, at p.19.) In addition, the transcript does not contain any information regarding the female juror mentioned by Petitioner, none of the prosecutor's statements during the proceeding suggest that any prospective juror was released because of his or her race, and there is no record of the race composition of the jury

22

Relying on this presumption of correctness, the Court concludes
that Petitioner has failed to establish a prima facie Batson
claim, which, in turn, is fatal to establishing the requisite
prejudice under Strickland.  Therefore, counsel's performance
cannot constitute cause for Petitioner's default of Claim Four.

In the absence of cause, the Court will not address the
issue of prejudice.  In turn, the miscarriage of justice
exception to the procedural default doctrine does not apply
because Petitioner has not presented colorable evidence of his
actual innocence.  Accordingly, the Court will deny the Batson
claim as procedurally barred.

### E. Claim Five: Judicial Misconduct

The record reflects that Petitioner was charged with
attempted rape and a weapons charge in 1977, but he was only
convicted of the weapons charge.  When the State filed its motion
to declare Petitioner a habitual offender, it proffered a docket
sheet related to Petitioner's 1977 conviction which indicated
that the attempted rape charge had been dismissed.  In response
to the State's habitual offender motion, Petitioner filed a
letter to the trial judge, stating "In 1977, I was charged with
attempted rape and weapons charges.  During the trial the
attempted rape charge was dismissed, because it never happened."
The letter was entered on the docket as entry number 46, and

---

that heard Petitioner's case.

described as "Defendant's letter filed. To: Judge Cooch Re: Rape conviction." See generally (D.I. 35.)

In Claim Five, Petitioner contends that the trial court judge erred by basing his sentencing decision on "false and unreliable information" contained in Docket Entry 46. To the extent the Delaware Supreme Court affirmed the Superior Court's denial of this claim on post-conviction appeal, the Court concludes that the Delaware Supreme Court's decision does not warrant relief under § 2254(d)(1). Although the description on the docket may be somewhat misleading, the actual content of the letter correctly reflects that Petitioner was never convicted of attempted rape. Aside from making a conclusory statement, Petitioner has not proffered any evidence to suggest that the trial judge mistakenly believed Petitioner had been convicted of attempted rape. Therefore, the Court concludes that this portion of Claim Five lacks of merit.[8]

Petitioner also contends that the Delaware Superior Court judge was biased and violated his rights under the Fifth and Fourteenth Amendments during his collateral proceeding by granting the State an unrequested extension to respond to his Rule 61 motion. The Court of Appeals for the Third Circuit recently held that a claim alleging the denial of due process

_____

[8]Alternatively, if Petitioner did not exhaust state remedies for this claim, the Court denies this unexhausted portion of Claim Five as meritless. See 28 U.S.C. § 2254(b)(2).

24

resulting from alleged judicial bias during state post-conviction
proceedings does not assert an issue cognizable on federal habeas
review.  Abu-Jamal v. Horn, 520 F.3d 272, 297 (3d Cir. 2008).
Accordingly, the Court will deny this portion of Claim Five for
failing to allege a proper basis for habeas relief.

### F.  Claim Six: Admission of Petitioner's Post-Arrest Statement

During Petitioner's post-arrest police interview with
Detective Donlon, Petitioner stated that he was at the scene of
the robbery with two women, and all three of them were there to
panhandle money for drugs.  At Petitioner's pre-trial suppression
hearing, the trial court judge ruled that Petitioner's post-
arrest statement was admissible at trial under Delaware Rule of
Evidence ("D.R.E.") 404(b) because it was relevant to
Petitioner's presence at the location, his identity, and his
motive.  The trial judge further stated that, under D.R.E. 403,
the probative value of the evidence outweighed its prejudicial
effect, and that he would give a limiting instruction.  (D.I. 35,
State's Ans. Br. in Folks v. State, No.291, 2004, at pp. 16-7.)
Subsequently, on the second day of trial, Detective Donlon
testified regarding his post-arrest interview of Petitioner.
Detective Donlon related that Petitioner stated that he had been
in the bank parking lot where the ATM was located with two women,
and that they were panhandling for money in order to purchase
drugs.  Detective Donlon also testified that Petitioner stated

25

the two women were not involved in the alleged robbery.  (D.I. 35, Trial Transcript.)

On direct appeal, the Delaware Supreme Court determined that the trial court violated D.R.E. 404(b) by admitting Petitioner's post-arrest statement.  However, the Delaware Supreme Court held that the admission of the statement did not constitute reversible error.  Rather, the error was harmless because the "'untainted evidence of guilt" outweigh[ed] the 'significance of the error.'" Folks, 2005 WL 974782, at *2.

In Claim Six, Petitioner contends that the Delaware Supreme Court's decision that the admission of Petitioner's post-arrest statement constituted harmless error was based on an unreasonable determination of facts.  Petitioner also contends that the erroneous admission of the statement denied him a fair trial. Framed in this manner, the Court concludes that Petitioner has presented an issue cognizable on Federal habeas review.[9]  See, e.g., Lesko v. Owens, 881 F.2d 44, 51-2 (3d Cir. 1989)(where probative value of evidence, though relevant, is greatly outweighed by the prejudice to the accused from its admission, then the use of such evidence may violate fundamental fairness and due process).  However, on direct appeal, Petitioner presented Claim Six to the Delaware Supreme Court as a violation

---

[9]Therefore, the Court disagrees with the State's assertion that Claim Six does not present an issue cognizable on federal habeas review.  See (D.I. 30, at pp. 11-12.)

of state evidentiary law, rather than as a federal claim, thereby
failing to satisfy the "fair presentation" doctrine of federal
habeas law.[10]   Thus, Claim Six is unexhausted.

At this juncture, any attempt by Petitioner to present this
issue in a new Rule 61 motion would be barred as untimely by Rule
61(i)(1), as repetitive by Rule 61(i)(2), and as procedurally
defaulted by Rule 61(i)(3).   See Righter v. Snyder, 2002 WL
63802, at *4 (D. Del. Jan. 17, 2002).   Consequently, the Court
must treat the Claim as exhausted but procedurally defaulted,
thereby precluding a review of the Claim's merits absent a

_____

[10]A petitioner satisfies the "fair presentation" requirement
of the exhaustion doctrine by presenting the

> federal claim's factual and legal substance to the state
> courts in a manner that puts them on notice that a federal
> claim is being asserted.   It is not sufficient that a
> "somewhat similar state-law claim was made." Yet, the
> petitioner need not have cited "book and verse" of the
> federal constitution.

McCandless v. Vaughn, 172 F.3d 255, 261 (3d Cir. 1999).

A federal claim brought in federal court must be the
"substantial equivalent" of that presented to the state courts,
and the state court must have had the same method of legal
analysis available to it that is to be employed in the federal
court.   Lambert, 134 F.3d at 513. On direct appeal, Petitioner
argued that the introduction of his post-arrest admission
regarding panhandling was "unduly prejudicial to [his] right to a
fair trial under D.R.E. 404(b)."   (D.I. 35, App. Op. Br. in Folks
v. State, No.291,2004, at pp. 9-11.)   Petitioner's appellate
brief reveals that the claim was raised only as an issue of
Delaware State evidentiary law, and both the State and the
Delaware Supreme Court interpreted the issue as such.   In
addition, the Court has extensively reviewed the record provided
in relation to Petitioner's state collateral proceeding, as well
as the published State Court opinions related thereto, and has
not found any indication in the voluminous filings that
Petitioner presented Claim Six to the Delaware Supreme Court
during his post-conviction appeal.   See generally (D.I. 35.)

27

showing of cause and prejudice.

Petitioner has not alleged any cause for his failure to present Claim Six as a Federal issue on direct or post-conviction appeal, and thus, the Court will not address the issue of prejudice. In addition, the Court cannot review the Claim under the miscarriage of justice exception to the procedural default doctrine because Petitioner has not presented any colorable evidence of his actual innocence. Accordingly, the Court will deny Claim Six as procedurally barred.

## G. Claim Seven: Juror Five's Remark

During his opening remarks, the prosecutor outlined the events leading to Folk's arrest and the evidence that the State intended to introduce. The prosecutor told the jury that the arresting officer "will tell you that when he went to get Petitioner . . . what happened was he had money in his hands, and guess what he had in his hands?" Juror Five then audibly exclaimed, "The Twenties?" Neither party immediately objected, and the prosecutor continued his opening statement. Once both sides concluded their opening remarks, the trial judge called a sidebar and questioned Juror Five about his ability to remain impartial. The trial judge then dismissed Juror Five and resumed the trial. See (D.I. 35.)

On direct appeal, Petitioner argued that the trial court erred by failing to declare a mistrial or, alternatively, by

28

failing to examine the remaining jurors.  Reviewing the claim for plain error, the Delaware Supreme Court held that the trial judge did not commit any error by failing to declare a mistrial sua sponte because the dismissal of Juror Five eliminated any prejudice that may have resulted from the outburst.  The Delaware Supreme Court also held that Petitioner did not demonstrate any prejudice caused by Juror Five's statement because the evidence produced at trial definitively established that Petitioner had four twenty-dollar bills in his hand at the time of his arrest. Folks, 2005 WL 974782, at *2.

        The Court must determine if the Delaware Supreme Court's decision warrants relief under § 2254(d)(1).  In this proceeding, as in his direct appeal, Petitioner has not offered any evidence that any remaining juror was biased against him.  Moreover, the State Court Record demonstrates that Petitioner was in possession of four twenty-dollar bills when he was arrested. Accordingly, the Court will deny Claim Seven for failing to satisfy § 2254(d)(1).

## H.  Claim Eight: Errors Caused By The Superior Court's Consideration Of Petitioner's 1977 Weapons Conviction

        In 1977, Petitioner was convicted of carrying a concealed deadly weapon.  This conviction was used to support the prosecution's habitual offender motion.  However, in Petitioner's direct appeal, the Delaware Supreme Court held that the State had proffered insufficient evidence to establish that Petitioner was

29

convicted of an offense in 1977:

> In support of the first predicate offense, the State
> produced a court docket indicating that a "John T. Folks"
> was convicted of a felony in 1977.  The State introduced no
> other evidence supporting the conviction and the record is
> devoid of any information linking the name to John Folks,
> other than a similarity in name.  Because an ambiguity in
> identity exists, the State did not prove that this defendant
> committed the predicate offense beyond a reasonable doubt.
> The trial judge therefore erred by sentencing Petitioner as
> a habitual offender.

Folks, 2005 WL 974782, at *3.  After Petitioner's original

sentence was reversed, when the 1977 conviction was presented to

the sentencing judge for his use in determining an appropriate

sentence, defense counsel conceded that Petitioner had been

convicted of carrying a concealed weapon in 1977.  On appeal from

his re-sentencing, Petitioner argued that the Superior Court

inappropriately considered the 1977 conviction in light of the

Delaware Supreme Court's decision in his direct appeal. However,

in the re-sentencing appeal, the Delaware Supreme Court found

that the trial court did not err in considering the 1977

conviction, because it "constituted relevant information

pertaining to [Petitioner's] personal history."  Id.

Petitioner alleges several errors in his trial and re-

sentencing are related to his 1977 weapons conviction.  First,

Petitioner contends that the attorney who represented him during

the remanded re-sentencing proceeding and subsequent appeal

provided ineffective assistance by failing to challenge the

validity of the 1977 conviction attributed to Petitioner and

proffered by the State during the re-sentencing. Petitioner presented this claim to the Delaware Supreme Court on post-conviction appeal, but the Delaware Supreme Court did not address the claim on the merits.[11] Therefore, the Court will apply the pre-AEDPA standard and review the claim de novo.[12] See Holloway v. Horn, 355 F.3d 707, 718-19 (3d Cir. 2004).

According to the Rule 61 affidavit filed by the attorney who represented Petitioner during his re-sentencing and subsequent appeal, counsel asked Petitioner privately during the sentencing hearing if he could point to any evidence that he was not the person who was convicted of the 1977 offense or if he would be willing to offer testimony to that effect. (D.I. 35, App. to State's Ans. Br. in Folks v. State, No. 563,2006, at A-64.) Petitioner declined and asked counsel to argue the issue. Id. However, given the absence of any supporting evidence to show that Petitioner was not the person convicted in 1977, counsel did not challenge the conviction because he did not believe there was

---

[11]Instead of addressing Petitioner's claim regarding the 1977 conviction, the Delaware Supreme Court addressed another argument Petitioner raised in his Rule 61 motion, namely, that the attorney who represented him on direct appeal from his original conviction "abandoned" him by filing a Rule 26(c) brief and a motion to withdraw from representation.

[12]De novo review means that the court "must exercise its independent judgment when deciding both questions of constitutional law and mixed constitutional questions." Williams v. Taylor, 529 U.S. 362, 400 (2000)(Justice O'Connor concurring).

31

a basis to make the argument.   Id.

After reviewing the record, the Court concludes that counsel's refusal to object to the 1977 conviction did not constitute ineffective assistance.   Petitioner's Rule 61 motion, his opening brief on post-conviction appeal, and the documents filed in this habeas proceeding do not present any evidence to substantiate Petitioner's contention that he was not the person who committed the weapons offense for which he was convicted in 1977.   Considering the absence of anything to provide a basis for counsel to challenge the 1977 conviction during the re-sentencing hearing in conjunction with the well-settled principle that an attorney does not provide ineffective assistance by failing to raise meritless arguments,[13] the Court concludes that this portion of Claim Eight lacks merit.

Next, Petitioner contends that the "enhanced" sentence resulting from the Superior Court's consideration of the 1977 conviction on re-sentencing violated the Double Jeopardy Clause, and that the prosecutor improperly used information about the 1977 conviction to support both the habitual offender motion and Petitioner's later re-sentencing.   Given the Delaware Supreme Court's rejection of both claims during Petitioner's re-sentencing appeal, Petitioner will only be entitled to habeas relief if the Delaware Supreme Court's decision is either

---

[13]See United States v. Sanders, 165 F.3d 248, 253 (3d Cir. 1999).

contrary to, or an unreasonable application of, clearly
established Federal law.

Both of Petitioner's arguments appear to be based on his
impression that the Delaware Supreme Court's reversal of his
sentence as a habitual offender precluded the use of the 1977
conviction at re-sentencing.  Petitioner's belief is mistaken.
The United States Supreme Court has held that even uncharged
criminal conduct may be used in determining a sentence.  See
Williams v. New York, 337 U.S. 241 (1949).  This case, however,
involves more than uncharged criminal conduct, and there is no
question that Petitioner was convicted of carrying a concealed
weapon in 1977.  For example, Petitioner implicitly acknowledged
the 1977 conviction in two letters[14] he wrote to the trial judge
in response to the State's motion to declare him a habitual
offender.  (D.I. 35, App. to Appellant's Op. Br. in Folks v.
State, No.563,2006, at Exh. A-19, A-20.)  In addition, during his
initial sentencing hearing, Petitioner raised a factual dispute
with respect to a 1993 conviction, but he did not raise any
challenge to the 1977 conviction.  See (D.I. 35, App. to
Appellant's Op. Br., No. 291,2004, at pp. A-43 to A-45.)  And
finally, defense counsel stated in his Rule 61 affidavit that
Petitioner did not present any evidence that he was not the

---

[14]In his letters, Petitioner does not assert that he was
never convicted of this offense in 1977, only that the motion to
declare him a habitual offender contained an incorrect sentencing
date.

person who committed the 1977 offense and that Petitioner elected not to testify with respect to the 1977 conviction.

Moreover, although the Double Jeopardy clauses of both the United Sates and Delaware Constitutions apply to sentencing to the extent that they protect a defendant against multiple punishments for the same offenses, "there is no Double Jeopardy bar to the use of prior convictions in sentencing a persistent offender." Caspari v. Bohlen, 510 U.S. 383, 391 (1994). Considering the aforementioned indicia of reliability surrounding the 1977 conviction in conjunction with the fact that the Petitioner's "sentences were within the limits authorized by statute,"[15] the Court finds that the Delaware Supreme Court's denial of the arguments raised in Claim Eight was neither contrary to, nor an unreasonable application of, Supreme Court precedent.

## IV.  **PENDING MOTIONS**

### A.  **MOTIONS FOR LEAVE TO AMEND**

Petitioner filed three Motions For Leave To Amend his Petition after the State filed its Answer.  See (D.I. 25; D.I. 45; D.I. 46.)  The Motions are granted to the extent they merely supplement the claims raised in the Petition (D.I. 1.) and Amended Petition (D.I. 15.), and they are denied to the extent

---

[15]Folks, 2006 WL 212102, at *2.

34

they raise new issues.[16]  The Court notes that it has considered the supplemental information raised in the Motions in issuing a decision in this case.

### B.  MOTION FOR APPOINTMENT OF COUNSEL

Petitioner filed a motion requesting representation of counsel.  (D.I. 40.)  The Court has concluded that none of the claims raised in the Petition warrant habeas relief.  Therefore, the Court will deny the motion as moot.

### V.  CERTIFICATE OF APPEALABILITY

When a district court issues a final order denying a § 2254 petition, the court must also decide whether to issue a certificate of appealability.  See Third Circuit Local Appellate Rule 22.2.  A certificate of appealability is appropriate when a petitioner makes a "substantial showing of the denial of a constitutional right" by demonstrating "that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong."  28 U.S.C. § 2253(c)(2);  Slack v. McDaniel, 529 U.S. 473, 484 (2000).

The Court has concluded that Petitioner's habeas claims do not warrant relief.  In the Court's view, reasonable jurists would not find this conclusion to be debatable.  Accordingly, the Court declines to issue a certificate of appealability.

---

[16]Petitioner raises new claims of collateral estoppel (D.I. 25; D.I. 46.) and actual innocence (D.I. 45.).

## VI. CONCLUSION

For the reasons discussed, Petitioner's Application For A Writ Of Habeas Corpus Pursuant To 28 U.S.C. § 2254 will be denied.

An appropriate Order will be entered.